**QUINN EMANUEL URQUHART & SULLIVAN, LLP**
  Marshall M. Searcy III (Pro Hac Vice Forthcoming)
  marshallsearcy@quinnemanuel.com
  Gregory A. Fuoco (Pro Hac Vice Forthcoming)
  gregfuoco@quinnemanuel.com
865 South Figueroa Street, 10th Floor
Los Angeles, California 90017-2543
Telephone: (213) 443-3000
Facsimile: (213) 443-3100

**QUINN EMANUEL URQUHART & SULLIVAN, LLP**
  Christina I. Crowley
  christinacrowley@quinnemanuel.com
51 Madison Avenue, 22nd Floor
New York, NY 10010
Telephone: (212) 849-7000
Facsimile: (212) 849-7100

*Attorneys for Plaintiff Grillo's Pickles, Inc.*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| GRILLO'S PICKLES, INC., a Delaware corporation, <br><br> Plaintiff, <br><br> v. <br><br> PATRIOT PICKLE INC., a Delaware corporation, ARKK FOOD COMPANY, a Michigan corporation, WAHLBURGERS I, LLC, a Massachusetts limited liability company. <br><br> Defendants. | Civil Action No. _____ <br><br> **Hon.** <br><br> **VERIFIED COMPLAINT** <br> **(JURY DEMAND)** |

Plaintiff Grillo's Pickles, Inc. ("Grillo's"), by its attorneys, alleges as follows:

## NATURE OF THE ACTION

1.      Wahlburgers pickles are sold in grocery stores nationwide and marketed as, among other things, "fresh," "all natural," and containing "no preservatives."  Unfortunately, none of these claims are true.  Far from being "fresh," "all natural," and preservative free, Wahlburgers pickles contain considerable amounts of an artificial chemical preservative designed to lengthen the pickles' shelf life.

2.      Despite including this artificial chemical preservative in their pickles, Defendants go to considerable lengths to mislead consumers into believing Wahlburgers pickles are free from such preservatives:

   a.   Defendants place labels on Wahlburgers pickle containers stating the pickles are "All Natural" and contain "No Preservatives";

   b.   Defendants conspicuously use the term "Fresh" as the first word for all of the Wahlburgers pickle varieties;

   c.   Defendants sell Wahlburgers pickles in the refrigerated section of grocery stores, often alongside fresh pickles;

   d.   Defendants omit the artificial chemical preservative as an ingredient on Wahlburgers pickle labels; and

   e.   Wahlburgers pickles are formulated to taste nearly identical to Grillo's pickles, which are in fact "fresh" and contain zero artificial chemical preservatives.

3.      Defendants' false and misleading statements are the keys which have allowed Wahlburgers pickles to access and compete with Grillo's in the fresh, artificial-preservative-free pickle market.

4.      Absent these false and misleading statements, Wahlburgers pickles would not have been in the same fresh, artificial-preservative-free category as Grillo's pickles and would not have been purchased by consumers to whom these attributes are important.  Further, absent these false and misleading statements, Wahlburgers pickles would not have been viewed by grocery stores and consumers as a substitute product for Grillo's and would not have been purchased by customers and grocery store buyers to the detriment of Grillo's sales, allotted shelf space, and market share.

5.      Thus, as a result of Defendants' false and misleading statements about Wahlburgers pickles, Grillo's has been harmed and continues to incur damages on an ongoing basis.

6.      Grillo's seeks to recover damages as a result of this harm and requests preliminary and permanent injunctions to prevent Defendants from continuing to dupe customers and retailers into purchasing and carrying Wahlburgers pickles.

**THE PARTIES**

7.      Grillo's is a corporation incorporated under the laws of Delaware with its principal place of business in Westwood, Massachusetts.  Grillo's was founded by Travis Grillo in 2008 when he began selling pickles using his grandfather's 100-year-old recipe out of a hand-built wooden cart on the streets of Boston.  Since then, Grillo's has evolved into a nationwide brand known for producing fresh pickles that do not contain artificial chemical preservatives.

8.      Defendant Patriot Pickle Inc. ("Patriot") is a corporation incorporated under the laws of Delaware with its principal place of business in Wayne, New Jersey.  Patriot manufactures, packages, labels, and ships Wahlburgers pickles from Patriot's facility in Wayne, New Jersey on behalf of ARKK Food Company and Wahlburgers I, LLC.  At all relevant times,

Patriot has had full knowledge of the recipe for Wahlburgers pickles, that an artificial chemical preservative is used to manufacture Wahlburgers pickles, and that the statements made on Wahlburgers pickle labels are false.

9.      Defendant ARKK Food Company ("ARKK") is a corporation incorporated under the laws of Michigan with its principle place of business in Bloomfield Hills, Michigan.  ARKK is in the business of creating and producing food products and is the distributor for Wahlburgers pickles and the exclusive licensee of Wahlburgers' retail products.  Upon information and belief, ARKK controls the entire line of Wahlburgers retail products and engaged Patriot to manufacture, package, label, and ship Wahlburgers pickles on ARKK's behalf.  Upon information and belief, ARKK has control over the Wahlburgers pickles' recipes and labeling, ARKK selected and approved the recipe for Wahlburgers pickles jointly with Patriot, and ARKK and Patriot jointly created the labels for Wahlburgers pickles.

10.      Defendant Wahlburgers I, LLC is a limited liability company organized under the laws of Massachusetts with its headquarters in Hingham, Massachusetts.  Wahlburgers I, LLC is the owner of the Wahlburgers trademarks that appear on Wahlburgers pickle labels and, upon information and belief, has licensed these trademarks to ARKK.  Upon information and belief, as the licensor of the Wahlburgers trademarks and by virtue of its contractual relationship with ARKK, Wahlburgers I, LLC has control over the Wahlburgers pickles' recipes and labeling.

## ARKK AND PATRIOT ARE THE APPARENT AGENTS OF WAHLBURGERS I, LLC

11.      Both ARKK and Patriot are the apparent agents of Wahlburgers I, LLC.  Despite the fact that Wahlburgers pickles are manufactured, packaged, labeled, and distributed by a combination of Patriot and ARKK (as discussed *supra*), Wahlburgers pickle containers are covered with trademarks owned by Wahlburgers I, LLC.  Further, Wahlburgers pickle labels

4

conspicuously sport pictures of the Wahlberg family, members of which control Wahlburgers I, LLC.

12.     Patriot is mentioned nowhere on the Wahlburgers pickles' packaging, ARKK is identified only as the distributor, and the Wahlburgers pickle labels state only that ARKK is distributing the pickles "under license of Wahlburgers, LLC."  This is despite the fact that, upon information and belief, ARKK controls the entire line of Wahlburgers' retail products.

13.     Thus, although Wahlburgers pickles are manufactured, packaged, and labeled by a combination of Patriot and ARKK, they are held out to the public as being manufactured, packaged, and labeled by or on behalf of Wahlburgers I, LLC, given that, *inter alia*:

   a.   Wahlburgers I, LLC is the entity that owns the trademarks covering the pickle containers;

   b.   A substantial portion of Wahlburgers I, LLC's name (*i.e.* "Wahlburgers") appears prominently on the Wahlburgers pickle labels and in the pickles' names;

   c.   Pictures of the Wahlberg family, members of which control Wahlburgers I, LLC, are a central feature of the Wahlburgers pickle labels;

   d.   Patriot is not mentioned anywhere on the labels; and

   e.   ARKK is identified only as the pickles' distributor.

14.     This appearance of Patriot and ARKK's authority to manufacture, package, and label Wahlburgers pickles in this manner was, upon information and belief, created by Wahlburgers I, LLC's conduct.  Upon information and belief, Wahlburgers I, LLC was aware of the appearance and statements made on the Wahlburgers pickle labels, had the ability to control the Wahlburgers pickle recipes and labeling, and permitted ARKK and Patriot to continue selling Wahlburgers pickles in the manner described *supra*.  In short, upon information and belief,

Wahlburgers I, LLC authorized Patriot and ARKK to manufacture, package, and label pickles in a manner that created the appearance to customers that Patriot and ARKK were Wahlburgers I, LLC.

15.     Given the appearance of Wahlburgers pickle labels, customers reasonably believed the pickles were being offered by Wahlburgers I, LLC and reasonably relied thereon when purchasing Wahlburgers pickles.

## JURISDICTION AND VENUE

16.     This Court has original subject matter jurisdiction over the claims in this action pursuant to 28 U.S.C. § 1331 (actions arising under the laws of the United States) and 15 U.S.C. § 1121 (actions arising under the Lanham Act).  This Court has supplemental jurisdiction over the claims in this action that arise under the common law pursuant to 28 U.S.C. § 1367(a).

17.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2) because "a substantial part of the events or omissions giving rise to [Grillo's] claim occurred" in the District of New Jersey.  Namely, the Wahlburgers pickles at the core of this action were manufactured, packaged, falsely labeled, and shipped from Patriot's facility in Wayne, New Jersey.

18.     This Court has general personal jurisdiction over Patriot due to its systematic and continuous contacts with the State of New Jersey.  *Stewart v. Stuckey-Smith*, Civ. No. 22-4553 (SDW)(MAH), 2022 WL 17069966, at *4 (D.N.J. Oct. 28, 2022) ("New Jersey's long-arm statute, however, extends jurisdiction over non-resident defendants to the fullest extent permitted by the United States Constitution.").  For example, among other things, Patriot is headquartered in and maintains its facility in Wayne, New Jersey.  Further, this Court also has specific personal jurisdiction over Patriot because it manufactured, packaged, falsely labeled, and shipped the Wahlburgers pickles at the core of this action from Patriot's facility in Wayne, New Jersey.

19.    This Court has specific personal jurisdiction over ARKK because ARKK distributed falsely labeled Wahlburgers pickles to, *inter alia*, Walmart, ShopRite, and Acme stores throughout New Jersey.  Additionally, upon information and belief:

     a.  ARKK contracted with Patriot to manufacture, package, falsely label, and ship the pickles at the core of this action from Patriot's facility in Wayne, New Jersey;

     b.  Patriot was acting as ARKK's agent when Patriot manufactured, packaged, falsely labeled, and shipped said pickles; and

     c.  ARKK ratified these actions by accepting and consenting to Patriot continuing these actions up to and including the date this action was filed.

20.    This Court has specific personal jurisdiction over Wahlburgers I, LLC because, upon information and belief:

     a.  Wahlburgers I, LLC contracted with ARKK with the understanding that Wahlburgers pickles would be manufactured, packaged, falsely labeled, and shipped from Patriot's Wayne, New Jersey facility;

     b.  Wahlburgers I, LLC contracted with ARKK with the understanding that ARKK would distribute falsely labeled Wahlburgers pickles to, *inter alia*, Walmart, ShopRite, and Acme stores throughout New Jersey; and

     c.  Wahlburgers I, LLC ratified these actions by accepting and consenting to Patriot continuing these actions up to and including the date this action was filed.

## **BACKGROUND**

21.    Grillo's is a pickle company known nationwide for producing fresh pickles that do not contain artificial chemical preservatives.  Grillo's founder, Travis Grillo, created Grillo's in 2008 when he began selling pickles using his grandfather's 100-year-old recipe out of a hand-

build wooden cart on the streets of Boston.  Since then, Grillo's has evolved into a nationwide brand, and customers choose Grillo's because they know that when they purchase Grillo's pickles, they are purchasing fresh pickles free from artificial chemical preservatives. Additionally, retailers, cognizant of many consumers' preference for clean foods with clean labels, choose to stock Grillo's over other brands because retailers know Grillo's pickles are fresh and free from artificial chemical preservatives.

22.     Patriot is a pickle manufacturer based in Wayne, New Jersey.  Among other things, a substantial amount of Patriot's business involves "co-packing."  In the packaged food industry, co-packing is a practice in which one company (the co-packer) contracts to manufacture, package, label, and ship food for brands owned by others.  As is relevant here, Patriot functions as a co-packer for ARKK and Wahlburgers I, LLC, and by virtue of this co-packer relationship, Patriot manufactures, packages, labels, and ships Wahlburgers pickles on behalf of ARKK and Wahlburgers I, LLC.

23.     In or about the year 2014, Grillo's engaged Patriot as one of the co-packers for Grillo's pickles.  To enable Patriot to properly manufacture and package Grillo's pickles, Grillo's trusted Patriot with Grillo's proprietary pickle recipes and specific manufacturing and packaging processes to produce pickles that do not contain preservatives while still maintaining a lengthy shelf life.  Accordingly, in 2014, Patriot obtained access to Grillo's proprietary recipes and processes, and thus, at all times from 2014 through the end of Grillo's and Patriot's relationship, Patriot had full knowledge of Grillo's proprietary pickle making recipes and processes.

24.      From 2014 to the summer of 2021, Patriot continued as one of Grillo's copackers.  However, in the summer of 2021, Grillo's ended the relationship.

1.   **Wahlburgers Pickles**

25.   In or before the spring of 2021, Patriot started producing and shipping Wahlburgers pickles on behalf of ARKK and Wahlburgers I, LLC.  The Wahlburgers pickles taste extremely similar to Grillo's, use the same containers, and use the same naming conventions.  The Wahlburgers pickles also have the same nutritional fact panels as Grillo's and are sold in many of the same stores.

26.   One type of Wahlburgers pickles co-packed by Patriot is named "Wahlburgers Fresh Dill Spears."

| Front | Side | Top |
|-------|------|-----|



27.     Patriot also co-packs another variety of Wahlburgers pickles named "Wahlburgers Fresh Dill Chips."

**Front**          **Side**          **Top**



28.   Patriot also co-packs another variety of Wahlburgers pickles named "Wahlburgers Fresh Dill Chips Hot."

**Front**            **Side**            **Top**



29.   As shown *supra*, each of the labels for Wahlburgers Fresh Dill Spears, Fresh Dill Chips, and Fresh Dill Chips Hot inform customers that the pickles have "no preservatives" and are "all natural."

30.   The labels do not list any artificial preservatives as ingredients.

31.   The labels all prominently feature the word "FRESH" in all capitals as the first word in their names, which are printed multiple times on their labels.

11

32.     Bolstering the above claims, Wahlburgers pickles are exclusively sold in the refrigerated section of grocery stores, often alongside other brands, such as Grillo's, that are fresh, all natural, and do not contain preservatives.

2.     **Wahlburgers Pickle Labels are False and Misleading**

33.     Defendants' claims that Wahlburgers pickles are, *inter alia*, "fresh," "all natural," and contain "no preservatives" are false and misleading.  Testing performed by Biogen Laboratory Developments reveals that Wahlburgers pickles contain substantial amounts of benzoic acid, which is often added into foods via sodium benzoate, an artificial chemical preservative designed to lengthen the pickles' shelf life.  In fact, certificates of analysis from Biogen's testing (attached hereto as **Exhibit A**) indicate[1] Wahlburgers Hot Dill Chips pickles (a.k.a "Wahlburgers Fresh Dill Chips Hot") contain sodium benzoate in a concentration of 641 parts per million; Wahlburgers Dill Spears pickles (a.k.a. "Wahlburgers Fresh Dill Spears") contain sodium benzoate in a concentration of between 424 and 436 parts per million; and Wahlburgers Dill Chips pickles (a.k.a. "Wahlburgers Fresh Dill Chips") contain sodium benzoate in a concentration of 600 parts per million.  This renders Defendants' pickle labels false and misleading in several respects:

    a.  Defendants' labels' statements that Wahlburgers pickles contain "no preservatives" are plainly false and misleading.  This is because the pickles contain an artificial chemical preservative.

    b.  Defendants' labels' statements that Wahlburgers pickles are "all natural" are also false and misleading.  "All natural" products do not contain artificial chemical

---

[1]     Biogen's tests revealed the amounts of benzoic acid indicated on Exhibit A, and benzoic acid is almost always added to food via sodium benzoate, an artificial chemical preservative.

preservatives, and because Wahlburgers pickles contain an artificial chemical preservative, Wahlburgers pickles are not "all natural."

    c.   Defendants' omission of the artificial chemical preservative from Wahlburgers pickle labels is also false and misleading. The Food, Drug, and Cosmetic Act ("FDCA") and regulations promulgated thereunder require chemical preservatives to be included on product labels and described as preservatives. 21 U.S.C. § 343(k) (stating a food is misbranded if it contains "chemical preservative, unless it bears labeling stating that fact"); 21 C.F.R. § 101.22(j) ("A food to which a chemical preservative(s) is added shall, except when exempt pursuant to § 101.100 bear a label declaration stating both the common or usual name of the ingredient(s) and a separate description of its function, *e.g.*, 'preservative'"). Here, however, even though Wahlburgers pickles contain an artificial chemical preservative, and even though it is required to be listed on their pickles' labels, Defendants have conspicuously omitted it.

    d.   Defendants' labels' statements that Wahlburgers pickles are "fresh" are also false and misleading. "Fresh" products do not contain artificial chemical preservatives, and thus because Wahlburgers pickles contain an artificial chemical preservative, they are not "fresh." *See* 21 C.F.R. § 101.95(a) (stating term "fresh" can be used when food "has not been frozen or subjected to any form of thermal processing or any other form of preservation").

34.    The false and misleading nature of Wahlburgers pickle label statements is further bolstered by the fact that Wahlburgers pickles (1) are formulated to taste nearly identical to Grillo's pickles, which in fact contain zero artificial chemical preservatives; (2) use similar

naming conventions as Grillo's pickles; (3) contain the same nutritional fact panels as Grillo's pickles; and (4) are packaged in plastic jars that are nearly identical to Grillo's.  In short, Defendants have created pickles that copy Grillo's as closely as possible, thus giving the false and misleading impression that Wahlburgers pickles, like Grillo's, are free from artificial preservatives.

35.     Defendants' conduct is all the more culpable given that (1) Patriot had full knowledge of Grillo's recipes and (2) Defendants used this knowledge to formulate Wahlburgers pickle recipes to be nearly identical to Grillo's save for the addition of an artificial chemical preservative.  Thus, although Defendants knew Wahlburgers' pickle recipe differed from Grillo's almost solely by virtue of the addition of an artificial chemical preservative, Defendants nonetheless falsely labeled their product to deceive customers into believing that, like Grillo's, Wahlburgers pickles are, *inter alia*, free from artificial preservatives, fresh, and all natural.

36.     Additionally, pickles that contain artificial chemical preservatives typically sell for approximately one or two dollars less than truly fresh pickles that do not.  By virtue of the fact that Defendants' false and misleading claims dupe customers into believing Wahlburgers pickles feature premium attributes (are "fresh," "all natural," and free from artificial chemical preservatives), Defendants' claims thus dupe customers into paying premium prices for Wahlburgers pickles, even though they do not actually feature the premium attributes for which the customers are paying.

3.     **Defendants' False and Misleading Statements Are Likely to Harm Grillo's and Have Harmed Grillo's**

37.     Defendants' false and misleading statements have harmed Grillo's by virtue of diverted sales, lost shelf space, and lost market share that, but for Defendants' false and misleading statements, Grillo's would have retained and/or earned.

14

38.     Grillo's and Wahlburgers pickles are in direct competition in the fresh pickle market, and there are few, if any, other fresh pickle brands that have the same national reach and recognition as Grillo's or Wahlburgers.   Grillo's and Wahlburgers are often offered for sale next to each other in the same refrigerated sections of the same grocery stores.

39.     Grillo's and Wahlburgers are also often offered for sale alongside each other on online shopping platforms.   For instance, when some customers search for "fresh pickles" at Walmart via the grocery shopping app Instacart, Wahlburgers pickles and Grillo's pickles show up as the first results:



40.    Additionally, when some customers search for "pickles no preservatives," Wahlburgers pickles and Grillo's pickles again show up as the first results:



41.    Notably, customers have also commented on the similarities between Wahlburgers and Grillo's pickles.  For instance:

a.    On a Reddit.com thread titled "Thoughts on Wahlburgers Fresh Dill Spears," the most popular comment was the following:



b.    In response to a video review of Wahlburgers pickles posted by a content creator on Tiktok.com, viewers made, *inter alia*, the following comments:



16



**M B**
Those are just rebranded Grillos
2021-12-3  ♡ 1  Reply



**user7867453541569**
Looks like Grillo's packaging and look..
2021-12-2  ♡ 1  Reply



**Anthony Bovee**
Those pickles are oddly similar to Grillo's if you ask me. 😏
2021-12-2  ♡ 1  Reply

    c.   In fact, the same content creator then created a subsequent video review titled "Are @wahlburgersofficial pickles the same as @grillospickles???" after he "got a lot of comments saying that the Wahlburgers pickles [he] just reviewed are the same pickles as Grillo's. Additionally, in response to one of the comments on his video, the content creator wrote, "[t]here was a lot of people that were convinced they were the same."[2]

42.    Wahlburgers pickles also, as discussed *supra*, purport to be in the same fresh pickle category as Grillo's. Grillo's pickle labels state they are "fresh," and Grillo's website states, among other things, that its pickles have "zero artificial preservatives." Grillo's pickle labels also instruct the consumer to "keep [the pickles] refrigerated," and no artificial chemical preservatives are listed on the ingredient list. Similarly, Wahlburgers pickle labels, as discussed *supra*, state (albeit falsely and misleadingly) that Wahlburgers pickles are "fresh," have "no preservatives," and are "all natural." Wahlburgers labels also instruct consumers to "keep [the pickles] refrigerated," and no artificial chemical preservatives are listed on the ingredient lists.

---

[2] For avoidance of doubt, Grillo's is not affiliated with Wahlburgers pickles. Grillo's has never manufactured its pickles for another brand nor sold its pickles under another company's banner.

43.     Upon information and belief, Defendants' clandestine addition of an artificial chemical preservative to its pickles and the effects thereof afford Wahlburgers pickles a longer shelf life than fresh pickles and allow Defendants to hold inventory longer than they otherwise would be able to hold fresh pickles.  On information and belief, this artificially enhanced shelf life and ability to hold inventory longer affords Defendants a competitive advantage that is not available to companies that produce truly fresh pickles, such as Grillo's.

44.     Thus, customers shopping for fresh pickles and grocery store buyers seeking to stock their shelves with fresh pickles have, at times, chosen Wahlburgers over Grillo's pickles based on the fact that Wahlburgers pickles have an artificially lengthy shelf life combined with the false understanding that Wahlburgers is a fresh pickle (*i.e.* does not contain an artificial chemical preservative).  But for Wahlburgers' false and misleading pickle label statements, these customers and grocery store buyers would not have chosen Wahlburgers and would have chosen Grillo's instead.

45.     Additionally, a large cross section of customers, particularly those that are a part of the "real food" or "clean labeling" movements, will not consider purchasing products that contain artificial preservatives.  These customers and the grocery store buyers that serve these customers, at times, chose to purchase Wahlburgers pickles based on the false belief that they did not contain artificial preservatives.  But for Wahlburgers' false and misleading pickle label statements, these customers and grocery store buyers would not have chosen Wahlburgers and would have purchased Grillo's instead.

46.     Absent an injunction enjoining Defendants from continuing to make false and misleading statements on Wahlburgers pickle labels (or, in the alternative, an injunction

prohibiting Defendants from including artificial preservatives in Wahlburgers pickles), Grillo's will continue to suffer harm.

<u>**COUNT I**</u>

**False Advertising Under the Lanham Act - 15 U.S.C. § 1125 (a)**

47.     Plaintiff hereby realleges and incorporates by reference the allegations in the preceding paragraphs as if fully set forth herein.

48.     Defendants have made numerous false and misleading statements regarding the nature, characteristics, and qualities of Wahlburgers pickles (specifically, Wahlburgers Fresh Dill Spears, Fresh Dill Chips, and Fresh Dill Chips Hot):

a.   Defendants state on Wahlburgers pickle labels that Wahlburgers pickles contain "no preservatives." This is false and misleading because the pickles contain an artificial chemical preservative.

b.   Defendants state on Wahlburgers pickle labels that Wahlburgers pickles are "all natural." This is false and misleading because "all natural" products do not contain artificial chemical preservatives, and because Wahlburgers pickles contain an artificial chemical preservative, Wahlburgers pickles are not "all natural."

c.   Defendants omit from Wahlburgers pickle labels (1) the name of the artificial chemical preservative used in Wahlburgers pickles and (2) the fact that it functions an artificial chemical preservative. This is false and misleading because the FDCA and regulations promulgated thereunder require chemical preservatives to be included on product labels and described as preservatives. 21 U.S.C. § 343(k) (stating a food is misbranded if it contains "chemical preservative, unless

19

it bears labeling stating that fact"); 21 C.F.R. § 101.22(j) ("A food to which a chemical preservative(s) is added shall, except when exempt pursuant to § 101.100 bear a label declaration stating both the common or usual name of the ingredient(s) and a separate description of its function, *e.g.*, 'preservative'"). However, even though Wahlburgers pickles contain an artificial chemical preservative, and even though it is required to be listed on Wahlburgers pickle labels, Defendants have conspicuously omitted it.

d. Defendants state on Wahlburgers pickle labels that Wahlburgers pickles are "fresh." This is false and misleading because fresh products do not contain artificial chemical preservatives. Thus, because Wahlburgers pickles contain an artificial chemical preservative, they are not fresh. *See* 21 C.F.R. § 101.95(a) (stating term "fresh" can be used when food "has not been frozen or subjected to any form of thermal processing or any other form of preservation").

49. The false and misleading nature of these statements is bolstered by the fact that Wahlburgers pickles (1) are formulated to taste nearly identical to Grillo's pickles, which in fact contain zero artificial chemical preservatives; (2) use similar naming conventions as Grillo's pickles; (3) display the same nutritional fact panels as Grillo's pickles; and (4) are packaged in plastic jars that are nearly identical to Grillo's. In short, Defendants have created pickles that copy Grillo's as closely as possible, thus giving the false and misleading impression that Wahlburgers pickles, like Grillo's, are free from artificial preservatives.

50. Defendants' conduct is all the more culpable given that (1) Patriot had full knowledge of Grillo's recipes and (2) Defendants used this knowledge to formulate Wahlburgers pickle recipes to be nearly identical to Grillo's save for the addition of an artificial chemical

preservative.  Thus, although Defendants knew Wahlburgers' pickle recipe differed from Grillo's almost solely by virtue of the addition of an artificial chemical preservative, Defendants nonetheless falsely labeled their product to deceive customers into believing that, like Grillo's, Wahlburgers pickles are, *inter alia*, free from artificial preservatives, fresh, and all natural.

51.     Additionally, many customers prefer foods that are "fresh," "all natural," and free from artificial chemical preservatives over foods that are not, and thus pickles that contain artificial chemical preservatives typically sell for approximately one or two dollars less than truly fresh pickles (*i.e.* those that are free from artificial chemical preservatives).  By virtue of the fact that Defendants' false and misleading claims dupe customers into believing Wahlburgers pickles feature premium attributes (*i.e.* are "fresh," "all natural," and free from artificial chemical preservatives), Defendants' claims thus dupe customers into paying premium prices for Wahlburgers pickles, even though they do not actually feature the premium attributes for which the customers are paying.

52.     Both Wahlburgers pickles and Grillo's pickles travel in interstate commerce.

53.     Defendants' false and misleading statements are literally and explicitly false, and thus this Court "may grant relief without reference to the advertisement's impact on the buying public." *Castrol Inc. v. Pennzoil Co.*, 987 F.2d 939, 943 (3d Cir. 1993).

54.     Additionally, Defendants' false and misleading statements were deigned to deceive, and actually did deceive, a substantial portion of their intended audience.  As discussed *supra*, customers were deceived into believing that Wahlburgers pickles did not contain an artificial chemical preservative.

55.     As discussed *supra*, this deception is material in that it is likely to influence, and did influence, customers' purchasing decisions.  For instance:

a. A large cross section of customers, particularly those that are part of the "real food" or "clean labeling" movements, will not consider purchasing products that contain artificial preservatives. These customers and grocery store buyers that serve these customers, at times, chose to purchase Wahlburgers pickles based on the false belief that they did not contain artificial preservatives. But for Wahlburgers' false and misleading pickle label statements, these customers and grocery store buyers would not have purchased Wahlburgers, and some would have purchased Grillo's instead.

b. As discussed *supra*, Defendants' clandestine addition of an artificial chemical preservative to its pickles and the effects thereof afford Wahlburgers pickles a longer shelf life than fresh pickles and allow Defendants to hold inventory longer than they otherwise would be able to hold fresh pickles. Thus, customers shopping for fresh pickles and grocery store buyers seeking to stock their shelves with fresh pickles have, at times, chosen Wahlburgers over Grillo's pickles based on the fact that Wahlburgers pickles have an artificially lengthy shelf life combined with the false understanding that Wahlburgers is a fresh pickle (*i.e.* does not contain an artificial chemical preservative). But for Wahlburgers' false and misleading pickle label statements, these customers and grocery store buyers would not have chosen Wahlburgers, and some would have chosen Grillo's instead.

56. Defendants' deceptive conduct has caused and will continue to cause immediate and irreparable injury to Grillo's for which there is no adequate remedy at law, including declining sales, lost market share, lost customers, and loss of customer good will.

22

57.     Accordingly, Grillo's is entitled to judgment awarding it preliminary and permanent injunctive relief, treble damages, disgorgement of profits, attorneys' fees, costs, and any other relief the Court deems just and appropriate.

## COUNT II

### Common Law Unfair Competition

58.     Plaintiff hereby realleges and incorporates by reference the allegations in the preceding paragraphs as if fully set forth herein.

59.     Through the conduct described above, including false advertising and related deceptive practices, Defendants have committed common law unfair competition. *See Canfield Sci., Inc. v. Melanoscan, LLC*, Civil Action No. 16-4636, 2017 U.S. Dist. LEXIS 80896, at *19-20 (D.N.J. May 25, 2017) ("The test of unfair competition under New Jersey law is identical to the test for unfair competition under § 1125 of the Lanham Act.").

60.     Accordingly, Grillo's is entitled to judgment awarding it preliminary and permanent injunctive relief, treble damages, disgorgement of profits, attorneys' fees, costs and any other relief the Court deems just and appropriate.

## PRAYER FOR RELIEF

WHEREFORE, Grillo's respectfully requests that this Court:

(1)     Enter judgment in favor of Grillo's and against Defendants on each of Grillo's claims;

(2)     Issue preliminary and permanent injunctions:

    A.     Enjoining Defendants, their affiliates, officers, agents, servants, employees, attorneys, dealers, confederates, privies, subsidiaries, divisions, successors and assigns, and all persons acting for, with, by, through, under, or in active concert, participation or combination with any of the foregoing from making false and

misleading statements claiming that Wahlburgers pickles contain "no preservatives," are "all natural," or are "fresh";

B.      Ordering Defendants to include the name of the artificial chemical preservative they use in Wahlburgers pickles as an ingredient on the pickles' labels and to describe it as a "chemical preservative";

(3)      As an alternative to (2) above, issue preliminary and permanent injunctions enjoining Defendants from selling Wahlburgers pickles that contain any artificial chemical preservative; and

(4)      Award Grillo's the following relief:

A.      Defendants' profits and/or any actual damages sustained by Grillo's in an amount to be determined at trial;

B.      Treble damages;

C.      Reasonable attorneys' fees and costs;

D.      Punitive damages in an amount to be determined at trial; and

E.      Any other relief that the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Pursuant to Fed. R. Civ. P. 38(b), Grillo's demands a trial by jury on all issues triable by jury.

Date:  January 3, 2023                    Respectfully submitted,

                                          **QUINN EMANUEL URQUHART &
                                          SULLIVAN, LLP**

                                          By: */s/Christina I. Crowley*
                                          Christina I. Crowley
                                          christinacrowley@quinnemanuel.com
                                          51 Madison Avenue, 22nd Floor
                                          New York, NY 10010
                                          Telephone: (212) 849-7000
                                          Facsimile: (212) 849-7100

                                          Marshall M. Searcy III (Pro Hac Vice Forthcoming)
                                          marshallsearcy@quinnemanuel.com
                                          Gregory A. Fuoco (Pro Hac Vice Forthcoming)
                                          gregfuoco@quinnemanuel.com
                                          865 South Figueroa Street, 10th Floor
                                          Los Angeles, California 90017-2543
                                          Telephone: (213) 443-3000
                                          Facsimile: (213) 443-3100

                                          *Attorneys for Plaintiff Grillo's Pickles, Inc.*

## <u>VERIFICATION</u>

I, Adam Kaufman, declare as follows:

1.      I am the President of Grillo's Pickles, Inc. ("Grillo's"), Plaintiff in this action, and have served as an executive at Grillo's since May 2018.  I am familiar with the facts of this case and am authorized to verify this complaint on behalf of Grillo's.

2.      I have read the foregoing Verified Complaint and all the allegations contained therein.  Except as to the allegations alleged upon information and belief, which allegations I believe to be true, all the allegations in the Verified Complaint are true based on my knowledge, inquiries to and communications with other Grillo's employees and agents regarding the matters alleged in the Verified Complaint, and documents gathered by Grillo's attorneys and agents. I declare under penalty of perjury that the foregoing is true and correct.

Executed on this 3rd day of January, 2023, at Westwood, Massachusetts.

Adam Kaufman

## <u>LOCAL RULE 11.2 CERTIFICATION</u>

I certify that the matter in controversy is not the subject of any other action pending in any court, or of any pending arbitration or administrative proceeding.

Date: January 3, 2023

*/s/Christina I. Crowley*
Christina I. Crowley
christinacrowley@quinnemanuel.com
51 Madison Avenue, 22nd Floor
New York, NY 10010
Telephone: (212) 849-7000
Facsimile: (212) 849-7100

## <u>LOCAL RULE 201.1 CERTIFICATION</u>

I certify under penalty of perjury that the matter in controversy is not eligible for

compulsory arbitration because Plaintiff seeks damages beyond monetary damages, including a

claim for preliminary and permanent injunctive relief.

Date: January 3, 2023

<u>/s/Christina I. Crowley</u>
Christina I. Crowley
christinacrowley@quinnemanuel.com
51 Madison Avenue, 22nd Floor
New York, NY 10010
Telephone: (212) 849-7000
Facsimile: (212) 849-7100
