# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW JERSEY
# NEWARK VICINAGE

GRILLO'S PICKLES, INC.,

      Plaintiff,

     v.

PATRIOT PICKLE INC., ARKK
FOOD COMPANY, and
WAHLBURGERS I, LLC,

      Defendants.

Case No: 2:23-cv-00011-AME-MCA

---

## DEFENDANT PATRIOT PICKLE, INC.'S MEMORANDUM
## OF LAW IN SUPPORT OF MOTION TO DISMISS
## <u>PLAINTIFF'S AMENDED COMPLAINT</u>

Jennifer L. Del Medico
Harold K. Gordon
(admitted *pro hac vice*)
Christopher S. Dinkel
(*pro hac vice* forthcoming)
Patrick L. Wright
(*pro hac vice* forthcoming)
**JONES DAY**
250 Vesey Street
New York, NY 10281.1047
Tel: (212) 326-3939
jdelmedico@jonesday.com
hgordon@jonesday.com
cdinkel@jonesday.com
pwright@jonesday.com

*Attorneys for Defendant Patriot Pickle,
Incorporated*

# TABLE OF CONTENTS

INTRODUCTION ...................................................................................................1

BACKGROUND ...................................................................................................2

STANDARD OF REVIEW ...................................................................................5

ARGUMENT .......................................................................................................6

    I.    Grillo's Lacks Article III Standing .......................................................6

    II.    Grillo's Amended Complaint Should Be Dismissed for Failure to State a Lanham Act False Advertising Claim ..................................9

        A.    Grillo's Lacks a Factual and Legal Basis to Allege that Patriot's "GMO-Free" Statement Is Literally False ...............10

        B.    Grillo's Non-GMO Project Claim Fails as a Matter of Law and Fact ...........................................................................14

            1.    Grillo's Has Not Stated a Claim for False Advertising .................................................................14

            2.    Grillo's Non-GMO Project Claim Is "Patently Implausible" ......................................................................17

        C.    Grillo's Has Not Pled Facts to Allege a Compensable Injury ......................................................................................21

    III.    The Court Should Dismiss Grillo's Common Law Claim or Decline to Exercise Supplemental Jurisdiction .................................25

CONCLUSION ....................................................................................................26

i

# <u>TABLE OF AUTHORITIES</u>

**Page**

CASES

*Ashcroft v. Iqbal*
    556 U.S. 662 (2009)........................................................................7, 13

*Ault v. J.M. Smucker Co.*,
    2014 WL 1998235 (S.D.N.Y. May 15, 2014) ...................................11

*B. Sanfield, Inc. v. Finlay Fine Jewelry Corp.*,
    258 F.3d 578 (7th Cir. 2001) .........................................................9, 11

*Bell Atl. Corp v. Twombly*,
    550 U.S. 544 (2007)...................................................5, 6, 10, 14, 22

*Bracco Diagnostics, Inc. v. Amersham Health, Inc.*,
    627 F. Supp. 2d 384 (D.N.J. 2009)...............................................21, 23

*Brunswick v. Spinit Reel*,
    832 F.2d 513 (10th Cir. 1987) ............................................................23

*Castrol Inc. v. Pennzoil Co.*,
    987 F.2d 939 (3d Cir. 1993) ...............................................................23

*Constitution Party of Pa. v. Aichele*,
    757 F.3d 347 (3d Cir. 2014) .................................................................5

*Crabtree v. Experian Info. Sols., Inc.*,
    948 F.3d 872 (7th Cir. 2020) ................................................................7

*Dastar Corp. v. Twentieth Century Fox Film Corp.*,
    539 U.S. 23 (2003)..............................................................................15

*EFCO Corp. v. Symons Corp.*,
    219 F.3d 734 (8th Cir. 2000) ..............................................................24

## TABLE OF AUTHORITIES
(continued)

*Empresa Cubana Del Tabaco v. Culbro Corp.*,
    399 F.3d 462 (2d Cir. 2005) .................................................................16

*Gordon v. Target Corp.*,
    2022 WL 836773 (S.D.N.Y. Mar. 18, 2022)..........................................18, 19, 20

*In re Kind LLC "Healthy and All Natural"Litig.*,
    287 F. Supp. 3d 457 (S.D.N.Y. 2018) ...............................................11

*In re Plum Baby Food Litig.*,
    2022 WL 16552786 (D.N.J. Oct. 31, 2022) .........................................5

*Latiff v. Nestle United States, Inc.*,
    2019 U.S. Dist. LEXIS 161015 (C.D. Cal. Sep. 19, 2019) .........................15, 19

*Lexmark Int'l, Inc. v. Static Control Components, Inc.*,
    572 U.S. 118 (2014).......................................................................16

*Liberson v. Johnson & Johnson Consumer Cos.*,
    865 F. Supp. 2d 529 (D.N.J. 2011).....................................................7

*Little v. KPMG LLP*,
    575 F.3d 533 (5th Cir. 2009) ..........................................................8, 9

*Malleus v. George*,
    641 F.3d 560 (3d Cir. 2011) .........................................................5, 7, 8, 14, 22

*Money v. Bristol-Myers Squibb Co.*,
    2009 WL 5216987 (D.N.J. 2009) .....................................................8

*N.J. Physicians United Reciprocal Exch. v. Boynton & Boynton, Inc.*,
    141 F. Supp. 3d 298 (D.N.J. 2015)...............................................21, 22

*Norman v. Gerber Prods. Co.*,
    2023 U.S. Dist. LEXIS 3834 (N.D. Cal. Jan. 6, 2023)................................15, 19

# TABLE OF AUTHORITIES
(continued)

*Novartis Consumer Health, Inc. v. Johnson & Johnson-Merck*
    *Consumer Pharma. Co.*,
    290 F.3d 578 (3d Cir. 2002) ...............................................................13

*Parks LLC v. Tyson Foods, Inc.*,
    863 F.3d 220 (3d Cir. 2017) ...........................................16, 17, 24, 25

*Pernod Ricard USA, LLC v. Bacardi U.S.A., Inc.*,
    653 F.3d 241 (3d Cir. 2011) ...................................................1, 17, 21

*Raines v. Byrd*,
    521 U.S. 811 (1997)..............................................................................7

*Rankin v. Arca Cont'l S.A.B. de C.V.*,
    2022 U.S. Dist. LEXIS 103573 (E.D.N.Y. June 9, 2022) ............15, 19

*Reilly v. Ceridian Corp.*,
    664 F.3d 38 (3d. Cir. 2011) ..................................................................7

*TransUnion LLC v. Ramirez*,
    141 S. Ct. 2190 (2021)......................................................................6, 7

*Tris Pharma, Inc. v. UCB Mfg., Inc.*,
    2016 WL 4506129 (N.J. Super. Ct. App. Div. Aug. 29, 2016).........25

*Warner-Lambert Co. v. BreathAsure, Inc.*,
    204 F.3d 87 (3d Cir. 2000) .................................................................21

OTHER AUTHORITIES

15 U.S.C. § 1125(a) ..................................................................1, 14, 15, 16

28 U.S.C. § 1367......................................................................................25

7 C.F.R. § 66.9(a)......................................................................................12

**INTRODUCTION**

In its First Amended Complaint ("FAC"), Ex. 1,[1] Grillo's Pickles, Inc.

("Grillo's") alleges that Defendants Patriot Pickle, Inc. ("Patriot"), ARKK Food

Company ("ARKK"), and Wahlburgers, LLC ("Wahlburgers") (collectively

"Defendants") engaged in false advertising relating to (i) artificial preservatives

("Preservative Claims") and (ii) GMOs ("GMO Claims") in certain of their

products.  Grillo's seeks damages and injunctive relief for both claims.

*First*, Patriot moves to dismiss Grillo's damages claims pursuant to Rule

12(b)(1) because Grillo's has not sufficiently alleged that it suffered a concrete

injury and thus lacks standing.  *Second*, Patriot moves to dismiss Grillo's GMO

Claims under Rule 12(b)(6) because Grillo's has failed to plead facts that Patriot

"has made false or misleading statements" that "misrepresent[] the nature,

characteristics, qualities, or geographic origin of his or her or another person's

goods[.]"  *Pernod Ricard USA, LLC v. Bacardi U.S.A., Inc.*, 653 F.3d 241, 248 (3d

Cir. 2011) (quoting 15 U.S.C. § 1125(a)).  *Third*, Patriot moves to dismiss Grillo's

claim for damages under Rule 12(b)(6) because Grillo's has not pled facts that,

taken as true, would satisfy the injury prong of a Lanham Act false advertising

claim.  *Finally*, Patriot moves to dismiss Grillo's New Jersey common law unfair

---

[1] All exhibited cited herein are annexed to the accompanying Declaration of
Jennifer L. Del Medico ("Del Medico Decl.").

competition claims because New Jersey does not recognize an unfair competition claim premised on false advertising.

Accordingly, the Court should dismiss the FAC.

## BACKGROUND

Patriot is an established business-to-business supplier of a wide range of pickled products.  Among other things, Patriot specializes in contract manufacturing, private labeling, and retail, food service, and industrial tote packaging.  Patriot sources cucumbers directly from growers and manufactures several varieties of pickles according to its customers' specifications—including both fresh, all-natural, artificial-preservative-free pickles and standard pickles that contain artificial preservatives.  From 2014 to 2021 Patriot worked with Grillo's through an intermediary to pack Grillo's pickles.  FAC ¶¶ 24–25.  Since early 2021 Patriot has worked with ARKK and Wahlburgers to manufacture and pack three varieties of all-natural pickles under the Wahlburgers brand.

On January 3, 2023, Grillo's sued Patriot, ARKK, and Wahlburgers for false advertising under the Lanham Act and unfair competition under New Jersey common law.  Compl. ¶¶ 47–60.  In particular, Grillo's alleged that Defendants made false and misleading statements by labeling Wahlburgers' pickles as all-natural, fresh, and artificial-preservative-free when lab tests showed that some containers of Wahlburgers' pickles contained the preservative sodium benzoate.

2

*Id.* ¶¶ 1–3, 33.  On May 31, 2023, Grillo's filed the FAC to assert additional false

advertising claims, alleging that the "GMO-Free" on Wahlburgers' labels is false

and misleading.  FAC ¶¶ 5, 38–43, 53, 60b, 64c.  Grillo's has requested

preliminary[2] and permanent injunctions, damages, disgorgement, and attorneys'

fees.  *Id.* ¶¶ 66, 69.

Once Patriot received notice of this action on January 3, 2023, it began an

internal review to determine the source of the sodium benzoate.  Patriot quickly

analyzed its manufacturing and packing processes, identified the source of the

sodium benzoate, and implemented procedures to address the issue.  Based on

Patriot's past manufacturing processes, it appears that not all Wahlburgers' pickles

were exposed to sodium benzoate, but those that were contained varying levels of

the preservative.[3]  By January 5, 2023, Patriot had implemented new procedures to

ensure that no fresh pickles are exposed to sodium benzoate anywhere in the

process.  Subsequent testing has confirmed that pickles manufactured and packed

under this new procedure are sodium-benzoate-free.

On February 7, 2023, Patriot filed a memorandum of law opposing Grillo's

motion for preliminary injunction and moving to dismiss the complaint.  Mem. In

---

[2] Grillo's has not filed a motion for preliminary injunction in relation to its new
claims.  Its prior motion, which is limited to Grillo's Preservative Claims, has been
fully briefed and is currently pending before this Court.  *See* Order, 3 n.5, ECF No.
59.
[3] All detected levels of sodium benzoate were well below FDA safety standards.

Opp'n, ECF No. 35.  Patriot argued that Grillo's claims for injunctive relief were

moot because Patriot had taken adequate steps to prevent future sodium benzoate

exposure—effectively granting Grillo's the relief it requested.  *Id.*  In reply,

Grillo's argued that its injunctive relief could not be moot absent a recall of all

products that had shipped prior to January 3, 2023, Reply Br., ECF No. 41, which

Patriot opposed in its sur-reply, Reply, ECF No. 49.  As of May 3, 2023, the last of

the pre-Complaint pickles are past their "best by" date and are unlikely to be on

store shelves.  Thus, even if Grillo's had implicitly requested a recall, that request

would now be moot as well.  Grillo's preliminary injunction motion has been fully

briefed and is pending before this Court.[4]

On May 8, 2023, while Grillo's and Patriot's motions were still pending,

Grillo's requested leave to file a motion to amend its Complaint in order to add two

new false advertising claims.  Letter from Gregory A. Fuoco re: Leave to File

Motion to Amend Grillo's Complaint, ECF No. 57.  On May 15, 2023, the

Defendants opposed—arguing that amendment would be futile because both new

claims were baseless.  Letter from Patriot Pickle Inc., ECF No. 58.  Nevertheless,

on May 23, 2023, Magistrate Judge Espinosa granted Grillo's request and set a

---

[4] Magistrate Judge Espinosa administratively terminated Patriot's motion to
dismiss but left in place those portions of Patriot's memorandum of law that
opposed Grillo's preliminary injunction motion.  Dkt. No. 59 at 3 n.5.  As such,
Patriot has focused this brief entirely on arguments supporting its motion to
dismiss Grillo's Amended Complaint.

briefing schedule related to the instant Motion.  Order, ECF No. 59.  Patriot now moves to dismiss Grillo's Amended complaint under Rule 12(b)(1) for lack of Article III standing and Rule 12(b)(6) for failure to state a claim upon which relief can be granted.

## STANDARD OF REVIEW

"A motion to dismiss for want of standing is . . . properly brought pursuant to Rule 12(b)(1), because standing is a jurisdictional matter."  *Const. Party of Pa. v. Aichele*, 757 F.3d 347, 357 (3d Cir. 2014).  A facial attack under Rule 12(b)(1), as is the case here, "considers a claim on its face and asserts that it is insufficient to invoke the subject matter jurisdiction of the court."  *Id.* at 358.  The standard of review for a facial attack on subject matter jurisdiction is essentially the same as the standard under Rule 12(b)(6).  *In re Plum Baby Food Litig.*, 2022 WL 16552786, at *5 (D.N.J. Oct. 31, 2022).

Pursuant to Rule 12(b)(6), a motion to dismiss "should be granted if the plaintiff is unable to plead 'enough facts to state a claim to relief that is plausible on its face.'"  *Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011) (quoting *Bell Atl. Corp v. Twombly*, 550 U.S. 544, 570 (2007)).  To determine the sufficiency of a complaint, a court must (1) take note of the elements a plaintiff must plead to state a claim; (2) identify allegations that are not entitled to the assumption of truth because they are no more than conclusions; and (3) determine whether well-

pleaded factual allegations plausibly give rise to an entitlement for relief.  *Id.* (alterations, quotations, and other citations omitted).  The Rule 12(b)(6) standard "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do . . . ."  *Twombly*, 550 U.S. at 555.

## ARGUMENT

The Court should dismiss Grillo's complaint for several reasons.  *First*, Grillo's lacks standing to assert any of its damages claims because Grillo's has not pled facts to show that it suffered a concrete and particularized injury as required to have Article III standing.  *Second*, Grillo's has failed to state a claim under the Lanham Act's false advertising provisions.  Indeed, Grillo's has not pled facts sufficient to show that  "GMO-Free" is a false statement because it did not (and could not) allege that the subject pickles contain genetically modified or bioengineered ingredients.  Moreover, Grillo's did not plead a compensable injury in relation to any claim as is required to state a false advertising claim under the Lanham Act.  *Third*, Grillo's common law unfair competition claim misstates New Jersey law, which does not provide a cause of action for false advertising.  For all of these reasons, the Court should dismiss Grillo's complaint.

## I.  GRILLO'S LACKS ARTICLE III STANDING

Grillo's lacks Article III standing to sue, and its Amended Complaint must be dismissed for lack of subject matter jurisdiction under Rule 12(b)(1).  "To have

Article III standing to sue in federal court, plaintiffs must demonstrate, among other things, that they suffered a concrete harm.  No concrete harm, no standing." *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2200 (2021).  Indeed, the Supreme Court has "consistently stressed that a plaintiff's complaint must establish that he has a 'personal stake' in the alleged dispute, and that the alleged injury suffered is particularized as to him." *Raines v. Byrd*, 521 U.S. 811, 819 (1997).  As such, a lawsuit cannot proceed where a "plaintiff has not suffered any physical, monetary, or cognizable intangible harm traditionally recognized as providing a basis for a lawsuit in American courts." *TransUnion LLC*, 141 S. Ct. at 2206; *see also Crabtree v. Experian Info. Sols., Inc.*, 948 F.3d 872, 879 (7th Cir. 2020) (holding that plaintiff lacked standing because he "ha[d] identified no harm of any kind"); *Liberson v. Johnson & Johnson Consumer Cos.*, 865 F. Supp. 2d 529, 537 (D.N.J. 2011) (dismissing for lack of standing claims related to products that the plaintiff had never purchased).  A plaintiff bears a continuing burden to demonstrate standing through each phase of the litigation.  *TransUnion LLC*, 141 S. Ct. at 2208. This includes pleading facts that (taken as true) would prove standing.  *Reilly v. Ceridian Corp.*, 664 F.3d 38, 41 (3d. Cir. 2011).

Grillo's allegations do not come close to satisfying the concrete harm requirement.  *First*, Grillo's repeated incantation of "sales, allotted shelf space, and market share," FAC ¶¶ 4, 44, 53, 65, amounts to nothing "more than conclusions,

[that] are not entitled to the assumption of truth[,]" *Malleus*, 641 F.3d at 563 (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009)). Grillo's must plead facts—not conclusions. *Id*. And if Grillo's did, in fact, suffer financial harm due to Wahlburgers' presence in the market, it could (and should) have pled facts to that effect. Tellingly, it did not. This is not a situation in which "[t]he necessary factual allegations to support [Grillo's] claim . . . are within the control of, and therefore subject to concealment by [Patriot]." *Money v. Bristol-Myers Squibb Co.*, 2009 WL 5216987, at *9 (D.N.J. Dec. 30, 2009). Rather, evidence of Grillo's alleged injury—if any such evidence exists—would be entirely within Grillo's control, yet Grillo's has not alleged any direct, concrete harm. Thus, "[t]he conclusory nature of [Grillo's] allegations mandates dismissal" because Grillo's has failed to allege facts to support that it suffered a concrete injury. *Id*.

*Second*, Grillo's alleged harm is entirely contingent on the purchasing decisions of third parties, which are too conjectural to confer standing. In *Little v. KPMG LLP*, for example, the alleged injury was lost business that the plaintiffs asserted they would have earned had KPMG not been present in the market. 575 F.3d 533, 540 (5th Cir. 2009). But the court held this alleged harm to be too speculative because nothing guaranteed that KPMG's clients would have sought other services, that they would have hired any of the plaintiff competitors, or that they would have paid for accounting services at all. *Id*. at 540–41. As the Court

8

explained, "[a] claim of injury generally is too conjectural or hypothetical to confer standing when the injury's existence depends on the decisions of third parties not before the court."  *Id*. at 540; *see also B. Sanfield, Inc. v. Finlay Fine Jewelry Corp.*, 258 F.3d 578, 581–82 (7th Cir. 2001) (holding that jewelry store lacked standing to sue competitor for false advertising even though the statements at issue were indisputably false because the plaintiff could not show that consumers would have purchased his merchandise absent defendants' false statements).  Thus, Grillo's bald, conclusory assertions—that Wahlburgers' customers "*would have chosen* Grillo's instead" or that "Grillo's would have retained and/or earned" the sales, shelf space, and market share—rely too heavily on speculative third-party conduct to constitute a concrete injury.

Accordingly, Grillo's lacks Article III standing to assert its damages claims, and thus those claims should be dismissed pursuant to Rule 12(b)(1).

## II. GRILLO'S AMENDED COMPLAINT SHOULD BE DISMISSED FOR FAILURE TO STATE A LANHAM ACT FALSE ADVERTISING CLAIM

Grillo's has failed to state a false advertising claim under the Lanham Act. Grillo's has not pled sufficient facts to sustain either of its new claims that relate to Wahlburgers' "GMO-Free" statement, and it has failed to allege that it suffered compensable harm in relation to any of its claims.  This Court, then, should dismiss

Grillo's Amended Complaint—including both its requests for injunctive and monetary relief.[5]

### A. Grillo's Lacks a Factual and Legal Basis to Allege that Patriot's "GMO-Free" Statement Is Literally False

Grillo's claim that Patriot's "GMO-Free" statement is literally false is meritless because Grillo's has not pled facts that would show that Wahlburgers' pickles contain GMOs sufficient "to raise a right to relief above the speculative level[.]" *Twombly*, 550 U.S. at 555. Rather than plead facts related to the nature of Wahlburgers' pickles, Grillo's argues that (1) the term "GMO-Free" is inherently false, FAC ¶ 42, (2) Patriot has not sufficiently substantiated its GMO-Free claim, *id*. ¶ 43 and (3) Patriot's alleged propensity to make false statements (based on unproven allegations in this action) leads to the conclusion that Patriot is lying here, *id*. All fail.

*First*, Grillo's argument that the term "GMO-Free" is inherently false has no legal basis. Guidance from the Food and Drug Administration ("FDA") allows food producers to use either label "as long as such information is truthful and not misleading." *Guidance for Industry: Voluntary Labeling Indicating Whether Foods Have or Have Not Been Derived from Genetically Engineered Plants* 7,

---

[5] As described in Patriot's prior briefing, Grillo's request for injunctive relief related to its Preservative Claims are moot. Grillo's request for injunctive relief related to its newly pled, "GMO-Free" claims should be denied because Grillo's has failed to state a claim under the Lanham Act.

FDA.gov (March 2019), https://www.fda.gov/regulatory-information/search-fda-guidance-documents/guidance-industry-voluntary-labeling-indicating-whether-foods-have-or-have-not-been-derived.  And although the FDA has indicated that terms like "not bioengineered" or "not genetically engineered" are preferable to terms using the acronym "GMO" (including *both* GMO-Free and Non-GMO), it does not plan to take enforcement action against labels using either GMO-based terminology as long as the "food is, in fact, not derived from a genetically engineered plant." *Id*.  Thus, the term "GMO-Free" on a food product without plausible allegations that the product contains GMOs cannot serve as the basis for a false advertising claim.  *See B. Sanfield, Inc.*, 168 F.3d at 973 ("The regulations do not simply offer the defendant safe harbor against a charge of deceptive advertising; they essentially define the circumstances under which the advertising . . . is deceptive."); *see also In re Kind LLC "Healthy and All Natural" Litig.*, 287 F. Supp. 3d 457, 462 (S.D.N.Y. 2018) ("Plaintiffs assert that based on testing completed . . . they discovered the presence of GMOs in some KIND products."); *Ault v. J.M. Smucker Co.*, 2014 WL 1998235, *1 (S.D.N.Y. May 15, 2014) (noting that the complaint contained allegations that the majority of soy, canola, and corn, which were ingredients in defendant's product, are GMO).

Notably, the basis of Grillo's argument on this point is not any legal authority but rather statements from the Non-GMO Project.  Thus, rather than

quoting the FDA or any other governmental guidance, Grillo's quotes a private entity's website which says that "'GMO Free' and similar claims are not legally or scientifically defensible." FAC ¶¶ 5, 42, 60b. Not only does this conflict with the only agency guidance on the issue, it also fails to suggest that the subject pickles contain GMOs. Therefore, it is not enough to survive a motion to dismiss.

*Second*, Grillo's argument that Patriot has not sufficiently substantiated its GMO-Free claim is similarly defective. Grillo's asserts "upon information and belief," that "Defendants [have not] sufficiently tested their pickles to ensure that they are free from GMOs." *Id.* ¶ 43. But Patriot need not test its products to say that they are GMO-free. Under the National Bioengineered Food Disclosure Standard, a food manufacturer can substantiate a GMO-related claim based either on records that "verify that the food [was] sourced from a non-bioengineered crop or source" *or* "[c]ertificates of analysis or other records of testing[.]" 7 C.F.R. § 66.9(a)(1), (3).[6] These are both viable alternatives for substantiating a claim that a food does not contain detectable levels of genetically modified ingredients, and Patriot would be well within the law to label the subject pickles as "GMO-Free" without having ever conducted a laboratory test as long as it had substantiated the

---

[6] A manufacturer can also maintain records "to verify that the food has been subjected to a refinement process validated to make the modified genetic material in the food undetectable[,]" 7 C.F.R. § 66.9(a)(2), but this would not be an option where a product contains whole, unrefined ingredients.

claim by another means.  Thus, even accepting that allegation to be true and assuming that Patriot has never conducted a single test for GMOs, this would not be enough to show that the GMO-Free statement is unsubstantiated.

It is also worth noting that if this allegation were enough to survive a motion to dismiss, a plaintiff could pick *any* GMO-related statement on the label of *any* product and survive a motion to dismiss by simply shouting "prove it!"  *See Iqbal*, 556 U.S. at 678–79 ("Rule 8 . . . does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions.").  In Grillo's FAC, Grillo's cites *Novartis Consumer Health, Inc. v. Johnson & Johnson-Merck Consumer Pharm. Co.* to suggest that a statement can be treated as *per se* false when a defendant fails (or refuses) to offer up proof of substantiation on demand, FAC ¶ 43 (citing 290 F.3d 578, 590 (3d Cir. 2002)), but that case relied on a unique, pharmaceutical regulatory scheme that bars the use of certain language absent clinical substantiation.  290 F.3d at 585.  Regulations related to GMO-free foods are not nearly as stringent, and *Novartis* cannot be read as creating a presumption that any statement is *per se* false unless the defendant offers some sort of external proof.

*Finally*, Grillo's argues that Defendants' "track record of making false statements" is enough "to conclude that Defendants' 'GMO-Free' claim is also unsupported and false."  FAC ¶ 43.  But this is nothing more than an impermissible

13

propensity argument intended to "create[] a *suspicion* of a legally cognizable right of action" without providing any factual basis. *Twombly*, 550 U.S. at 555 (emphasis added). Moreover, the "track record" that Grillo's references is based entirely on Grillo's allegations that Patriot has made other false statements on the Wahlburgers label. Not only are these allegations unproven, they cannot serve as proof that other, entirely unrelated statements are false. *See id.* ("[A] plaintiff's obligation to provide 'grounds' or his 'entitlement to relief' requires more than labels and *conclusions*[.]") (alterations adopted) (emphasis added).

Accordingly, Grillo's allegations that the "GMO-Free" on Wahlburgers' label is false are "no more than conclusions . . . not entitled to the assumption of truth" and should be dismissed. *Malleus*, 641 F.3d at 563.

## B. Grillo's Non-GMO Project Claim Fails as a Matter of Law and Fact

### 1. Grillo's Has Not Stated a Claim for False Advertising

Grillo's alleges that the subject label "mislead[s] customers into believing that the pickles are Non-GMO Project verified when they are not[.]" FAC ¶ 38. But this is not a permissible basis for a false advertising claim under the Lanham Act. The Lanham Act provides a false advertising cause of action for misrepresentations concerning "the nature, characteristics, qualities, or geographic origin of [a defendant's] or another person's goods, services, or commercial activities." 15 U.S.C. § 1125(a)(1)(B). Grillo's allegations do not implicate any of

the statutory bases for a false advertising claim and, therefore, fail for lack of a

viable cause of action.

The Lanham Act's false advertising provisions proscribe a very specific type

of unfair competition—not unfair competition more generally.  As the Supreme

Court has stated, the Lanham Act's false advertising cause of action "does not have

boundless application as a remedy for unfair trade practices.  Because of its

inherently limited wording, § 1125(a) can never be a federal 'codification' of the

overall law of 'unfair competition,' but can apply only to certain unfair trade

practices prohibited by its text." *Dastar Corp. v. Twentieth Century Fox Film

Corp.,* 539 U.S. 23, 29 (2003) (internal citations omitted).  This is why all three of

Grillo's exemplar cases, FAC ¶ 41, involved state unfair competition claims and

*not* Lanham Act false advertising claims.  *See Rankin v. Arca Cont'l S.A.B. de

C.V.*, 2022 U.S. Dist. LEXIS 103573, at *2 (E.D.N.Y. June 9, 2022) (action

brought under New York General Business Law); *Latiff v. Nestlé U.S., Inc.*, 2019

U.S. Dist. LEXIS 161015, at *2 (C.D. Cal. Sept. 19, 2019) (action brough under

California Unfair Competition Law, California False Advertising Law, and

California Consumers Legal Remedies Act); *Norman v. Gerber Prods. Co.*, 2023

U.S. Dist. LEXIS 3834, at *19 (N.D. Cal. Jan. 6, 2023) (action brought under

California Unfair Competition Law, California's False Advertising Law,

California's Consumers Legal Remedies Act, and various California common law

15

doctrines).  Because Grillo's has couched this argument under the Lanham Act's

false advertising provision, however, the scope of the Lanham Act is all that

matters.

Rather than codifying common law doctrines related to unfair competition,

§1125(a) "creates two distinct bases of liability: false association, § 1125(a)(1)(A),

and false advertising, § 1125(a)(1)(B)."  *Lexmark Int'l, Inc. v. Static Control*

*Components, Inc.*, 572 U.S. 118, 122 (2014).  False association proscribes acts that

are "likely to cause confusion . . . as to the affiliation, connection, or association of

such person with another person, or as to the origin, sponsorship, or approval of his

or her goods, services, or commercial activities by another person[.]"  15 U.S.C. §

1125(a)(1)(A).  False advertising is limited to false statements concerning "'the

nature, characteristics, qualities, or geographic origin' of a product."  15 U.S.C. §

1125(a)(1)(B).  The two causes of action are not interchangeable.  *Lexmark*, 572

U.S. at 122; *see also Parks LLC v. Tyson Foods, Inc.*, 863 F.3d 220, 225–26 (3d

Cir. 2017) (rejecting false advertising claim that was "essentially a false

association claim in disguise"); *Empresa Cubana Del Tabaco v. Culbro Corp.*, 399

F.3d 462, 478 (2d Cir. 2005) (emphasizing two distinct causes of action under §

1125(a)).

Grillo's "butterfly claim"—that the subject label improperly copies the

certification mark of the Non-GMO Project—does not relate to "the nature,

characteristics, qualities, or geographic origin" of the pickles.  Rather, Grillo's

alleges that Patriot is holding Wahlburgers pickles out as "Non-GMO Project

verified when they are not[.]"  FAC ¶ 38.  In essence, then, Grillo's alleges that

Patriot has created a false association between the Non-GMO Project and

Wahlburgers pickles by infringing upon the Non-GMO Project's registered

certification mark.  "This is a false association claim and nothing more."  *Parks

LLC*, 863 F.3d at 227.[7]  And even if Grillo's had alleged that Patriot's purported

use of the Non-GMO Project's mark somehow constituted a statement about "the

nature, characteristics, qualities, or geographic origin" of the subject pickles, this

claim would fail because Grillo's has not adequately alleged that the pickles

contain genetically modified ingredients such that the statement would be false.

### 2.   Grillo's Non-GMO Project Claim Is "Patently Implausible"

Even if Grillo's *could* bring a false advertising claim based solely on

allegations of the unauthorized use of another company's certification mark, it

would fail in this case because "no reasonable person could be misled by the

advertisement in question."  *Pernod Ricard USA, LLC*, 653 F.3d at 252 n.12

(explaining that courts should "be prepared to use common sense" and dismiss

false advertising claims when "no reasonable person could be misled by the

---

[7] Even if Grillo's were to restyle this claim as a false association claim, it would
necessarily fail because a false association requires, among other things, that "the
marks are owned by the plaintiff."  *Parks LLC*, 863 F.3d at 230.

advertisement in question").  Grillo's alleges that Patriot's use of a "butterfly mark next to the text 'GMO-Free' on Wahlburgers' labels . . . is misleading because it is nearly identical to the mark used by the Non-GMO Project."  FAC ¶ 60.  But, because there is nothing even remotely similar (never mind "identical") about the designation on the subject label and the Non-GMO Project's mark, Grillo's argument fails a basic sniff test.

Grillo's argues that the label contains a butterfly that is "nearly identical to that used by the Non-GMO Project," FAC ¶ 40, but as evidenced by the actual marks provided in the FAC, it does not.



**Image 1:**
Wahlburgers' Label
Cropped



**Image 2:**
Wahlburgers' Label



**Image 3:**
Non-GMO Project's
Certification Mark



**Image 4:**
Non-GMO Project's
Restricted Internal Logo

*First*, what Grillo's calls a "butterfly" (Image 1) is obviously a silhouette of two overlapping leaves, which fits within the leaf motif on the side panel of the Wahlburgers label (Image 2).  To say that this image is "nearly identical" to the Non-GMO Project's butterfly is simply not credible.  *Second*, even if it were a butterfly, this would not be enough to deceive consumers.  "The Non-GMO Project's seal is highly distinctive, including the name of the organization, the word 'VERIFIED,' and the URL to the Non-GMO Project's website alongside a

graphic of an orange butterfly on a blade of grass." *Gordon v. Target Corp.*, 2022 WL 836773, at *12 (S.D.N.Y. Mar. 18, 2022). Here, the FAC alleges that the label contains only one of these elements: a purported "butterfly mark" that looks suspiciously like two leaves. FAC ¶ 60.a. The label does not contain any of the other four elements: the text "Non-GMO," the word "VERIFIED," the URL, or the blades of grass. As a result, no reasonable consumer would understand an image of two leaves to represent the Non-GMO Project's "highly distinctive mark." *Gordon*, 2022 WL 836773, at *12 (finding plaintiff's allegation that consumers could be misled by product's non-GMO graphic into believing product had been Non-GMO Project certified to be "patently implausible" or "unrealistic"). Thus, Grillo's has not plausibly alleged that a reasonable consumer would be deceived.

Grillo's cites three cases to suggest that Wahlburgers' label is close enough to the Non-GMO Project's label to survive a motion to dismiss, FAC ¶ 41 (*citing Rankin*, 2022 U.S. Dist. LEXIS 103573, at *15; *Latiff*, 2019 U.S. Dist. LEXIS 161015; *Norman*, 2023 U.S. Dist. LEXIS 3834, at *19), but all are readily distinguishable. *First*, all of the products at issue in those cases featured a separate, Non-GMO (or No GMO) badge placed on the front of the product, precisely where the Non-GMO Project's label is typically affixed. *See* Del Medico Decl., Ex. 2 ¶ 11; Del Medico Decl., Ex. 3 ¶¶ 44–75; Del Medico Decl., Ex. 4 ¶¶ 5, 17. Here, however, the "GMO-Free" and accompanying leaf graphic on the

Wahlburgers label is included in a list of various characteristics of the product (Image 2 above).  Further, the "Non-GMO" text in *Norman* and *Rankin* were displayed in a large, prominent font that split the words onto two lines—mimicking the Non-GMO Project's mark.  Del Medico Decl., Ex. 3 ¶¶ 34, 35; Del Medico Decl., Ex. 4 ¶ 4.  In contrast, here, the "GMO-Free" text is displayed on the side panel of the label, is dwarfed by the name of the product and the image on the front, and is a single line in a longer list (Image 2 above).  Finally, each used "Non-GMO" or "No-GMO" language that much more closely tracks the Non-GMO Project's mark than does Wahlburgers' "GMO Free" statement.  Del Medico Decl., Ex. 2 ¶ 10; Del Medico Decl., Ex. 3 ¶¶ 34, 35; Del Medico Decl., Ex. 4 ¶ 4.

This case is more analogous to *Gordon*.  2022 WL 836773, at *12.  In *Gordon*, the only similarity between the challenged label and the Non-GMO Project's mark was the word "Non-GMO."  *Id*.  As such, the court found on a motion to dismiss that "Plaintiff's allegation that a reasonable consumer could see the Product's non-GMO graphic and believe the Product to have been verified by the Non-GMO Project to be 'patently implausible' or 'unrealistic.'"  *Id*.  This case involves even fewer similarities since the challenged label in *Gordon* used the word "Non-GMO" rather than "GMO-Free."  *Id*.  And if the court were to accept Grillo's premise that the use of "GMO-Free" is enough to cause confusion, then companies would be prohibited from ever including the information that the

ingredients in its products were non-GMO on labels unless the products were verified by the Non-GMO Project." *Id*.

Therefore, even if Grillo's *could* bring a claim based on allegations of unauthorized use of the Non-GMO Project's mark, the Court "can properly say that no reasonable person could be misled by the advertisement in question." *Pernod Ricard USA, LLC*, 653 F.3d at 252.

### C.   Grillo's Has Not Pled Facts to Allege a Compensable Injury

Grillo's has failed to allege facts to show that it was injured in any way. Grillo's seeks damages for "diverted sales, lost shelf space, and lost market share that but for Defendants' false and misleading statements, Grillo's would have retained or earned."  FAC ¶ 44.  But Grillo's has not pled a single fact to suggest that it actually lost anything.  Thus, Grillo's has failed to plead facts to support the injury prong of a damages claim under the Lanham Act.

Courts in the Third Circuit "require a heightened level of proof of injury in order to recover money damages" for false advertising claims. *Bracco Diagnostics, Inc. v. Amersham Health, Inc.*, 627 F. Supp. 2d 384, 480 (D.N.J. 2009).  In contrast, for injunctive relief, a plaintiff "needs only to plead 'a reasonable basis for the belief that plaintiff is *likely to be* damaged as a result of the false advertising.'" *N.J. Physicians United Reciprocal Exch. v. Boynton & Boynton, Inc.*, 141 F. Supp. 3d 298, 306 (D.N.J. 2015) (emphasis added) (citing

21

*Warner-Lambert Co. v. BreathAsure, Inc.*, 204 F.3d 87, 95 (3d Cir. 2000)).  But

"to state a claim under the Lanham Act to recover monetary damages, [Grillo's]

must plead that it *was* damaged as a result of [Patriot's] misrepresentation or that

[Patriot] profited from that misrepresentation."  *Id*. (emphasis added).  At the

pleading stage, then, a plaintiff must allege facts that would meet this heightened

standard if taken as true.  *Twombly*, 550 U.S. at 556.  Thus, for Grillo's to state a

claim for damages, it must plead actual damages "as a result of [Patriot's]

misrepresentations."  *Boynton & Boynton, Inc.*, 141 F. Supp. at 306. And it must

do so with "more than labels and conclusions[.]"  *Twombly*, 550 U.S. at 555.

For example, in *Boynton & Boynton*, the counterclaimant (Boynton) alleged

that it lost a specific customer due to NJ PURE's false statements.  141 F. Supp. 3d

at 306.  Accordingly, the court found that the counterclaimant had sufficiently pled

actual damages for a Lanham Act false advertising claim.  *Id*.  In contrast, Grillo's

FAC fails to allege any specific instance of a customer or grocery store buyer

purchasing Wahlburgers over Grillo's.  Instead, the FAC contains only vague and

conclusory allegations that unspecified customers at unspecified times may have

done so.  *See* FAC ¶ 51 ("Thus, customers shopping for fresh pickles . . . have, at

times, chosen Wahlburgers over Grillo's pickles.").

Grillo's allegations of injury, then, are nothing more than canned

conclusions that are not entitled to the assumption of truth.  *See Malleus*,  641 F.3d

at 563.  Unable to plead direct evidence of harm, Grillo's attempts to invoke a

number of presumptions and alternative theories to suggest that the Court should

presume that it suffered cognizable harm, but none of these theories hold water.

*First*, Grillo's states in its FAC that the Court "may grant relief without

reference to the advertisement's impact on the buying public" because

Wahlburgers' label was "literally and explicitly false[.]"  FAC ¶ 62 (quoting

*Castrol Inc. v. Pennzoil Co.*, 987 F.2d 939, 943 (3d Cir. 1993)).  But this doctrine

applies only where a plaintiff seeks injunctive relief.  "[A] mere presumption of

actual customer confusion based on a finding of literal falsity" is not enough to

create a presumption of harm.  *Bracco Diagnostics*, 627 F. Supp. 2d at 480.

Accordingly, the Court cannot presume that Grillo's was injured based on Grillo's

conclusory allegations.

*Second*, Grillo's invokes (indirectly) a presumption of harm by emphasizing

that "Grillo's and Wahlburgers pickles are in direct competition" and suggesting

that every Wahlburgers' sale resulted in a lost sale for Grillo's.  FAC ¶¶ 45, 53.

But this has no basis in law or fact.  Although direct competition can give rise to a

rebuttable presumption of *causation* where a plaintiff had separately alleged actual

economic losses, direct competition is not enough to create a presumption that the

plaintiff did, in fact, suffer such a loss.  *See, e.g., Brunswick v. Spinit Reel*, 832

F.2d 513, 525 (10th Cir. 1987) (after finding actual confusion and direct

competition between the two parties' products, the court was satisfied that the damages causation nexus was met where all spin-cast reels sales generally dropped 6% because of the recession, but the plaintiff's particular spin-cast reel dropped 16%); *EFCO Corp. v. Symons Corp.*, 219 F.3d 734, 740 (8th Cir. 2000) (finding sufficient causation where plaintiff's decline in revenues and defendant's increase in profits were accompanied by evidence that showed plaintiff's lost clients actually sought out defendant's product). In other words, "direct competition" is not enough to establish a presumption that Grillo's lost a sale every time a consumer bought a container of Wahlburgers, even though it would establish causation if Grillo's had adequately pled losses.

*Finally*, Grillo's reputational harm argument—that Grillo's suffered reputational harm due to its "unwanted affiliation with Wahlburgers" and Wahlburgers' alleged misconduct—is fundamentally flawed. Dkt. No. 4-1, at 29. This reputational harm through brand confusion theory is unavailing, since a false advertising claim cannot be premised on weak and unproven allegations of false association. *See Parks LLC*, 863 F.3d at 227 ("PARK'S FINEST is only misleading in the way that Parks suggests if a consumer makes the connection between PARK'S FINEST and PARKS and has in mind a pre-existing association between PARKS and high quality products. This is a false association claim and nothing more."). Nor can Grillo's smuggle a false association claim into its false

advertising claim by claiming it was harmed in this way.[8]  *Id.* at 226 ("False advertising claims do not require proof of secondary meaning, so litigants may be tempted to frame a false association claim as a false advertising claim, to ease their evidentiary burden.").  Thus, Grillo's has not pled adequate facts to allege reputational harm.

## III. THE COURT SHOULD DISMISS GRILLO'S COMMON LAW CLAIM OR DECLINE TO EXERCISE SUPPLEMENTAL JURISDICTION

The Court should dismiss Grillo's unfair competition claim because New Jersey courts have explicitly held that false advertising claims are not cognizable under state common law.  *Tris Pharma, Inc. v. UCB Mfg., Inc.*, 2016 WL 4506129, at *5 (N.J. Super. Ct. App. Div. Aug. 29, 2016) ("There is no New Jersey precedent which supports [plaintiff's] assertion that the common law tort of unfair competition encompasses . . . false advertising.").  As Grillo's unfair competition claim is based entirely on  alleged false advertising, Grillo's claim of common law unfair competition must be dismissed.

In the alternative, the Court should decline to exercise supplemental jurisdiction over Grillo's state law claim.  28 U.S.C. § 1367(c)(3) (providing that a

---

[8] Nor are Grillo's attempts to smuggle an intellectual property claim into the pleadings availing or relevant.  *See* FAC ¶¶ 35–36, 57–58.  Indeed, Patriot's knowledge of Grillo's recipe says nothing about Defendants' culpability because this detail is utterly irrelevant to Grillo's Lanham Act claim and is little more than an attempt to inject an intellectual property claim through improper innuendo.

district court "may decline to exercise supplemental jurisdiction over a claim" if

"the district court has dismissed all claims over which it has original jurisdiction").

## CONCLUSION

The Court should grant Patriot's motion to dismiss.


Dated:      June 21, 2023                          Respectfully submitted,

                                                   s/ *Jennifer L. Del Medico*

                                                   Jennifer L. Del Medico
                                                   Harold K. Gordon
                                                   (admitted *pro hac vice*)
                                                   Christopher S. Dinkel
                                                   (*pro hac vice* forthcoming)
                                                   Patrick L. Wright
                                                   (*pro hac vice* forthcoming)
                                                   **JONES DAY**
                                                   250 Vesey Street
                                                   New York, NY 10281.1047
                                                   Tel: (212) 326-3939
                                                   jdelmedico@jonesday.com

                                                   *Attorneys for Defendant Patriot Pickle,*
                                                   *Incorporated*

26