## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| GRILLO'S PICKLES, INC., a Delaware corporation, | Civil Action No. 2:23-cv-00011-MCA-AME |
| Plaintiff, |  |
| v. |  |
| PATRIOT PICKLE INC., a Delaware corporation, ARKK FOOD COMPANY, a Michigan corporation, and WAHLBURGERS I, LLC, a Massachusetts limited liability company, | Document electronically filed |
| Defendants. |  |

## PLAINTIFF GRILLO'S PICKLES, INC.'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT

Kevin H. Marino
John A. Boyle
MARINO, TORTORELLA & BOYLE, P.C.
437 Southern Boulevard
Chatham, New Jersey 07928-1488
(973) 824-9300

Marshall M. Searcy III (*pro hac vice*)
Gregory A. Fuoco (*pro hac vice*)
QUINN EMANUEL URQUHART & SULLIVAN, LLP
865 South Figueroa Street, 10th Floor
Los Angeles, CA 90017-2543
(213) 443-3000

Christina I. Crowley
QUINN EMANUEL URQUHART & SULLIVAN, LLP
51 Madison Avenue, 22nd Floor
New York, NY 10010
(212) 849-7000

*Attorneys for Plaintiff Grillo's Pickles, Inc.*

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ........................................................................1

II.    BACKGROUND ........................................................................2

III.    ARGUMENT ...........................................................................5

     A.    Standard of Review ............................................................ 5

     B.    Grillo's Has Article III Standing to Pursue Its Claims ....................... 7

     C.    Grillo's GMO-Related Allegations State a Claim Under the Lanham Act ........................................................................ 12

         1.    Grillo's Adequately Alleges that Defendants' "GMO-Free" Statement Is Literally False ............................... 13

         2.    Grillo's Non-GMO Project Claim States a Lanham Act Claim for False Advertising ............................... 19

         3.    Grillo's Non-GMO Project Claim Is Plausible and Courts Have Consistently Allowed Similar Cases to Proceed Past the Pleading Stage ............................... 21

         4.    Grillo's Amended Complaint Pleads a Compensable Injury... 25

     D.    The Court Should Not Dismiss Grillo's State-Law Claim and Should Exercise Supplemental Jurisdiction ....................................... 29

     E.    If the Motion Is Granted, the Court Should Allow Grillo's Leave to Amend the Complaint ......................................................... 31

IV.    CONCLUSION ........................................................................32

# <u>TABLE OF AUTHORITIES</u>

<u>**Page**</u>

## <u>Cases</u>

*Advanced Oral Technologies., L.L.C. v. Nutres Research, Inc.*,
   No. 10-5303, 2011 WL 198029 (D.N.J. Jan. 20, 2011) .......................................9

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009).........................................................................................7

*Ault v. J.M. Smucker Co.*,
   No. 13 Civ. 3409, 2014 WL 1998235 (S.D.N.Y. May 15, 2014) .....................18

*B. Sanfield, Inc. v. Finlay Fine Jewelry Corp.*,
   168 F.3d 967 (7th Cir. 1999) ..........................................................................17

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007).........................................................................................7

*Bennett v. Spear*,
   520 U.S. 154 (1997).....................................................................................7, 8

*Blunt v. Lower Merion Sch. Dist.*,
   767 F.3d 247 (3d Cir. 2014) .............................................................................8

*Bracco Diagnostics, Inc. v. Amersham Health, Inc.*,
   627 F. Supp. 2d 348 (D.N.J. 2009)...........................................................25, 30

*Burndy Corp. v. Teledyne Industries, Inc.*,
   584 F. Supp. 656 (D. Conn. 1984), *aff'd by* 748 F.2d 767
   (2d Cir. 1984)................................................................................................20

*Canfield Sci., Inc. v. Melanoscan, LLC*,
   No. 16-4636, 2017 WL 2304644 (D.N.J. May 25, 2017) ...........................30, 31

*Castrol, Inc. v. Pennzoil Co.*,
   987 F.2d 939 (3d Cir. 1993) ...........................................................................13

*Const. Party of Pa. v. Aichele*,
   757 F.3d 347 (3d Cir. 2014) ..........................................................................5, 6

*EP Henry Corp. v. Cambridge Pavers, Inc.*,
No. 17-1538, 2017 WL 4948064 (D.N.J. Oct. 31, 2017) ...................................28

*Frompovicz v. Niagara Bottling, LLC*,
313 F. Supp. 3d 603 (E.D. Pa. 2018)....................................................................10

*Genzyme Corp. v. Shire Human Genetic Therapies, Inc.*,
906 F. Supp. 2d 9 (D. Mass. 2012) ......................................................................24

*Gordon v. Target Corporation*,
No. 20-CV-9589, 2022 WL 836773 (S.D.N.Y. Mar. 18, 2022).........................24

*Gould Elec. Inc. v. United States*,
220 F.3d 169 (3d Cir. 2000) ................................................................................12

*Graco, Inc. v. PMG Glob., Inc.*,
No. 08–1304, 2009 WL 904010 (D.N.J. Mar. 31, 2009) ...................................30

*Groupe SEB USA, Inc. v. Euro-Pro Operating LLC*,
774 F.3d 192 (3d Cir. 2014) .........................................................15, 16, 17, 22

*Hedges v. United States*,
404 F.3d 744 (3d Cir. 2005) .......................................................................12, 21

*IDT Telecom, Inc. v. CVT Prepaid Sols., Inc.*,
No. 07-1076, 2009 WL 5205968 (D.N.J. Dec. 28, 2009) ...................................10

*Industria de Alimentos Zenú S.A.S. v. Latinfood U.S. Corp.*,
No. 16-6576, 2017 WL 6940696 (D.N.J. Dec. 29, 2017) ............................25, 28

*Joint Stock Soc'y v. UDV N. Am., Inc.*,
266 F.3d 164 (3d Cir. 2001) ...................................................................................8

*Kaisha v. Lotte Int'l Am. Corp.*,
No. 15-5477, 2016 WL 11811824 (D.N.J. Dec. 13, 2016) ................................29

*In re Kind LLC "Healthy and All Natural" Litig.*,
287 F. Supp. 3d 457 (S.D.N.Y. 2018) .................................................................18

*Latiff v. Nestle USA, Inc.*,
No. 2:18-CV-06503-ODW, 2019 WL 4544544 (C.D. Cal. Sept. 19,
2019) .....................................................................................................22, 23, 24

*Lexmark International, Inc. v. Static Control Components, Inc.*,
  572 U.S. 118 (2014)................................................................11, 25, 27

*Lieberson v. Johnson & Johnson Consumer Cos.*,
  856 F. Supp. 2d 529 (D.N.J. 2011)....................................................10

*Maher Terminals, LLC v. Port Auth. of N.Y. and N.J.*,
  805 F.3d 98 (3d Cir. 2015) ..............................................................8

*Newborn Bros. Co., Inc. v. Albion Eng'g Co.*,
  481 F. Supp. 3d 312 (D.N.J. 2020)....................................................29

*Nobile v. Ford Motor Co.*,
  No. 10-1890, 2011 WL 900119 (D.N.J. Mar. 14, 2011) ....................................31

*Norman v. Gerber Products Company*,
  No. 21-cv-09940-JSW, 2023 WL 122910 (N.D. Cal. Jan. 6, 2023) ......22, 23, 24

*Novartis v. Consumer Health, Inc. v. Johnson & Johnson-Merck
  Consumer Pharmaceuticals, Co.*,
  290 F.3d 547 (3d Cir. 2002) ......................................................15, 16, 17

*Parks LLC v. Tyson Foods, Inc.*,
  863 F.3d 220 (3d Cir. 2017) ..............................................................20

*Parks, LLC v. Tyson Foods, Inc.*,
  2015 WL 4545408 (E.D. Pa. 2015) ....................................................22

*Pernod Ricard USA LLC v. Bacardi U.S.A., Inc.*,
  505 F. Supp. 2d 245 (D. Del. 2007)..............................................10, 13

*Pernod Ricard USA LLC v. Bacardi U.S.A., Inc.*,
  653 F.3d 241, 248 (3d Cir. 2011) ..................................................13, 21

*Phillips v. Cnty. of Allegheny*,
  515 F.3d 224 (3d Cir. 2008) ..........................................................6, 31

*POM Wonderful LLC v. Coca-Cola, Co.*,
  573 U.S. 102 (2014)....................................................................8

*Rankin v. Arca Const'l S.A.B. de C.V.*,
  No. 20-CV-1756, 2022 U.S. Dist. LEXIS 103573 (E.D.N.Y. June
  9, 2022) ..........................................................................22, 23, 24, 25

*Red Hawk Fire & Sec., LLC v. Siemens Inds. Inc.*,
  449 F. Supp. 3d 449 (D.N.J. 2020) ...................................................................6, 15

*SK & F, Co. v. Premo Pharm. Lab'ys, Inc.*,
  625 F.2d 1055 (3d Cir. 1980) ....................................................................29

*Smart Vent, Inc. v. Crawl Space Door System, Inc.*,
  No. 13-5691, 2017 WL 4948063 (D.N.J. Nov. 1, 2017)...................................17

*TrafficSchool.com, Inc. v. Edriver, Inc.*,
  653 F.3d 820 (9th Cir. 2011) ................................................................8, 11, 25

*Tris Pharma, Inc. v. UCB Manufacturing, Inc.*,
  No. A-5808-13T3, 2016 WL 4506129 (N.J. App. Div. Aug. 28,
  2016) ................................................................................................29, 30

*United States v. Kushner*,
  No. 17-2372, 2018 WL 2230552 (D.N.J. May 15, 2018) .................................32

*Victory Global, LLC v. Fresh Bourbon, LLC*,
  No. 5:21-62-KKC, 2022 WL 785039 (E.D. Ky. Mar. 14, 2022) ......................21

*Warner-Lambert Co. v. BreathAsure, Inc.*,
  204 F.3d 87 (3d Cir. 2000) ..............................................................13, 18

*Wellness Publishing v. Barefoot*,
  No. 02-3773, 2008 WL 108889 (D.N.J. Jan. 9, 2008) .......................................9

## Rules / Statutes

Lanham Act, 15 U.S.C § 1125 ....................................................................19, 30, 31

Lanham Act, 15 U.S.C. §1125(a)(1)(B) .................................................................30

Fed. R. Civ. P. 15 ..................................................................................................31

Fed. R. Civ. P. 12(b)(1).................................................................................5, 6, 7

Fed. R. Civ. P. 12(b)(6).................................................................5, 6, 12, 25, 31

## I.   <u>**INTRODUCTION**</u>

The law requires that the statements made on a product be accurate and not deceptive about its contents.   This basic premise of unfair-competition law is essential: it protects both consumers—who deserve to know what ingredients are in the products they buy—and competitors—who deserve a level playing field on which to compete.   Plaintiff, Grillo's Pickles, Inc. ("Grillo's"), initiated this lawsuit because Defendants, Patriot Pickle, Inc. ("Patriot"), ARKK Food Company ("ARKK") and Wahlburgers, LLC ("Wahlburgers") (collectively, "Defendants"), refuse to play by these fundamental rules.

In its original Complaint, Grillo's provided lab testing results showing that, despite Defendants' statements on their labels that Wahlburgers pickles were "preservative-free," "all natural," and "fresh," those pickles in fact contained the artificial preservative sodium benzoate.   In response to the lawsuit, Defendants admitted that sodium benzoate had been added to their pickles, but claimed that the addition was unintentional and that they had fixed the problem.

After additional investigation, Grillo's filed an Amended Complaint, bringing the same claims related to Defendants' undisclosed use of sodium benzoate (the "Artificial Preservative Claims") and adding new claims based on Defendants' false and misleading statements that Wahlburgers pickles contain no genetically modified

organisms ("GMOs") and are certified "GMO-free" by the Non-GMO Project (the "Non-GMO Claims") under the Lanham Act and New Jersey state law.

In their Motion to Dismiss the Amended Complaint (Dkt. 61), Defendants make a variety of arguments, some pertaining to all of Grillo's claims and others pertaining only to Grillo's new Non-GMO Claims.  As demonstrated below, all of those arguments fail, and the Court should deny Defendants' motion in full.

## II.   <u>BACKGROUND</u>

Grillo's is a pickle company founded by Travis Grillo, who began selling pickles in 2008 out of a wooden street cart using his grandfather's 100-year-old recipe.  (Am. Compl. ¶ 8 (Dkt. 60).)  Grillo's has since grown into a nationwide brand known for producing fresh pickles free from artificial chemical preservatives. (*Id*.)

In or around 2014, Grillo's engaged Patriot to act as one of the co-packers for its pickles, (*id.* ¶ 24), a role Patriot held until the summer of 2021, (*id*. ¶ 25).  In or before the spring of 2021, Patriot started producing and shipping Wahlburgers pickles on behalf of ARKK and Wahlburgers.  (*Id.* ¶ 26.)  Patriot co-packs three types of pickles for Wahlburgers: "Wahlburgers Fresh Dill Spears," "Wahlburgers Fresh Dill Chips," and "Wahlburgers Fresh Dill Chips Hot."  (*Id*. ¶¶ 27-29.)  The labels for those pickles do not list any artificial preservatives as ingredients and

prominently feature the word "FRESH" in all capitals as the first word in their names, which are printed multiple times on the labels.  (*Id.* ¶¶ 1, 27-29.)

Wahlburgers pickles also taste extremely similar to Grillo's and use the same containers, the same naming conventions and the same nutritional fact panels.  (*Id.* ¶ 26.)  Further, Wahlburgers pickles are sold in the same refrigerated sections of many of the same stores as Grillo's pickles and other brands whose pickles are fresh, all natural and free of artificial preservatives.  (*Id.* ¶¶ 2, 33, 45.)

However, despite the labels on Wahlburgers pickles stating that they are "fresh," contain "no preservatives," and are "all natural," testing performed by Biogen Laboratory Developments on behalf of Grillo's revealed that the opposite is true: Wahlburgers pickles contain substantial amounts of benzoic acid, which is often added to foods via sodium benzoate, an artificial chemical preservative designed to lengthen the shelf life of food.  (*See* Am. Compl., Ex. A; 1/3/2023 Kahl Decl. ¶¶ 5-11 (Dkt. 4-18).)

Additionally, Defendants are misleading consumers into believing Wahlburgers pickles are "GMO-Free" and Non-GMO Project verified, even though they are not.  (Am. Coml. ¶ 5.)  Defendants do this by placing the text "GMO-Free" on Wahlburgers' labels next to a mark that resembles a butterfly or two leaves, which is nearly identical to the mark used by the Non-GMO Project, a nonprofit organization that "administers North America's most rigorous certification for

avoiding GMOs" and permits companies that pass the Non-GMO Project's standards and verification process to use its butterfly mark on their packaging. (*Id.*)  This is doubly deceiving because it misleads consumers to believe that Wahlburgers pickles are both "GMO-Free" and verified by the Non-GMO Project, when they are, in fact, neither. (*Id.*)

On January 3, 2023, Grillo's filed this action seeking to preliminarily and permanently enjoin Defendants from selling Wahlburgers pickles under their false and misleading current labeling, as well as damages for the harm Defendants' illegal practices have caused Grillo's. (Dkt. 1.)  Grillo's also filed a motion for a preliminary injunction. (Dkt. 4.)  On February 7, 2023, Defendants moved to dismiss Grillo's Complaint. (Dkt. 34.)  After that motion and Grillo's motion for a preliminary injunction were fully briefed, Grillo's sought leave to file an amended complaint to add claims related to Defendants' misrepresentations about the purported absence of GMOs in Wahlburgers pickles. (Dkt. 57.)

On May 23, 2023, the Honorable André M. Espinosa, U.S.M.J. granted Grillo's motion for leave to amend and set a briefing schedule for Defendants' anticipated motion to dismiss Grillo's Amended Complaint. (Dkt. 59.)  Judge Espinosa also administratively terminated Patriot's prior motion to dismiss but left in place those portions of Patriot's memorandum of law that opposed Grillo's motion for a preliminary injunction.  On May 31, 2023, Grillo's filed an Amended

Complaint.  (Dkt. 60.)  Grillo's did not withdraw its motion for a preliminary injunction, which is still pending before the Court.[1]

On June 21, 2023, Patriot filed a motion to dismiss the Amended Complaint for lack of standing pursuant to Federal Rule of Civil Procedure 12(b)(1) and failure to state a claim upon which relief can be granted pursuant to Federal Rule of Civil Procedure 12(b)(6).  (Dkt. 61.)  Both ARKK and Wahlburgers joined that motion. (Dkt. 62.)  This opposition follows.

## III. <u>ARGUMENT</u>

### A. <u>Standard of Review</u>

"A motion to dismiss for want of standing is . . . properly brought under Rule 12(b)(1), because standing is a jurisdictional matter." *Const. Party of Pa. v. Aichele*, 757 F.3d 347, 357 (3d Cir. 2014).  In resolving a Rule 12(b)(1) motion, the Court must first determine whether the motion presents a "facial" attack or a "factual" attack "because that distinction determines how the pleading must be reviewed." *Id.* As the Third Circuit has explained, "[a] facial attack, as the adjective indicates, is an

---

[1]   Defendants argue that Grillo's motion for a preliminary injunction is moot because, as of May 3, 2023, the last of the pre-Complaint pickles containing sodium benzoate are past their "best by" date and thus unlikely to still be on store shelves. (Dkt. 6-1, Mot. at 4.)  Not so.  Defendants' position assumes that Patriot has entirely cut off any sources of sodium benzoate from its pickle manufacturing process. Patriot, however, has provided only minimal, unpersuasive evidence that this is the case.  As a result, the relief sought in Grillo's preliminary injunction motion is still relevant and necessary to ensure that Patriot's conduct has actually ceased and will not continue.

argument that considers a claim on its face and asserts that it is insufficient to invoke the subject matter jurisdiction of the court because, for example, it does not present a question of federal law, or because there is no indication of a diversity of citizenship among the parties, or because some other jurisdictional defect is present." *Id.* at 358.   As demonstrated below, Defendants' motion to dismiss presents a "facial" attack on Grillo's standing to bring this case.

Because a facial attack contests the sufficiency of the pleadings, a court reviewing such a Rule 12(b)(1) motion must "apply the same standard of review it would use in considering a motion to dismiss under Rule 12(b)(6), *i.e.*, construing the alleged facts in the favor of the nonmoving party."   *Id.* (quotation and citation omitted).   Thus, when considering a facial attack, the court must "accept[] the pleaded facts as true and draw[] all reasonable inference in [plaintiff's] favor."   *Red Hawk Fire & Sec., LLC v. Siemens Inds. Inc.*, 449 F. Supp. 3d 449, 458 (D.N.J. 2020) (citing *Aichele*, 757 F.3d at 358).

In resolving a Rule 12(b)(6) motion to dismiss, "the Court accepts all pleaded acts as true, construes the complaint in the plaintiff's favor, and determines 'whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief.'"   *Red Hawk Fire & Sec.*, 449 F. Supp. 3d at 459 (quoting *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008)).   To survive, the claims must be facially plausible, meaning that the pleaded facts "allow[] the court to draw the reasonable

inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).   The allegations must be "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

## B.   Grillo's Has Article III Standing to Pursue Its Claims

Defendants first argue that the Amended Complaint should be dismissed pursuant to Rule 12(b)(1) because Grillo's lacks standing to pursue its claims for damages.   Defendants' argument fails because (i) courts in this circuit have found allegations similar to Grillo's sufficient to confer standing and (ii) Defendants ignore binding Supreme Court precedent.   Stated simply, Grillo's has pled a concrete injury sufficient to confer standing.

As the Supreme Court has explained, "[t]he question of standing involves both constitutional limitations on federal-court jurisdiction and prudential limitations on its exercise." *Bennett v. Spear*, 520 U.S. 154, 162 (1997) (quotation and citation omitted).   Defendants' motion does not specifically state which component of standing they contend is lacking, but it appears from their case citations that they challenge Grillo's constitutional standing, rather than its prudential standing under the Lanham Act.   In any event, Grillo's allegations in the Amended Complaint are sufficient to establish both constitutional and prudential standing.

Constitutional standing is grounded in the "case or controversy" requirement

of Article III.  *Bennett*, 520 U.S. at 162.  At the pleading stage, "[t]he contours of the [constitutional] injury-in-fact requirement, while not precisely defined, are very generous, requiring only that claimant allege[] some specific, identifiable trifle of injury."  *Blunt v. Lower Merion Sch. Dist.*, 767 F.3d 247, 278 (3d Cir. 2014) (cleaned up).  Specifically, "[i]n a false advertising suit, a plaintiff establishes Article III injury if 'some consumers who bought the defendant['s] product under [a] mistaken belief' fostered by the defendant 'would have otherwise bought the plaintiff['s] product.'"  *TrafficSchool.com, Inc. v. Edriver Inc.*, 653 F.3d 820, 825 (9th Cir. 2011) (citing *Joint Stock Soc'y v. UDV N. Am., Inc.*, 266 F.3d 164, 177 (3d Cir. 2001)).  Prudential standing, by contrast, concerns whether a plaintiff has a statutory right to sue under a particular statute, such as the Lanham Act.  *Maher Terminals, LLC v. Port Auth. of N.Y. and N.J.*, 805 F.3d 98, 105 (3d Cir. 2015).[2]

Grillo's allegations easily satisfy the "very generous" contours of the constitutional-standing requirement at the pleading stage and are more than sufficient to meet the threshold "identifiable trifle of injury" required by Article III.  *See Blunt*, 767 F.3d at 278.  Specifically, Grillo's alleges that (i) "customers shopping for fresh pickles and grocery store buyers seeking to stock their shelves

---

[2] Competitors may, in their own interest, "bring Lanham Act claims [] that challenge food and beverage labels."  *POM Wonderful LLC v. Coca-Cola, Co.*, 573 U.S. 102, 106 (2014).  In this context, competitors "may suffer an injury to commercial interest in sales or business reputation proximately caused by [a] defendant's misrepresentations."  *Id.* at 107 (citation omitted).

with fresh pickles have, at times, chosen Wahlburgers over Grillo's pickles based on the fact that Wahlburgers pickles have an artificially lengthy shelf life combined with the false understanding that Wahlburgers is a fresh pickle;" (ii) customers who are a "part of the 'real food' or 'clean labeling' movements" and the stores that serve such customers "chose to purchase Wahlburgers pickles based on the false belief that they did not contain artificial preservatives" and, but for that false belief, "these customers and grocery store buyers would not have chosen Wahlburgers and would have purchased Grillo's instead," and (iii) the use of the "GMO-Free" claim and a butterfly mark nearly identical to the mark of the Non-GMO Project gave Defendants an unearned "sales increase over those without the label," *i.e.*, their direct competitors Grillo's, and "but for Defendants' statements, customers would not have been misled into purchasing Wahlburgers pickles, and some would have chosen to purchase Grillo's instead."  (Am. Compl. ¶¶ 51-53, 64.)

Courts in this circuit have repeatedly found the injury-in-fact requirement for constitutional standing satisfied when a plaintiff provides less detail than Grillo's alleges in the Amended Complaint.   For example, in *Wellness Publishing v. Barefoot*, No. 02-3773, 2008 WL 108889 (D.N.J. Jan. 9, 2008), the court found the allegation that the defendants engaged in false advertising in infomercials "which had the effect of ultimately damaging the market for the [p]laintiff's coral calcium product" sufficient to establish constitutional and prudential standing at the pleading

stage. *Id.* at \*12-13.  Similarly, in *Advanced Oral Technologies., L.L.C. v. Nutres Research, Inc.*, No. 10-5303, 2011 WL 198029 (D.N.J. Jan. 20, 2011), the court concluded that allegations that the defendant's mislabeling "would dramatically undermine consumer goodwill" and "has damaged irreparably the reputation of [the plaintiff] and eroded the goodwill it has built" to be "more than sufficient to satisfy constitutional standing at [the] pleading stage." *Id.* at \*4; *see also IDT Telecom, Inc. v. CVT Prepaid Sols., Inc.*, No. 07-1076, 2009 WL 5205968, at \*5 (D.N.J. Dec. 28, 2009) (finding both constitutional and prudential standing satisfied when plaintiff alleged "loss of sales due to a competitor's false advertising"); *Frompovicz v. Niagara Bottling, LLC*, 313 F. Supp. 3d 603, 609 (E.D. Pa. 2018) (finding constitutional and prudential standing based on allegations that "[d]efendants' marketing and sale of their deceptively marketed 'spring water' is damaging to the reputation and goodwill of [p]laintiff," and that defendants' actions hindered his sales"); *Pernod Ricard USA LLC v. Bacardi U.S.A., Inc.,* 505 F. Supp. 2d 245, 251-52 (D. Del. 2007) (finding constitutional standing where plaintiff and defendant were direct competitors, because plaintiff had a "reasonable basis for the belief that [it] is likely to be damaged as a result of [defendant's] false advertising").[3]

---

[3]  Defendants' citation to *Lieberson v. Johnson & Johnson Consumer Cos.*, 865 F. Supp. 2d 529, 537 (D.N.J. 2011), is inapt and inapplicable because that case involved claims brought by a consumer and stands for the common-sense proposition that a consumer cannot be harmed by a product he or she "neither purchased nor used."

Defendants argue that Grillo's alleged harm, which relies on the purchasing decisions of third parties, is "too conjectural to confer standing." (Mot. at 8.)  That argument, however, ignores the fact that in false-advertising cases brought by a competitor, the alleged harm suffered by the plaintiff very often relies on purchasing decisions of third-party consumers.  As the Ninth Circuit has explained, the plaintiff in a false-advertising case "can prove his [constitutional] injury using actual market experience and *probable* market behavior" because "providing a counterfactual is never easy, and is especially difficult when the injury consists of lost sales that are predicated on the independent decisions of third parties; *i.e.*, customers." *TrafficSchool.com, Inc.*, 653 F.3d at 825 (citation and quotation omitted). Accordingly, "[a] plaintiff who can't produce lost sales data may therefore establish an injury by creating a chain of inferences showing how defendant's false advertising could harm plaintiff's business." *Id.*  Grillo's has done precisely that here.  Despite Defendants' suggestions to the contrary, no more is required.

Finally, to the extent Defendants indirectly challenge Grillo's standing under the Lanham Act, that challenge fails due to the Supreme Court's decision in *Lexmark International, Inc. v. Static Control Components, Inc.*, 572 U.S. 118 (2014), which held that an injury under the Lanham Act "occurs when deception of consumers causes them to withhold trade from the plaintiff." *Id.* at 133.  *Lexmark* makes clear that Lanham Act harm can result from the purchasing decisions of third parties,

which is what Grillo's alleges in the Amended Complaint.  *Id.*  ("[A] plaintiff can be directly injured by a misrepresentation 'even where a third party, and not the plaintiff, . . . relied on' it.").  For these reasons, Grillo's has standing to bring its claims.

## C.  <u>Grillo's GMO-Related Allegations State a Claim Under the Lanham Act</u>

Defendants next contend that Grillo's GMO-related allegations do not plead cognizable claims under the Lanham Act and thus move to dismiss the Non-GMO Claims pursuant to Rule 12(b)(6).  Defendants' arguments, as demonstrated below, fail.

It is black-letter law that "'[i]n a Rule 12(b)(6) motion, the court evaluates the merits of the claims by accepting all allegations in the complaint as true, viewing them in the light most favorable to the plaintiffs, and determining whether they state a claim as a matter of law,'" and "[t]he defendant bears the burden of showing that no claim has been presented."  *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005) (quoting *Gould Elec. Inc. v. United States*, 220 F.3d 169, 178 (3d Cir. 2000)).  Defendants have failed to meet that burden.

To state a claim under the Lanham Act, a plaintiff must allege:

(1) that the defendant has made false or misleading statements as to his own product [or another's]; (2) that there is actual deception or at least a tendency to deceive a substantial portion of the intended audience; (3) that the deception is material in that it is likely to influence purchasing decisions; (4) that the advertised goods traveled in interstate commerce;

and (5) that there is a likelihood of injury to the plaintiff in terms of declining sales, loss of good will, etc.

*Warner-Lambert Co. v. BreathAsure, Inc.*, 204 F.3d 87, 91-92 (3d Cir. 2000).

Grillo's pleads precisely that here, as it alleges Defendants made false and misleading statements regarding the purported absence of GMOs in Wahlburgers pickles—specifically, statements on the product labels that (1) Wahlburgers pickles are "GMO-Free," meaning they do not contain any GMOs; and (2) Wahlburgers pickles are certified "GMO-Free" by the Non-GMO Project. (Am. Compl. ¶ 60.)

1.   Grillo's Adequately Alleges that Defendants' "GMO-Free" Statement Is Literally False

To state a Lanham Act false-advertising claim, a plaintiff must plead "actual deception or at least a tendency to deceive a substantial portion of the intended audience." *Warner-Lambert Co.*, 204 F.3d at 91-92. "When a merchandising statement or representation is literally or explicitly false, the court may grant relief without reference to the advertisement's impact on the buying public." *Castrol Inc. v. Pennzoil Co.*, 987 F.2d 939, 943 (3d Cir. 1993). This means that when a statement is literally false, actual deception or a tendency to deceive is presumed. *Pernod Ricard USA, LLC v. Bacardi U.S.A. Inc.*, 653 F.3d 241, 248 (3d Cir. 2011).

In their motion, Defendants argue that Grillo's lacks a factual basis to allege that Defendants' statement on their labels that their pickles are "GMO-Free," *i.e.*,

13

that they do not contain any GMOs, is literally false.[4]  Defendants are mistaken.

First, the Amended Complaint expressly alleges that Wahlburgers' statement that its pickles are "GMO-Free" is literally false.  (*See* Am. Compl. ¶¶ 5, 42, 43, 53, 60.)  Grillo's also alleges that the "GMO-Free" statement on the labels of Wahlburgers pickles is "false and misleading" because it is "unsupportable."  (Am. Compl. ¶¶ 42, 60.)  Grillo's cites the Non-GMO Project, which makes clear that "GMO-Free and similar claims are not legally or scientifically defensible.  The risk of contamination to seeds, crops, ingredients and products is too high to reliably claim that a product is 'GMO-Free.'"  (*Id.* ¶¶ 42, 60.)

To contest this showing, Defendants rely on nonbinding guidance issued by the Food and Drug Administration ("FDA") that they claim contradicts Grillo's allegations regarding the "GMO-Free" claim.  (Mot. at 10-12.)  The guidance Defendants cite, however, (i) is not a statute or regulation, but rather merely "recommendations" that are "not binding on FDA or the public"; and (ii) actually suggests that companies should not use the term "GMO free" because of the challenges of substantiating such a statement.  (S*ee* Guidance for Industry:

---

[4] As a threshold matter, Defendants do not argue that Grillo's failed to allege literal falsity as to the second GMO-related false statement on their labels—specifically, that Wahlburgers pickles have been certified "GMO-Free" by the Non-GMO Project.  (Am. Compl., ¶ 60.)  Nor could they.  The Amended Complaint clearly alleges that this statement is literally false, as Wahlburgers pickles have, in reality, not been certified "GMO-Free" by the Non-GMO Project.  (*Id.*)

Voluntary Labeling Indicating Whether Foods Have or Have Not Been Derived from Genetically Engineered Plants at 1, 8, FDA.gov (March 2019), https://www.fda.gov/media/120958/download.)  Put another way, Defendants argue not that the Non-GMO Project is wrong, but rather that certain FDA guidance reached a different conclusion.  Thus, Defendants' argument improperly asks the Court to engage in a premature evaluation of the merits of Grillo's claims, which is not appropriate at the pleading stage of the litigation.  *See Red Hawk Fire & Sec., LLC*, 449 F. Supp. 3d at 459, 469 (at the motion-to-dismiss stage, the court must accept "all pleaded facts as true [and] construe[] the complaint in the plaintiff's favor" and "[i]t is inappropriate for the Court to wade into factual issues").

Grillo's allegation of literal falsity is also supported by the assertion in the Amended Complaint that Defendants have not "tested their pickles to ensure that they are free from GMOs."  (Am. Compl. ¶ 43.)  It is true that, in a false-advertising case, the plaintiff generally bears the burden of proving falsity.  *See Groupe SEB USA, Inc. v. Euro-Pro Operating LLC*, 774 F.3d 192, 203 (3d Cir. 2014).  But in *Novartis Consumer Health, Inc. v. Johnson & Johnson-Merck Consumer Pharmaceuticals, Co.*, 290 F.3d 578, 589 (3d Cir. 2002), the Third Circuit recognized "an exception to the general rule and held that a 'court may find that a completely unsubstantiated advertising claim by the defendant is *per se* false without additional evidence from the plaintiff to that effect."  *Groupe SEB USA, Inc.*, 774

F.3d at 203 (citing *Novartis*, 290 F.3d at 589-90).   The Third Circuit has characterized this holding as "permit[ting] a finding of falsity based on [the defendant's] failure to come forward with any evidence to support its claims." *Groupe SEB USA, Inc.*, 774 F.3d at 203.

Defendants' actions to date with respect to other claims made on Wahlburgers' labels indicate that the Court should be skeptical of Defendants' unsubstantiated "GMO-Free" claims.  Specifically, despite including the statements "no preservatives," "fresh," and "all natural" on their pickle labels before the commencement of this lawsuit, Defendants have yet to present the Court with a single test result showing that any of their pickles produced during the relevant time period did not contain the artificial preservative sodium benzoate.  (Am. Compl. ¶ 43.)  Critically, tests of Wahlburgers pickles sourced from across the United States show that every tested Wahlburgers pickle produced prior to this action contained sodium benzoate.  (Am. Compl. ¶ 43; 2/14/23 Kahl Decl. ¶ 11, Exs. A-N (Dkt. 41-2); 1/3/23 Kahl Decl. ¶¶ 5-10 (Dkt. 4-18), Exs. A-B (Dkt. 4-19, 4-20).)  Accordingly, given the indefensibility of Defendants' "GMO-Free" claims and their track record of making false statements on their labels without procuring supporting scientific testing, no inferential leap is required to conclude that Defendants' "GMO-Free" claim is also unsupported and false.  (Am. Compl. ¶ 43.)  Thus, the Court should apply the binding precedent articulated in *Novartis*.

Defendants argue that *Novartis* was limited to its facts because it "relied on a unique, pharmaceutical regulatory scheme," (Mot. at 13), but the Third Circuit has already applied *Novartis* to claims brought under the Lanham Act relating to non-pharmaceutical advertising. *See, e.g.*, *Groupe SEB USA, Inc.*, 774 F.3d at 203. Similarly, courts in the District of New Jersey have also applied *Novartis* in non-pharmaceutical false-advertising cases. *See, e.g.*, *Smart Vent, Inc. v. Crawl Space Door System, Inc.*, No. 13-5691, 2017 WL 4948063, at *5 (D.N.J. Nov. 1, 2017) (citing *Novartis* in a false advertising case about vents for the proposition that a statement can be treated as per se false when a defendant fails or refuses to offer proof of substantiation).

Second, Defendants' reliance on *B. Sanfield, Inc. v. Finlay Fine Jewelry Corp.*, 168 F.3d 967 (7th Cir. 1999), for the proposition that "the term 'GMO-Free' on a food product without plausible allegations that the product contains GMOs cannot serve as the basis for a false advertising claim," (Mot. 11), is entirely misplaced. Indeed, *Sanfield* is factually inapplicable and does not stand for the broad proposition for which Defendants offer it. Rather, in that case, the regulations at issue were guidelines promulgated by the Federal Trade Commission addressing deceptive pricing. 168 F.3d at 967, 972-973. Moreover, the dispute had to do with

17

false advertising as to sales and discounts, not the product itself.  *See id.*[5]

Furthermore, even if the Court declines to invoke the presumption applied when a statement is literally false, the Amended Complaint adequately alleges the subject statements have deceived or have "at least a tendency to deceive a substantial portion of the intended audience."  *See Warner-Lambert Co.*, 204 F.3d at 91-92.  The Amended Complaint states, "Defendants' false and misleading statements were designed to and actually did deceive a substantial portion of their intended audience" by deceiving consumers into believing that Wahlburgers' pickles were Non-GMO Certified and were "GMO-Free."  (Am Compl. ¶ 63; *see also id.* ¶ 64 ("[B]y using the 'GMO-Free' claim and a butterfly mark nearly identical to that used by the Non-GMO Project, Defendants availed themselves of 'the most trusted non-GMO label and the most widely recognized food certification after USDA Organic.'").)  This is supported by Grillo's allegations that the Non-GMO Project Verified seal matters to consumers, especially those who specifically shop for non-GMO products.  The

---

[5]   Defendants cite *In re Kind LLC "Healthy and All Natural" Litig.*, 287 F. Supp. 3d 457, 462 (S.D.N.Y. 2018), and *Ault v. J.M. Smucker Co.*, No. 13 Civ. 3409, 2014 WL 1998235, at *1 (S.D.N.Y. May 15, 2014), as examples of cases where plaintiffs adequately pleaded false-advertising claims by alleging that the defendant's products contained GMOs.  (Mot. at 11.)  They suggest that Grillo's claims fail because they, in contrast, allege only that Wahlburgers' pickles are not "GMO-free." (*Id.*)  But Grillo's allegation that Wahlburgers' pickles are not "GMO-Free" is just another way of alleging that those pickles contain GMOs.  Either way, the result is the same: the statements on Defendants' labels that their pickles are "GMO-Free" is false.

Amended Complaint alleges that the Non-GMO Certified seal is "the most trusted non-GMO label and the most widely recognized food certification after USDA organic" and that based on research from the Non-GMO Project, "brands with the [non-GMO] Butterfly experience a sales increase over those without the label" and can see up to a "20% sales lift." (*Id.* ¶ 53.)

For all of these reasons, Grillo's has alleged sufficient facts showing that Defendants' false and misleading statements would tend to deceive a substantial portion of the intended audience.

> 2. <u>Grillo's Non-GMO Project Claim States a Lanham Act Claim for False Advertising</u>

Defendants next argue that Grillo's allegation that the Defendants' labels mislead consumers concerning non-GMO Project certification is not a permissible basis for a false-advertising claim under the Lanham Act. (Mot. at 14.) Defendants' argument misunderstands the law. The Lanham Act provides a false-advertising cause of action for misrepresentations concerning "the nature, characteristics, qualities, or geographic origin of [a defendant's] or another person's goods, services, or commercial activities." 15 U.S.C. § 1125(a)(1)(B). Contrary to Defendants' argument, Grillo's alleges that Defendants' labels mislead consumers about "the nature, characteristics, or qualities" of Wahlburgers pickles: namely, that the ingredients in those pickles have been independently verified as non-GMO by the Non-GMO Project, when that is in fact not the case.

Defendants argue that Grillo's claim is, in reality, a "false association" claim in disguise.  But Defendants' cited authority concerns affiliation between one brand and another brand, not between a brand and an independent certification mark.  (Mot. at 17 (citing *Parks LLC v. Tyson Foods, Inc.*, 863 F.3d 220 (3d Cir. 2017)).  Indeed, courts have categorized similar claims involving false independent-certification labels as false-advertising claims, rather than false-association claims under the Lanham Act.  For example, in *Burndy Corp. v. Teledyne Industries, Inc.*, 584 F. Supp. 656 (D. Conn. 1984), *aff'd by* 748 F.2d 767 (2d Cir. 1984), both the plaintiff and the defendant manufactured split bolt connectors (devices designed to ensure the efficient flow of electricity between wire or cable conductors).  *Id.* at 659.  The plaintiff alleged that the defendant had engaged in false advertising in violation of the Lanham Act by marketing its connectors as meeting certain industry standards ("UL approved") that were created by "an independent, non-profit entity which establishes standards in the electrical field," *id.*, when, in fact, the defendant's products no longer met those standards because of a change in their design.  *Id.* at 663. The court characterized the plaintiff's allegations as constituting a cognizable claim of false advertising under the Lanham Act (although the court ultimately did not award the plaintiff any damages).  *Id.*

Defendants also argue that because other cases bringing claims related to the Non-GMO Project were brought under state law, this somehow means that Grillo's

Lanham Act claim fails as a matter of law.  (Mot. at 15.)  But none of those cases holds that the plaintiff's claim could not have been brought under the Lanham Act; they merely analyzed the state-law claims that were brought under state law, rather than under federal law.  This argument also ignores the fact that the Amended Complaint bases the GMO-related claims for unfair competition on both New Jersey law and the Lanham Act.  (Am. Compl. ¶¶ 67-69.)  It is Defendants' burden to show that Grillo's claims fail as a matter of law, and they have fallen short of carrying that burden here.  *See Hedges*, 404 F.3d at 750.

> ### 3.   Grillo's Non-GMO Project Claim Is Plausible and Courts Have Consistently Allowed Similar Cases to Proceed Past the Pleading Stage

Defendants also argue that Grillo's Non-GMO Project Claim is patently implausible because "no reasonable person could be misled by the advertisement in question."  (Mot. 17.)  That argument is without merit.

The Third Circuit has instructed courts to engage in "[t]houghtful reflection on potential ambiguities in an advertisement" before concluding as a matter of law that a message could not mislead a reasonable person.  *Pernod Ricard*, 653 F.3d at 254-55.  Courts only hold that "[n]o reasonable consumer [could] be misled" as a matter of law where there is a clear disclaimer or a factually correct label.  *See, e.g.*, *Groupe SEB USA, Inc.*, 774 F.3d at 201; *Victory Glob., LLC v. Fresh Bourbon, LLC*, No. 5:21-62-KKC, 2022 WL 785039, at *7 (E.D. Ky. Mar. 14, 2022) (finding that

"[n]o reasonable consumer could be misled by" a factually correct label as to a product's origin).  For this reason, cases concluding that "no reasonable person could be misled" by an advertisement "are rare."  *Parks, LLC v. Tyson Foods, Inc.*, No. 5:15-cv-00946, 2015 WL 4545408, at *10 (E.D. Pa. July 28, 2015).

Put bluntly, Defendants' argument is a nonstarter.  Courts around the country have consistently allowed similar cases where a defendant's label bears similarities to the Non-GMO Project's seal to proceed past the pleading stage.  *See generally Norman v. Gerber Prods. Co.*, No. 21-cv-09940-JSW, 2023 WL 122910 (N.D. Cal. Jan. 6, 2023); *Rankin v. Arca Cont'l S.A.B. de C.V.*, No. 20-CV-1756, 2022 U.S. Dist. LEXIS 103573 (E.D.N.Y. June 9, 2022); *Latiff v. Nestle USA, Inc.*, No. 2:18-CV-06503-ODW, 2019 WL 4544544 (C.D. Cal. Sept. 19, 2019).  Indeed, Defendants' Non-GMO label, which is paired on its packaging with the "GMO-Free" text, mirrors several distinctive elements of the Non-GMO Project label identified in prior case law.  (*See* Am. Compl. ¶¶ 39-40.)  Specifically, Defendants have copied from the Non-GMO Project label: (1) the distinctive V-shaped leaf-like graphic, (2) the capitalized text, and (3) the bright green hue.  (*Id.* ¶ 40.)



**Image 1:**
Non-GMO Project's
Certification Mark

22

Like the labels at issue in *Rankin*, *Latiff*, and *Norman*, Defendants' label contains a distinctive "V-shaped leaf-like graphic" and capitalized text adjacent to the V-shaped leaf-like graphic. *See, e.g.*, *Norman*, 2023 WL 122910, at *8 ("Defendant's Image contains capitalized 'NON GMO' text and a V-shaped leaf-like graphic . . . ."); *Rankin*, 2022 U.S. Dist. LEXIS 103573, at *16 ("[T]he Court finds that Defendant's green, V-shaped graphic atop the capitalized sans serif 'NON GMO' text could plausibly give reasonable consumers the impression that Defendant's product was certified by an outside party such as the Non-GMO Product."). Defendants' label, like those in *Rankin* and *Latiff*, also contains a distinctive green hue that closely tracks the Non-GMO Project label. A side-by-side comparison of Defendants' label, and the labels in *Rankin, Norman,* and *Latiff* reveals just how strikingly similar Defendants' label is to those labels—and the Non-GMO Project's label. (*See* Am. Comp. ¶¶ 39-40; Del Medico Decl. Exs. 2-4 (Dkt. 61-2).) Notably, in all those cases, the court found that the plaintiffs' allegations were sufficient to satisfy the pleading standard and defeated a motion to dismiss.



| Image 2:<br>Wahlburgers'<br>label | Image 3:<br>Defendants' label<br>in *Rankin* | Image 4:<br>Defendants' label<br>in *Latiff* | Image 5:<br>Defendants' label<br>in *Norman* |

In sum, Defendants' label here has at least three distinctive similarities with the Non-GMO Project seal and also closely resembles the label in *Rankin*, which the Court determined "could plausibly give reasonable consumers the impression that Defendant's product was certified by an outside party such as the Non-GMO Project." *Rankin*, 2022 U.S. Dist. LEXIS 103573, at *15.

Despite these evident similarities, Defendants argue that this case is more analogous to *Gordon v. Target Corporation*, No. 20-CV-9589, 2022 WL 836773 (S.D.N.Y. Mar. 18, 2022), in which the court found the plaintiff's label was not plausibly similar to the Non-GMO Project's label. But in *Gordon*, the "only similarity" between the challenged label and the Non-GMO Project's label, according to the court, was the "use of the term 'non-GMO.'" *Id.* at *12.

Moreover, even if Defendants' emblem could be characterized as just "somewhat less similar to the Non-GMO Project seal," its *multiple* similarities with that seal and the labels in *Rankin, Norman,* and *Latiff* "raise[] questions that are not properly decided at the motion to dismiss stage." *See Rankin*, 2022 U.S. Dist. LEXIS 103573, at *16; *see also Genzyme Corp. v. Shire Human Genetic Therapies, Inc.*, 906 F. Supp. 2d 9, 17 (D. Mass. 2012) (distinguishing a "clearly stated" label from the press release that involved allegations that required "delving into murky scientific data and analysis, a task that cannot be satisfactorily undertaken on a motion to dismiss").

4.    Grillo's Amended Complaint Pleads a Compensable Injury

Finally, Defendants argue Grillo's damages allegations are deficient under Rule 12(b)(6) because Grillo's cannot satisfy the injury prong of a false-advertising claim under the Lanham Act.  (Mot. 21-25.)  This argument too fails.

To show injury under the Lanham Act, "a plaintiff must plead (and ultimately prove) an injury to a commercial interest in sales or business reputation proximately caused by the defendant's misrepresentations."  *Lexmark*, 572 U.S. at 140. Defendants claim that "[c]ourts in the Third Circuit 'require a heightened level of proof of injury in order to recover monetary damages' for false advertising claims" (Mot. at 21), citing *Bracco Diagnostics, Inc. v. Amersham Health, Inc.*, 627 F. Supp. 2d 384, 480 (D.N.J. 2009).  But *Bracco* does not speak to pleading requirements. Rather, that case concerned whether the plaintiff had ultimately ***proven*** liability and damages ***after a bench trial***.  *Id.* at 397.  Defendants' asserted rule in essence would require Grillo's to include in its pleadings what is required to prove its claims, which is not how the law operates.  *See Industria de Alimentos Zenú S.A.S. v. Latinfood U.S. Corp.*, No. 16-6576, 2017 WL 6940696, at *17 (D.N.J. Dec. 29, 2017) ("Whether [defendant's] deception caused [consumers] to withhold trade from [plaintiff] is an issue that must await factual development"); *TrafficSchool.com, Inc.*, 653 F.3d at 827 (citing 5 McCarthy § 27:31) ("Requiring proof that defendant's ads caused plaintiff to lose sales as a prerequisite to bringing suit would frustrate [the

25

Lanham Act's] ability to act as the fabled vicarious avenger of the consuming public.").

Defendants argue that "Grillo's has failed to allege facts to show that it was injured in any way." (Mot. at 21.)  But even a cursory review of Grillo's Amended Complaint reveals this to be incorrect.  Specifically, Grillo's has alleged that it and Defendants "are in direct competition in the fresh pickle market, and there are few, if any, other fresh pickle brands that have the same national reach and recognition as Grillo's or Wahlburgers." (Am. Compl. ¶ 45.)  Grillo's has also alleged in detail that Grillo's pickles and Defendants' pickles are "offered for sale next to each other in in the same refrigerated sections of the same grocery stores."  (*Id*.)  Further, Grillo's has shown that online shopping platforms offer Defendants' and Grillo's pickles directly next to each other when customers search for "fresh pickles" (*id*. ¶ 46) and "pickles no preservatives" (*id*. ¶ 47).  Grillo's also alleges that Defendants' pickles use "similar naming conventions as Grillo's pickles," Defendants' pickles are formulated to "taste nearly identical to Grillo's pickles," and Defendants' pickles "are packaged in plastic jars that are nearly identical to Grillo's." (*Id*. ¶ 57.)  Further, Grillo's has shown that consumers view Grillo's and Wahlburgers as so similar that they often believe incorrectly Grillo's produces Defendants' pickles. (*Id*. ¶ 48.)  And Grillo's has alleged that but for Defendants' false and misleading advertising, Grillo's and Wahlburgers would not have been considered to be in the same "fresh

pickle category." (*Id*. ¶¶ 49, 51.)  Moreover, Grillo's has alleged that because products that are Non-GMO Project verified can see "up to a 20% sales lift," Defendants' misleading use of the butterfly mark and "GMO-Free" label has given Defendants an unfair advantage over Grillo's to Grillo's detriment. (*Id*. ¶¶ 53, 64.)

Given this plethora of allegations and the several studies Grillo's has submitted showing customers avoid artificial preservatives (1/3/2023 Fuoco Decl. ¶¶ 15-17 (Dkt. 4-2), Exs. J-L), no inferential leap is required to conclude Defendants' false advertising diverted sales from Grillo's and caused Grillo's to suffer "lost shelf space, and lost market share." (Am. Compl. ¶ 38.)  Thus, there can be no serious question that the allegations in the Amended Complaint sufficiently "plead . . . an injury to a commercial interest in sales or business reputation proximately caused by the [Defendants'] misrepresentations." *Lexmark*, 572 U.S. at 140.

Nonetheless, to eliminate any doubt, Grillo's has also alleged that "customers shopping for fresh pickles and grocery store buyers seeking to stock their shelves with fresh pickles have, at times, chosen Wahlburgers over Grillo's pickles." (Am. Compl. ¶ 45.)  Additionally, Grillo's has submitted declarations showing that after falsely advertised Wahlburgers pickles were placed on one grocery chain's shelves directly next to Grillo's, Grillo's had to drastically increase its spending on promotions and forego profit to remain competitive at that chain with what misled customers believed were preservative-free, "fresh," and "all natural" Wahlburgers

27

pickles.  (Kaufman Decl. ¶¶ 3-4 (Dkt. 41-1).)  Further, grocery loyalty card data shows that during the time Defendants were falsely advertising their pickles, many customers switched from Grillo's to Wahlburgers.  (*Id.* ¶ 6.)  In short, Grillo's has more than adequately alleged that Defendants falsely advertising their pickles as "no preservatives," "fresh," "all natural," and "GMO-Free" has harmed Grillo's.

Indeed, courts in this circuit have found much weaker allegations sufficient to show injury under the Lanham Act.  For example, in *EP Henry Corp. v. Cambridge Pavers, Inc.*, No. 17-1538, 2017 WL 4948064 (D.N.J. Oct. 31, 2017), the court found the following statement sufficient to allege harm under the Lanham Act: "'As a result of prospective customers' reliance on [defendant's] false statements, EP Henry has been damaged by and through loss of business, loss of potential customers, loss of reputation, and loss of revenue.'"  *Id.* at *8.  The court made that finding even though the plaintiff admitted it had not alleged "a specific instance of a consumer choosing to purchase pavers from [defendant] over EP Henry because of [defendant's] false advertising statements."  *Id.*; *see also Industria de Alimentos Zenú S.A.S.*, 2017 WL 6940696 at *17 (finding Lanham Act false advertising injury adequately pled when plaintiff alleged, without additional detail, that: "[defendants] inferior products and false labeling harm the goodwill [plaintiff] has . . . generate[d] and, in turn, impact [plaintiff's] sales in Colombia and any future sales [plaintiff] may seek to have in this District and in the United States").

**D.**   **The Court Should Not Dismiss Grillo's State-Law Claim and Should Exercise Supplemental Jurisdiction**

Defendants argue that New Jersey does not permit false-advertising claims under state common law.  (Mot. at 25.)  For that proposition, Defendants cite only *Tris Pharma, Inc. v. UCB Manufacturing, Inc.*, No. A-5808-13T3, 2016 WL 4506129, at *5 (N.J. App. Div. Aug. 28, 2016), but that unpublished opinion, which the Appellate Division has never subsequently cited, does not establish such a sweeping rule.  Rather, the court in *Tris Pharma* merely noted that there was no existing "New Jersey precedent which supports [the] assertion that the common law tort of unfair competition encompasses . . . false advertising."  *Id.*

In contrast to *Tris Pharma*, the Third Circuit has held that "except for the interstate commerce requirement, the elements of the unfair competition torts proscribed by New Jersey law and by section 43(a) of the Lanham Act are the same." *SK & F, Co. v. Premo Pharm. Lab'ys, Inc.*, 625 F.2d 1055, 1066 (3d Cir. 1980). Courts in New Jersey have consistently recognized Lanham Act false-advertising claims to be coextensive with claims under New Jersey common law and have found such claims to be viable and cognizable, even after *Tris Pharma*.  *See Newborn Bros. Co., Inc. v. Albion Eng'g Co.*, 481 F. Supp. 3d 312, 343, n.11 (D.N.J. 2020) (holding, after a bench trial, that the defendant was liable false advertising under the Lanham Act and common law unfair competition under New Jersey law for the same conduct); *Kaisha v. Lotte Int'l Am. Corp.*, No. 15-5477, 2016 WL 11811824, at *2

29

(D.N.J. Dec. 13, 2016) (noting that "claims for false advertising under the Lanham Act, . . . and New Jersey common law are substantially similar" and analyzing the claims together); *Bracco Diagnostics, Inc.*, 627 F. Supp. 2d at 454-55, 493 (evaluating false-advertising claims brought under the Lanham Act and "parallel" New Jersey law); *Graco, Inc. v. PMG Glob., Inc.*, No. 08–1304, 2009 WL 904010, at *26-27 (D.N.J. Mar. 31, 2009) (denying dismissal of plaintiffs' New Jersey common law unfair-competition claim because plaintiffs also adequately pled a Lanham Act false-advertising claim under § 1125(a)(1)(B)).

For example, in *Canfield Sciences, Inc. v. Melanoscan, LLC,* No. 16-4636, 2017 WL 2304644 (D.N.J. May 25, 2017), which was decided after *Tris Pharma*, the plaintiff brought claims for both violations of the Lanham Act and unfair competition under New Jersey law based on "objectively baseless, material false statements concerning Canfield's products in a commercial communication." *Id.* at *8-9. The court—citing § 1125(a)(1)(B) and the five-factor test for false and misleading advertising under the Lanham Act—held that the test for unfair competition under § 1125 of the Lanham Act was identical to that for unfair competition under New Jersey law and denied defendant's motion to dismiss as to some of the false statements. *Id.*

Moreover, as explained above, Grillo's has satisfied its burden to state a claim for unfair competition under the Lanham Act. New Jersey courts have held that "the

test of unfair competition under New Jersey law is identical to the test for unfair competition under § 1125 of the Lanham Act." *See Canfield Sci.*, 2017 WL 2304644 at *8. In the interests of judicial economy and fairness, the Court should exercise supplemental jurisdiction here, where the state and federal claims are virtually identical and stem from the same set of facts.

### E.   If the Motion Is Granted, the Court Should Allow Grillo's Leave to Amend the Complaint

For the reasons stated above, the Court should deny Defendants' Motion to Dismiss in its entirety. If, however, the Court grants any aspect of Defendants' motion, it should also grant Grillo's leave to amend because, as Federal Rule of Civil Procedure 15(a)(2) provides, "[t]he court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). Indeed, the Third Circuit has instructed that "if a complaint is vulnerable to 12(b)(6) dismissal, a district court must permit a curative amendment, unless an amendment would be inequitable or futile." *See Phillips*, 515 F.3d at 236; *see also Nobile v. Ford Motor Co.*, No. 10-1890, 2011 WL 900119, at *6 (D.N.J. Mar. 14, 2011) ("When a defendant's motion to dismiss is granted, the court should 'freely' provide the plaintiff with leave to amend its dismissed causes of action 'when justice so requires.'" (quoting Fed. R. Civ. P. 15(a)(2)). Accordingly, "[l]eave to amend should be granted unless there is substantial or undue prejudice, . . . bad faith or dilatory motives, truly undue or unexplained delay, repeated failures to cure the deficiency by amendments previously allowed, or

futility of amendment." *United States v. Kushner*, No. 17-2372, 2018 WL 2230552,

at *1 (D.N.J. May 15, 2018) (citation and quotation omitted).

If Defendants oppose this request, they bear the burden to demonstrate why

an amendment should not be allowed. *Id*. Here, any deficiency in Grillo's pleadings

identified by the Court could be addressed in an amended pleading, and no

Defendant would suffer undue prejudice by such an amendment. Therefore, if the

Amended Complaint is dismissed, in whole or in part, the Court should grant Grillo's

leave to amend.

## IV.    CONCLUSION

For the foregoing reasons, the Court should deny Defendants' Motion to

Dismiss in its entirety.

Dated:  July 7, 2023                       Respectfully submitted,

MARINO, TORTORELLA, & BOYLE, P.C.   QUINN EMANUEL URQUHART & SULLIVAN, LLP

/s/Kevin H. Marino                          /s/Christina I. Crowley
Kevin H. Marino                             Christina I. Crowley
John A. Boyle                               51 Madison Avenue, 22nd Floor
437 Southern Boulevard                      New York, NY 10010
Chatham, NJ 07928                           (212) 849-7000
(973) 824-9300

                                            Marshall M. Searcy III (*pro hac vice*)
                                            Gregory A. Fuoco (*pro hac vice*)
                                            865 South Figueroa Street, 10th Floor
                                            Los Angeles, California 90017-2543
                                            (213) 443-3000

**Attorneys for Plaintiff Grillo's Pickles, Inc.**