Kevin H. Marino
John A. Boyle
**MARINO, TORTORELLA & BOYLE, P.C.**
437 Southern Boulevard
Chatham, New Jersey 07928-1488
(973) 824-9300

Marshall M. Searcy III (admitted *pro hac vice*)
Gregory A. Fuoco (admitted *pro hac vice*)
**QUINN EMANUEL URQUHART & SULLIVAN, LLP**
865 South Figueroa Street, 10th Floor
Los Angeles, CA 90017-2543
(213) 443-3000

Christina I. Crowley
**QUINN EMANUEL URQUHART & SULLIVAN, LLP**
51 Madison Avenue, 22nd Floor
New York, NY 10010
(212) 849-7000

*Attorneys for Plaintiff Grillo's Pickles, Inc.*

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| GRILLO'S PICKLES, INC., a Delaware corporation,<br><br>            Plaintiff,<br><br>    v.<br><br>PATRIOT PICKLE INC., a Delaware corporation, ARKK FOOD COMPANY, a Michigan corporation, and WAHLBURGERS I, LLC, a Massachusetts limited liability company.<br><br>            Defendants. | Civil Action No. 2:23-cv-00011-MCA-AME<br><br><br><br>**CONSOLIDATED AMENDED COMPLAINT (JURY DEMAND)** |

Plaintiff, Grillo's Pickles, Inc. ("Grillo's" or the "Company"), through its undersigned attorneys, by way of Complaint against Defendants, Patriot Pickle Inc. ("Patriot"), ARKK Food Company ("ARKK") and Wahlburgers I, LLC, alleges as follows:

### NATURE OF THE ACTION

1.    This is an action to redress the theft of invaluable trade secrets, contractual breaches, and other misconduct by Defendants that, in addition to having already caused substantial monetary harm, poses an existential threat to the Company.  Specifically, Patriot has

misappropriated Grillo's trade-secret pickle recipes and manufacturing processes—highly proprietary and confidential information that is the heart and soul of Grillo's business—to manufacture virtually identical pickle products for two nationally known brands, Whole Foods, a multinational supermarket chain synonymous with all-natural and organic foods, and Wahlburgers, a restaurant chain that was co-founded by world-famous movie star Mark Wahlberg and has been the subject of a multi-season reality television program.  Because these copycat products have enormous, built-in name recognition and are sold throughout the country, often at substantially discounted prices, Patriot's actions threaten to drive Grillo's out of business.  And beyond stealing Grillo's 100-year-old secret family recipes, Patriot, together with Defendants ARKK and Wahlburgers I, LLC, has lied and continues to lie about the nature and quality of its pickles, misleading the public to believe they are superior to Grillo's pickles.  Stated simply, Defendants' collective actions exceed the bounds of reasonable competition.

2.      In 2012, Grillo's entered into negotiations with Patriot regarding a potential co-packing relationship, wherein Patriot would manufacture, package, label, and ship a portion of Grillo's pickles.  To protect Grillo's recipes, Patriot and Grillo's entered into a Mutual Nondisclosure Agreement under which Patriot promised to "maintain in trust and confidence and not disclose to any third party or use for any unauthorized purpose any" of Grillo's information, including its "formulas" and "processes."  In the same agreement, Patriot agreed that Grillo's information "shall remain the property of [Grillo's]. . . ."  Thereafter, Grillo's entrusted Patriot with its proprietary recipes and manufacturing and packaging processes, and Patriot began to co-pack Grillo's pickles.

3.      While Patriot was co-packing for Grillo's, the parties signed two other agreements in which Patriot reaffirmed its obligation to maintain the secrecy of Grillo's recipes and processes. The first agreement, signed in May 2015, stated that (i) "the name, recipes and formulations for Grillo's Pickles remain the sole and exclusive property of Grillo's Pickles, LLC;" and (ii) Patriot agreed "not to disclose any confidential information to anyone other than those who have a need to know."  The second agreement, signed in August 2016, again stated that "the name, recipes and

formulations for Grillo's Pickles remain the sole and exclusive property of Grillo's Pickles, LLC."

4.     Grillo's terminated Patriot's role as a co-packer of its pickles in the summer of 2021.  But as Grillo's has now come to realize, Patriot did not destroy or return the materials in its possession containing or based on Grillo's trade-secret recipes and processes, as it was required to do by the Mutual Nondisclosure Agreement.

5.     To the contrary, as Grillo's has now discovered, Patriot, acting in concert with the other Defendants, is violating these clear and unambiguous agreements—as well as various statutes—by using Grillo's proprietary recipes and processes to produce new lines of pickles under the Wahlburgers and Whole Foods 365 labels and is selling these new pickle products to stores across the United States.  Patriot's new pickles are offered directly next to Grillo's pickles at various national and regional retailers.  They list identical, or nearly identical, ingredients and nearly identical nutrition facts as Grillo's pickles.  And they are often priced at more than a 30% discount to Grillo's pickles.

6.     In short, Defendants are using highly proprietary recipes and processes stolen from Grillo's to sell nearly identically formulated lines of pickles at some of the biggest national and regional retailers, often at a much lower price point, and often directly next to Grillo's products. This threatens to destroy Grillo's business and customer base.

7.     In addition to stealing Grillo's trade-secret recipes and manufacturing processes, Patriot, ARKK, and Wahlburgers I, LLC are falsely advertising their pickles in order to make them seem not just the same as but actually superior to Grillo's pickles.  These improper actions include:

   a) From 2021 until May 2023, Defendants marketed their Wahlburgers pickles as being "fresh," "all natural," and containing "no preservatives."  None of those claims were true.  Indeed, Patriot has admitted that Wahlburgers pickles contained substantial amounts of sodium benzoate, an artificial chemical preservative, during that time.

   b) Since 2021, Defendants have claimed that their Wahlburgers and Whole Foods 365 pickles contain only 180 mg of sodium per serving.  This too has proved to

be false, as dozens of independent laboratory tests have shown Wahlburgers and Whole Foods 365 pickles contain significantly more sodium, in direct violation of FDA labeling regulations.

8. Accordingly, Grillo's brings this action against Defendants for (1) violations of the Defend Trade Secrets Act, (2) violations of the New Jersey Trade Secrets Act; (3) breach of contract; (4) Lanham Act violations; and (5) unfair competition.

<u>**PARTIES**</u>

9. Plaintiff Grillo's Pickles, Inc. is a corporation incorporated under the laws of Delaware with its principal place of business in Westwood, Massachusetts. Grillo's was founded by Travis Grillo in 2008 when he began selling pickles using his grandfather's 100-year-old recipe out of a hand-built wooden cart on the streets of Boston. Since then, Grillo's has evolved into a nationwide brand known for producing fresh pickles that do not contain artificial chemical preservatives. Customers choose Grillo's because they know that when they do so, they are purchasing fresh pickles free from artificial preservatives.

10. Defendant Patriot Pickle Inc. is a corporation incorporated under the laws of Delaware with its principal place of business in Wayne, New Jersey. A substantial amount of Patriot's business involves "co-packing," a practice in the packaged-food industry in which one company (the co-packer) contracts to manufacture, package, label, and ship food for brands owned by another company. As is relevant here, Patriot currently functions as a co-packer for Whole Foods 365 pickles and Wahlburgers pickles. By virtue of these co-packing relationships, Patriot formulates, manufactures, packages, labels and ships Whole Foods 365 pickles and Wahlburgers pickles from Patriot's facility in Wayne, New Jersey on behalf of Whole Foods and ARKK/Wahlburgers I, LLC, respectively.

11. Defendant ARKK Food Company is a corporation incorporated under the laws of Michigan with its principle place of business in Bloomfield Hills, Michigan. ARKK is in the business of creating and producing food products and is the distributor for Wahlburgers pickles and the exclusive licensee of Wahlburgers' retail products. Upon information and belief, ARKK

controls the entire line of Wahlburgers retail products and engaged Patriot to manufacture, package, label, and ship Wahlburgers pickles on ARKK's behalf.  Upon information and belief, ARKK has control over the Wahlburgers pickles' recipes and labeling, ARKK selected and approved the recipe for Wahlburgers pickles jointly with Patriot, and ARKK and Patriot jointly created the labels for Wahlburgers pickles.

12.     Defendant Wahlburgers I, LLC is a limited liability company organized under the laws of Massachusetts with its headquarters in Hingham, Massachusetts.  Wahlburgers I, LLC was founded by world-famous movie star Mark Wahlberg and his brothers, including Donnie Wahlberg, also a famous actor who has appeared in numerous films and television shows, including the long-running iconic drama Blue Bloods.  Wahlburgers I, LLC owns and operates a restaurant chain—Wahlburgers—with more than ninety locations throughout the United States and in Canada, Australia and New Zealand; the restaurant chain was the subject of a reality television show that aired on A&E from 2014 through 2019.  Wahlburgers I, LLC is the owner of the Wahlburgers trademarks that appear on Wahlburgers pickle labels and, upon information and belief, has licensed these trademarks to ARKK.  Upon information and belief, as the licensor of the Wahlburgers trademarks and by virtue of its contractual relationship with ARKK, Wahlburgers I, LLC has control over the Wahlburgers pickles' recipes and labeling.

## ARKK AND PATRIOT ARE AGENTS OF WAHLBURGERS I, LLC

13.     Both ARKK and Patriot are the actual and/or apparent agents of Wahlburgers I, LLC.  Wahlburgers pickles are formulated, manufactured, packaged, labeled, and distributed by a combination of Patriot and ARKK pursuant to express contractual arrangements between and among Wahlburgers I, LLC, Patriot and ARKK (as discussed *supra*).   Wahlburgers pickle containers are covered by trademarks owned by Wahlburgers I, LLC.  Further, Wahlburgers pickle labels conspicuously sport pictures of the Wahlberg family, members of which control Wahlburgers I, LLC.

14.     Patriot is mentioned nowhere on the Wahlburgers pickles' packaging, ARKK is identified only as the distributor, and the Wahlburgers pickle labels state only that ARKK is

distributing the pickles "under license of Wahlburgers, LLC."  This is despite the fact that, upon information and belief, ARKK controls the entire line of Wahlburgers' retail products.

15.     Thus, although Wahlburgers pickles are manufactured, packaged, and labeled by a combination of Patriot and ARKK, they are held out to the public as being manufactured, packaged, and labeled by or on behalf of Wahlburgers I, LLC, given that, *inter alia*:

  a)  Wahlburgers I, LLC is the entity that owns the trademarks covering the pickle containers;

  b)  A substantial portion of Wahlburgers I, LLC's name (*i.e.* "Wahlburgers") appears prominently on the Wahlburgers pickle labels and in the pickles' names;

  c)  Pictures of the Wahlberg family, members of which control Wahlburgers I, LLC, are a central feature of the Wahlburgers pickle labels;

  d)  Patriot is not mentioned anywhere on the labels; and

  e)  ARKK is identified only as the pickles' distributor.

16.     This appearance of Patriot's and ARKK's authority to manufacture, package, and label Wahlburgers pickles in this manner was, upon information and belief, created by Wahlburgers I, LLC's conduct.  Upon information and belief, Wahlburgers I, LLC is aware of the appearance and statements made on Wahlburgers pickle labels, has the ability to control the Wahlburgers pickle recipes and labeling, and permits ARKK and Patriot to continue selling Wahlburgers pickles in the manner described *supra*.  In short, upon information and belief, Wahlburgers I, LLC authorized Patriot and ARKK to manufacture, package, and label pickles in a manner that created the appearance to customers that Patriot and ARKK were Wahlburgers I, LLC.

17.     Given the appearance of Wahlburgers pickle labels, customers reasonably believed the pickles were being offered by Wahlburgers I, LLC and reasonably relied on that belief when purchasing Wahlburgers pickles.  Thus, in addition to the actual agency authority created by the express contractual relationships between and among Defendants, Patriot and ARKK had apparent

agency authority to engage in the acts described in this Complaint on behalf of Wahlburgers I, LLC.

## JURISDICTION AND VENUE

18.     This Court has federal question jurisdiction over Grillo's claims arising under the Defend Trade Secrets Act, §§ 1836-39 *et seq*., and the Lanham Act, 15 U.S.C. § 1121, pursuant to 28 U.S.C. § 1331.  This court has supplemental jurisdiction over Grillo's state law claims pursuant to 28 U.S.C. § 1367.

19.     This Court has general personal jurisdiction over Patriot due to its systematic and continuous contacts with the State of New Jersey.  *Stewart v. Stuckey-Smith*, Civ. No. 22-4553 (SDW)(MAH), 2022 WL 17069966, at *4 (D.N.J. Oct. 28, 2022) ("New Jersey's long-arm statute, however, extends jurisdiction over non-resident defendants to the fullest extent permitted by the United States Constitution.").  For example, Patriot is headquartered in and maintains its facility in Wayne, New Jersey.

20.     This Court has specific personal jurisdiction over ARKK because it distributed falsely labeled Wahlburgers pickles to, *inter alia*, Walmart, ShopRite, and Acme stores throughout New Jersey.  Additionally, upon information and belief:

      a.  ARKK contracted with Patriot to formulate, manufacture, package, falsely label, and ship the Wahlburgers pickles at issue in this action from Patriot's facility in Wayne, New Jersey;

      b.  Patriot was acting as ARKK's agent when Patriot formulated, manufactured, packaged, falsely labeled, and shipped said pickles; and

      c.  ARKK ratified these actions by accepting and consenting to Patriot continuing to engage in them up to and including the date this action was filed.

21.     This Court has specific personal jurisdiction over Wahlburgers I, LLC because, upon information and belief:

a. Wahlburgers I, LLC contracted with ARKK with the understanding that Wahlburgers pickles would be formulated, manufactured, packaged, falsely labeled, and shipped from Patriot's Wayne, New Jersey facility;

b. Wahlburgers I, LLC contracted with ARKK with the understanding that ARKK would distribute falsely labeled Wahlburgers pickles to, *inter alia*, Walmart, ShopRite, and Acme stores throughout New Jersey; and

22.     Wahlburgers I, LLC ratified these actions by accepting and consenting to Patriot continuing to engage in them up to and including the date this action was filed.

23.     Venue in this Court is proper because "a substantial part of the events . . . giving rise to [Plaintiff's] claims occurred" in this district.  28 U.S.C. § 1391(b)(2).  For example, the sale, formulation, manufacture, and labeling of both Wahlburgers and Whole Foods 365 pickles occurred in Wayne, New Jersey.[1]  Similarly, the use and disclosure of Grillo's trade-secret recipes and processes occurred in Wayne, New Jersey.

## FACTUAL ALLEGATIONS

### A.     Grillo's Trade-Secret Recipes and Processes

24.     Grillo's developed the recipes and processes for its delicious, all natural pickles, which originate from 100-year-old family recipes, through a painstaking process over the course of many years.  Through many iterations of trial and error, Grillo's has identified what it believes are the best recipes and processes to provide its customers with long-lasting, all natural pickles without artificial preservatives.  The recipes and processes relevant to the current action include those for Grillo's "Hot Pickle Spears," "Hot Dill Pickle Chips," "Pickle Spears," "Dill Pickle

---

[1]     Patriot admitted in its filings in *Grillo's Pickles, Inc. v. Patriot Pickle, Inc.*, Case No. 1:23-cv-22387 (S.D. Fla.), that (1) "Patriot works with Wahlburgers and ARKK to manufacture and package Wahlburgers pickles from Patriot's facility in Wayne, New Jersey, on behalf of Wahlburgers and ARKK" (Fla. Mot. Dismiss (S.D. Fla. Dkt. 42) at 3), and (2) Patriot "manufactures the Whole Foods 365 Pickles" at its "principal place of business in Wayne, New Jersey" (*id*. at 4).  With respect to Grillo's trade-secret and contract claims, Patriot has also admitted that "[t]he locus of operative facts (*e.g.,* the former co-packing arrangement between Grillo's and Patriot and the current co-packing relationship between Patriot and Whole Foods) occurred in New Jersey." (*Id*. at 14.)

Chips," and "Whole Dills," including the ratios, amounts, types and specifications of each ingredient used to make each type of pickle.   These trade-secret recipes and processes are used by Grillo's to manufacture, package, and ship pickles to customers across the United States.

25.     Grillo's has gone to great lengths to keep its recipes and processes confidential, and it restricts access to such information to a strictly need-to-know basis. For example, Grillo's requires employees to sign nondisclosure agreements before they join the company and maintains a separate operations section of its server that restricts who can review certain material (like the recipes to Grillo's various pickles).  Further, the bill of materials for Grillo's recipes is typically only handled by one high-level employee.  Also, all co-packers and vendors are required to sign nondisclosure agreements before Grillo's enters into serious discussions regarding the recipes and manufacturing processes for its pickles.

**B.** **Grillo's and Patriot Begin a Co-Packing Relationship, and Patriot Promises to Maintain the Secrecy and Limit Its Use of Grillo's Proprietary Recipes and Processes**

26.     In 2012, Grillo's was seeking a copacker for its pickles and entered into negotiations with Patriot.  Grillo's and Patriot signed a Mutual Nondisclosure Agreement (attached hereto as **Exhibit A**) in which Patriot agreed to "maintain in trust and confidence and not disclose to any third party or use for any unauthorized purpose any Proprietary Information," which was defined to include all Grillo's information that was disclosed to Patriot, including Grillo's "formulas" and "processes." (Ex. A ¶ 3.)[2]  In the Mutual Nondisclosure Agreement, Patriot also agreed that:

> All Proprietary Information (including all copies thereof) shall remain the property

---

[2]     Although the Mutual Nondisclosure Agreement is signed by Grillo's Pickles LLC (which was a Massachusetts LLC), this entity was merged into Grillo's at the beginning of 2018. Under Mass. Gen. Laws Ch. 156C, § 62, when a Massachusetts LLC merges into another business entity, "all of the rights, privileges and powers of [the Massachusetts LLC] . . . as well as all other things and causes of action belonging to [the Massachusetts LLC]. . . shall be vested in the resulting or surviving . . . business entity. . . ." Thus, Grillo's is a party to the Mutual Nondisclosure Agreement because Grillo's Pickles, LLC merged into it in 2018, and Grillo's unambiguously has the right to enforce the agreement.

of the disclosing party and shall be returned to the disclosing party after the receiving party's need for it has expired, or upon request of the disclosing party, and in any event, upon completion or termination of this Agreement. The receiving party further agrees to destroy all notes and copies thereof made by its officers and employees containing or based on any Proprietary Information and to cause all agents and representatives to whom or to which Proprietary Information has been disclosed to destroy all notes and copies in their possession that contain Proprietary Information.

(*Id*. ¶ 6.)

27.     Although the Mutual Nondisclosure Agreement stated, "[t]he term of this agreement is five (5) years," (*id.* ¶ 11), it also stated it would "remain in full force and effect until such time as [Grillo's and Patriot] mutually agree to terminate it," (*id.* ¶ 7).  Both Patriot and Grillo's understood at the time of contracting that the Mutual Nondisclosure Agreement's restrictions on use and disclosure (*id.* ¶ 3) would not end after five years.  Instead, pursuant to paragraph seven of the Mutual Nondisclosure Agreement, Patriot and Grillo's understood the restrictions on use and disclosure would "remain in full force and effect until such time as [Grillo's and Patriot] mutually agree to terminate" the Mutual Nondisclosure Agreement. (*Id*. ¶ 7).

28.     The Mutual Nondisclosure Agreement also stated:

Each party hereby acknowledges and agrees that, in the event of any breach of this Agreement by the other party, including, without limitations, the actual or threatened disclosure of a disclosing party's Proprietary Information without the express written consent of the disclosing party, the disclosing party will suffer an irreparable injury such that no remedy at law will afford it adequate protection against or appropriate compensation for such injury. Accordingly, each party hereby agrees that the other party shall be entitled to specific performance of a receiving party's obligations under this Agreement as well as further injunctive relief as may be granted by a court of competent jurisdiction.

(*Id*. ¶ 10.)

29.     Ultimately, after a period of negotiation, Grillo's engaged Patriot as one of the co-packers for Grillo's pickles.  To enable Patriot to properly manufacture and package Grillo's pickles, Grillo's trusted Patriot with its proprietary pickle recipes and specific manufacturing and packaging processes to produce pickles that do not contain artificial preservatives while still maintaining a lengthy shelf life.

30.     Subsequently, in a May 2015 agreement allowing Grillo's to store and maintain an ozone cleaning machine at Patriot's facility (attached hereto as **Exhibit B**), the parties agreed that the "name, recipes and formulations for Grillo's Pickles remain the sole and exclusive property of Grillo's Pickles, LLC."  (Ex. B ¶ 1.)[3]  That same agreement stated that the parties agreed not to "disclose any confidential information to anyone other than those who have a need to know." (*Id.* ¶ 2.)

31.     In an August 2016 addendum to the aforementioned ozone machine agreement (attached hereto as **Exhibit C**), the parties reiterated that the "name, recipes and formulations for Grillo's Pickles remain the sole and exclusive property of Grillo's Pickles, LLC."[4]  (Ex. C.)

32.     Patriot continued as one of Grillo's copackers until the summer of 2021, when Grillo's ended the relationship.  To date, Grillo's and Patriot have not mutually terminated the Mutual Nondisclosure Agreement.  Moreover, until Patriot began working with Wahlburgers, Patriot—to Grillo's knowledge—had not disclosed Grillo's trade-secret recipes or processes to others or used them for other purposes not authorized by Grillo's.

33.     Patriot has not returned all its copies of Grillo's trade-secret recipes and processes. Upon information and belief, Patriot also has not destroyed all notes and copies thereof made by its officers and employees containing or based on Grillo's trade-secret recipes and processes.

**C.     Patriot Discloses Grillo's Proprietary Trade-Secret Recipes and Processes to ARKK and Wahlburgers I, LLC and Begins Using Grillo's Recipes and Processes to Manufacture Nearly Identical Pickles**

34.     In or before the spring of 2021, Patriot began producing and shipping Wahlburgers pickles on behalf of ARKK and Wahlburgers I, LLC.  It manufactures several varieties of pickles for ARKK and Wahlburgers, including, "Wahlburgers Fresh Dill Spears," "Wahlburgers Fresh Dill Chips," and "Wahlburgers Fresh Dill Chips Hot."

---

[3]   As discussed in Footnote 1, Grillo's Pickles LLC was merged into Grillo's, and thus Grillo's is a party to this agreement.

[4]   As discussed in Footnote 1, Grillo's Pickles LLC was merged into Grillo's, and thus Grillo's is a party to this agreement.

35.     The look and taste of these pickles is virtually identical to the look and taste of Grillo's "Pickle Spears," and "Dill Pickle Chips," and "Hot Dill Pickle Chips."[5]   Like Grillo's pickles, Wahlburgers pickles are sold in the refrigerated section. The labels on these pickles reveal they are made from almost precisely the same ingredients as Grillo's pickles.  The only difference between the two brands of pickles is that Grillo's pickles contain a grape leaf, whereas Wahlburgers pickles do not.

36.     The nutrition fact panels on Wahlburgers pickles are also virtually identical to the nutrition fact panels that were used for Grillo's pickles when they were being produced by Patriot:

| Nutrition Facts for Wahlburgers Fresh Dill Spears | Nutrition Facts for Grillo's Pickle Spears During the Time They Were Being Made by Patriot |
|---|---|



| Amount Per Serving | % Daily Value * |
|---|---|
| Total Fat 0g | 0% |
| Sat. Fat 0g | 0% |
| Trans. Fat 0g | |
| Cholesterol 0 mg | 0% |
| Sodium 180 mg | 8% |
| Total Carbohydrate 1g | <1% |
| Fiber 0g | 0% |
| Sugars 0g | |
| Protein < 1g | 0% |
| Vitamin A | 0% |
| Vitamin C | 0% |
| Calcium | 0% |
| Iron | 0% |

---

[5]   Indeed, as described in section G(1), *infra*, consumers have commented on the similar look and taste of Wahlburgers and Grillo's pickles.  For instance, with regard to Wahlburgers pickles, one consumer on Reddit.com stated they would be "willing to bet grillo['s] makes these for" Wahlburgers.   Another consumer commented: "those [Wahlburgers pickles] are just rebranded Grillos."   And one content creator on Tiktok.com stated that (1) he "got a lot of comments saying that the Wahlburgers pickles [he] just reviewed are the same pickles as Grillo's" and (2) "[t]here was a lot of people that were convinced they were the same."

## Nutrition Facts for Wahlburgers Fresh Dill Chips

**Nutrition Facts**

Servings per container about 24

**Serving size** 1 Oz (28g)

Amount per serving
**Calories** 5

| | % Daily Value* |
|---|---|
| **Total Fat** 0.0g | 0% |
| Saturated Fat 0g | 0% |
| Trans Fat 0g | |
| **Cholesterol** 0mg | 0% |
| Sodium 180mg | 8% |
| Total Carbohydrate 1g | 0% |
| Dietary Fiber 0g | 0% |
| Total Sugars 0g | |
| Includes 0g Added Sugars | 0% |
| Protein 0g | |
| Vitamin D 0mg | 0% |
| Calcium 23mg | 0% |
| Iron 0mg | 0% |
| Potassium 31mg | 0% |

* The % Daily Value (DV) tells you how much a nutrient in a serving of food contributes to a daily diet. 2,000 calories a day is used for general nutrition advice.

## Nutrition Facts for Grillo's Dill Pickle Chips During the Time They Were Being Made by Patriot

| Amount Per Serving | % Daily Value * |
|---|---|
| Total Fat 0g | 0% |
| Sat. Fat 0g | 0% |
| Trans. Fat 0g | |
| Cholesterol 0 mg | 0% |
| Sodium 180 mg | 8% |
| Total Carbohydrate 1g | <1% |
| Fiber 0g | 0% |
| Sugars 0g | |
| Protein < 1g | 0% |
| Vitamin A | 0% |
| Vitamin C | 0% |
| Calcium | 0% |
| Iron | 0% |

## Nutrition Facts for Wahlburgers Fresh Dill Chips Hot

**Nutrition Facts**

Servings per container about 24

**Serving size** 1 Oz (28g)

Amount per serving
**Calories** 5

| | % Daily Value* |
|---|---|
| **Total Fat** 0.0g | 0% |
| Saturated Fat 0g | 0% |
| Trans Fat 0g | |
| **Cholesterol** 0mg | 0% |
| Sodium 180mg | 8% |
| Total Carbohydrate 1g | 0% |
| Dietary Fiber 0g | 0% |
| Total Sugars 0g | |
| Includes 0g Added Sugars | 0% |
| Protein 0g | |
| Vitamin D 0mg | 0% |
| Calcium 23mg | 0% |
| Iron 0mg | 0% |
| Potassium 31mg | 0% |

* The % Daily Value (DV) tells you how much a nutrient in a serving of food contributes to a daily diet. 2,000 calories a day is used for general nutrition advice.

## Nutrition Facts for Grillo's Hot Dill Pickle Chips During the Time They Were Being Made by Patriot

| Amount Per Serving | % Daily Value * |
|---|---|
| Total Fat 0g | 0% |
| Sat. Fat 0g | 0% |
| Trans. Fat 0g | |
| Cholesterol 0 mg | 0% |
| Sodium 180 mg | 8% |
| Total Carbohydrate 1g | <1% |
| Fiber 0g | 0% |
| Sugars 0g | |
| Protein < 1g | 0% |
| Vitamin A | 0% |
| Vitamin C | 0% |
| Calcium | 0% |
| Iron | 0% |

13

37.     Notably, the 180-milligram-per-serving sodium levels listed on Wahlburgers pickles match exactly those listed on Grillo's pickles during the period of time they were being co-packed by Patriot.  This is strong evidence that Patriot misappropriated Grillo's trade-secret recipes and processes for the following reasons:

   a)   Recent independent lab tests (discussed *infra*) show the sodium levels listed for Wahlburgers pickles are inaccurate because the actual sodium levels are substantially higher than the 180-milligram-per-serving listed.

   b)   Similarly, during the time Grillo's pickles were being co-packed by Patriot, the sodium levels listed for Grillo's pickles were also inaccurate, and the actual sodium levels were higher than the 180-milligram-per-serving listed.

   c)   Grillo's has since corrected its labels and sodium levels, and Grillo's informed Patriot of this correction.  However, Patriot continues to use this erroneous nutritional information on the labels for Wahlburgers pickles.

   d)   Accordingly, the fact that Wahlburgers pickles continue to bear inaccurate sodium labeling—which is identical to the inaccurate sodium labeling formerly used for Grillo's while it was being co-packed by Patriot—strongly suggests that Patriot did not perform independent nutrition testing of their Wahlburgers pickles.  Instead, because Patriot is using Grillo's trade-secret recipes and processes to manufacture Wahlburgers, Patriot simply used Grillo's old nutrition labeling.

38.     Additionally, chromatograms resulting from independent lab testing show that the organic acid profiles of "Wahlburgers Fresh Dill Spears," "Wahlburgers Fresh Dill Chips," and "Wahlburgers Fresh Dill Chips Hot" are nearly identical to the organic acid profiles of the corresponding Grillo's pickles.[6]  Further, Grillo's had the same independent-lab testing performed

---

[6]   An organic acid profile chromatogram of a pickle is a representation of (a) the types of organic acids present in the pickle and (b) the concentrations of the organic acids present in the pickle.  The concentrations and types of organic acids in a pickle, in turn, depend on the ingredients used to make the pickle.  For instance, garlic, a key ingredient in Defendants' and Grillo's pickles,

on other brands of pickles that it knows do not use its trade-secret recipes and processes; the resulting chromatograms did not illustrate the same types of nearly identical similarities as Wahlburgers.

39.     Upon information and belief, Defendants used Grillo's confidential recipes and manufacturing processes (*i.e.* those for Grillo's "Hot Dill Pickle Chips," "Pickle Spears," "Dill Pickle Chips") to manufacture and ship Wahlburgers pickles.[7]  Additionally, in order to become Wahlburgers I, LLC's and ARKK's manufacturer, Patriot disclosed these same confidential recipes and manufacturing processes to Wahlburgers I, LLC and ARKK.

**D.**     **Patriot Discloses Grillo's Proprietary Trade-Secret Recipes and Processes to Whole Foods and Begins Using Grillo's Recipes and Processes to Manufacture Nearly Identical Pickles for Whole Foods**

40.     In or around May 2023, Patriot also began manufacturing several varieties of pickles for Whole Food's store brand—Whole Foods 365—including but not limited to "Dill Pickle Spicy Spears," "Dill Pickle Spears," "Dill Pickle Chips," and "Dill Pickle Whole."

41.     The look and taste of these Whole Foods 365 pickles are virtually identical to the look and taste of Grillo's "Hot Pickle Spears," "Pickle Spears," "Dill Pickle Chips," and "Whole

---

contains oxalic, tartaric, and succinic acids, among others. Thus, when a pickle producer adds more garlic (*i.e.,* increases the ratio or amount of garlic), a higher concentration of these acids will be present in the pickles.  Similarly, vinegar, another key ingredient in Grillo's and Defendants' pickles, generally contains acetic acid as well as other acids—for example, lactic acid, succinic acid, and malic acid—in varying concentrations based on the type of vinegar.  So, depending on the type, specifications, and amount of vinegar added, the amount of corresponding organic acids in the pickles will vary accordingly.  Taken together, this means that the organic acid profile chromatogram of a pickle is determined by the ratios and amounts of each ingredient used in the pickles, as well the types of and specifications for each ingredient used.

[7]   For avoidance of doubt, Grillo's alleges Defendants have used (1) Grillo's trade-secret recipes and processes in their original form and (2) recipes and processes that Defendants substantially derived from Grillo's trade secrets.   Under black-letter law, either is sufficient to render Defendants liable for trade-secret misappropriation.   Restatement (Third) of Unfair Competition § 40 (2020) ("The unauthorized use need not extend to every aspect or feature of the trade secret; use of any substantial portion of the secret is sufficient to subject the actor to liability. Similarly, the actor need not use the trade secret in its original form. Thus, an actor is liable for using the trade secret with independently created improvements or modifications if the result is substantially derived from the trade secret.").

Dills."  Like Grillo's pickles, Whole Foods 365 pickles are sold in the refrigerated section.  Further, the labels on these pickles reveal that Patriot's Whole Foods 365 pickles bear virtually identical nutritional information and are made from exactly the same ingredients as Grillo's pickles.

**Whole Foods 365 Dill Pickle Chips**



**Grillo's Dill Pickle Chips**



**Whole Foods 365 Dill Pickle Spicy Spears**



**Grillo's Hot Pickle Spears**



### Whole Foods 365 Dill Pickle Whole



### Grillo's Whole Dills



### Whole Foods 365 Dill Pickle Spears



### Grillo's Pickle Spears



42.    Moreover, the nutrition fact panels on Whole Foods 365 pickles are virtually identical to the nutrition fact panels that were used for Grillo's pickles when Patriot was producing them.

| Nutrition Facts for Whole Foods 365 Dill Pickle Spears | Nutrition Facts for Grillo's Pickle Spears During the Time They Were Being Made by Patriot |
|---|---|
|  | |

| Nutrition Facts for Whole Foods 365 Dill Pickle Spicy Spears | Nutrition Facts for Grillo's Hot Pickle Spears During the Time They Were Being Made by Patriot |
|---|---|
|  | |

19

**Nutrition Facts for Whole Foods 365 Dill Pickle Chips**

## Nutrition Facts

18 servings per container

| Serving size | 1 oz (28 g) |
|---|---|

**Amount per serving**

| Calories | 0 |
|---|---|

| | % Daily Value * |
|---|---|
| Total Fat 0g | 0% |
| Saturated Fat 0g | 0% |
| Trans Fat 0g | |
| Cholesterol 0mg | 0% |
| Sodium 180mg | 8% |
| Total Carbohydrate <1g | 0% |
| Dietary Fiber 0g | 0% |
| Sugars 0g | |
| Added Sugars 0g | 0% |
| Protein 0g | |

* The % Daily Value (DV) tells you how much a nutrient in a serving of food contributes to a daily diet. 2,000 calories a day is used for general nutrition advice.

**Nutrition Facts for Grillo's Dill Pickle Chips During the Time They Were Being Made by Patriot**

| Amount Per Serving | % Daily Value * |
|---|---|
| Total Fat 0g | 0% |
| Sat. Fat 0g | 0% |
| Trans. Fat 0g | |
| Cholesterol 0 mg | 0% |
| Sodium 180 mg | 8% |
| Total Carbohydrate 1g | <1% |
| Fiber 0g | 0% |
| Sugars 0g | |
| Protein < 1g | 0% |
| Vitamin A | 0% |
| Vitamin C | 0% |
| Calcium | 0% |
| Iron | 0% |

**Nutrition Facts for Whole Foods 365 Dill Pickle Whole**



**Nutrition Facts for Grillo's Whole Dills During the Time They Were Being Made by Patriot**

| Amount Per Serving | % Daily Value * |
|---|---|
| Total Fat 0g | 0% |
| Sat. Fat 0g | 0% |
| Trans. Fat 0g | |
| Cholesterol 0 mg | 0% |
| Sodium 180 mg | 8% |
| Total Carbohydrate 1g | <1% |
| Fiber 0g | 0% |
| Sugars 0g | |
| Protein < 1g | 0% |
| Vitamin A | 0% |
| Vitamin C | 0% |
| Calcium | 0% |
| Iron | 0% |

43.     Notably, the 180-milligram-per-serving sodium levels listed on Patriot's Whole Foods 365 pickles match exactly those listed on Grillo's pickles while they were being co-packed by Patriot—as well as the inaccurate sodium levels listed on Wahlburgers pickles, as discussed above.  This indicates that Patriot misappropriated Grillo's trade-secret recipes and processes for the following reasons:

a)  Just as with Wahlburgers' pickles, recent independent lab tests (discussed *infra*) show that the sodium levels listed for Whole Foods 365 pickles are inaccurate, as the actual sodium levels are higher than 180 milligrams per serving.

b)  And as explained above, during the time Patriot was co-packing Grillo's pickles, the sodium levels listed for Grillo's pickles were inaccurate, and the actual sodium levels were higher than 180 milligrams per serving, the amount listed on Grillo's labels.

c)  Grillo's has since corrected its labels and sodium levels, and Grillo's informed Patriot of this correction.  However, Patriot continues to use this erroneous nutritional information on the labels for Whole Foods 365 pickles.

d)  Accordingly, the fact that Whole Foods 365 pickles continue to bear inaccurate sodium labeling—which is identical to the inaccurate sodium labeling that (i) was used for Grillo's pickles while they were being co-packed by Patriot; and (ii) Patriot currently uses on the labels for Wahlburgers pickles—strongly suggests that Patriot did not do independent nutrition testing of their Whole Foods 365 pickles.  Instead, because Patriot was using Grillo's trade-secret recipes and processes to manufacture Whole Foods 365 pickles, it simply used Grillo's old nutrition labeling.

44.     Additionally, chromatograms resulting from independent lab testing show that the organic acid profiles of Patriot's Whole Foods 365 "Dill Pickle Spicy Spears," "Dill Pickle Spears," "Dill Pickle Whole," and "Dill Pickle Chips," are nearly identical to the organic acid profiles of Grillo's corresponding pickles.  Further, Grillo's had the same independent-lab testing

performed on other brands of pickles that it knows do not use its trades-secret recipes and processes; the resulting chromatograms did not illustrate the types of near identical similarities as Patriot's Whole Foods 365 pickles.

45.    Although Whole Foods 365 has sold pickles for many years, its pickles were co-packed by Hermann Pickles before 2023.  When Whole Foods 365 used Hermann Pickles as its co-packer, the formula and the packaging for the aforementioned pickles was entirely different.  It was not until it began using Patriot as a co-packer that Whole Foods 365 pickles' formula and packaging became virtually identical to Grillo's pickles.

46.    Upon information and belief, Patriot used Grillo's confidential recipes and manufacturing processes (*i.e.* those for Grillo's "Hot Pickle Spears," "Pickle Spears," "Dill Pickle Chips," and "Whole Dills") to manufacture and ship Whole Foods 365 pickles.[8]  Additionally, in order to become Whole Foods' manufacturer, Patriot disclosed these same confidential recipes and manufacturing processes to Whole Foods.

E.    **Grillo's Discovers that Patriot's Wahlburgers Pickle Labels are False and Misleading**

47.    After Patriot started producing and shipping Wahlburgers pickles, Grillo's discovered that Wahlburgers pickles' labeling was false and misleading in several respects.

1.    ***Wahlburgers Pickle Labels Were False and Misleading Because Wahlburgers Pickles Contained Sodium Benzoate***

48.    Each of the labels for Wahlburgers Fresh Dill Spears, Fresh Dill Chips, and Fresh Dill Chips Hot represent to customers that the pickles have "no preservatives" and are "all natural."

---

[8]    For avoidance of doubt, Grillo's alleges that Patriot has used (1) Grillo's trade-secret recipes and processes in their original form and (2) recipes and processes that Patriot substantially derived from Grillo's trade secrets.   Under black-letter law, either is sufficient to render Patriot liable for trade-secret misappropriation.  Restatement (Third) of Unfair Competition § 40 (2020) ("The unauthorized use need not extend to every aspect or feature of the trade secret; use of any substantial portion of the secret is sufficient to subject the actor to liability. Similarly, the actor need not use the trade secret in its original form. Thus, an actor is liable for using the trade secret with independently created improvements or modifications if the result is substantially derived from the trade secret.").

The labels do not list any artificial preservatives as ingredients.  Further, the labels all prominently feature the word "FRESH" in all capitals as the first word in their names, which are printed multiple times on their labels:





49.     Bolstering the claims on its labels, Wahlburgers pickles are sold exclusively in the refrigerated section of grocery stores, often alongside other brands—such as Grillo's—that are fresh, all natural, and do not contain preservatives.

50.     Defendants' claims that Wahlburgers pickles are "fresh," "all natural," and contain "no preservatives" are false and misleading.  Testing performed by an independent laboratory and admissions from Defendant Patriot have revealed that from 2021 until approximately May 2023, Wahlburgers pickles contained substantial amounts of sodium benzoate, an artificial chemical preservative designed to lengthen the shelf life of pickles.  In fact, certificates of analysis from the independent laboratory testing (attached hereto as **Exhibit D**) indicate[9] that Wahlburgers Hot Dill Chips pickles (a.k.a. "Wahlburgers Fresh Dill Chips Hot") contained sodium benzoate in a concentration of 641 parts per million; Wahlburgers Dill Spears pickles (a.k.a. "Wahlburgers Fresh Dill Spears") contained sodium benzoate in a concentration of between 424 and 436 parts per million; and Wahlburgers Dill Chips pickles (a.k.a. "Wahlburgers Fresh Dill Chips") contained sodium benzoate in a concentration of 600 parts per million.  This rendered Defendants' pickle labels false and misleading in several respects:

a)  The labels' statements that Wahlburgers pickles contained "no preservatives" were plainly false and misleading because the pickles contained an artificial chemical preservative.

b)  The labels' statements that Wahlburgers pickles were "all natural" were also false and misleading.  "All natural" products do not contain artificial chemical preservatives.  Because Wahlburgers pickles contained an artificial chemical preservative, Wahlburgers pickles are not "all natural."

c)  Defendants' omission of the artificial chemical preservative from Wahlburgers pickle labels was also false and misleading.  The Food, Drug, and Cosmetic Act ("FDCA") and regulations promulgated thereunder require chemical preservatives to be included

---

[9]  The tests revealed the amounts of benzoic acid indicated on Exhibit D, and benzoic acid is almost always added to food via sodium benzoate, an artificial chemical preservative.

on product labels and described as preservatives.  21 U.S.C. § 343(k) (stating a food is misbranded if it contains "chemical preservative, unless it bears labeling stating that fact"); 21 C.F.R. § 101.22(j) ("A food to which a chemical preservative(s) is added shall, except when exempt pursuant to § 101.100 bear a label declaration stating both the common or usual name of the ingredient(s) and a separate description of its function, *e.g.*, 'preservative'").  Here, even though Wahlburgers pickles contained an artificial chemical preservative that was required to be listed on their pickles' labels, Defendants conspicuously omitted it.

d)  The labels' statements that Wahlburgers pickles were "fresh" were also false and misleading.  "Fresh" products do not contain artificial chemical preservatives, and thus because Wahlburgers pickles contained an artificial chemical preservative, they were not "fresh."  *See* 21 C.F.R. § 101.95(a) (stating term "fresh" can be used when food "has not been frozen or subjected to any form of thermal processing or any other form of preservation").

51.    The false and misleading nature of the statements on Wahlburgers pickle labels is magnified by the fact that Wahlburgers pickles (1) are formulated to taste nearly identical to Grillo's pickles, which in fact contain zero artificial chemical preservatives; (2) use similar naming conventions as Grillo's pickles; (3) contain the same nutritional fact panels as Grillo's pickles did; and (4) are packaged in plastic jars that are nearly identical to Grillo's.  In short, Defendants have created pickles that copy Grillo's as closely as possible, thus giving the false and misleading impression that Wahlburgers pickles, like Grillo's, were free from artificial preservatives.

52.    Defendants' conduct is even more egregious because (1) Patriot had full knowledge of Grillo's recipes and (2) Defendants used this knowledge to formulate Wahlburgers pickle recipes to be nearly identical to Grillo's, except for the addition of an artificial chemical preservative.  Thus, although Defendants knew that the addition of an artificial chemical preservative was the only meaningful way in which Wahlburgers' pickles recipe differed from Grillo's pickle recipe, Defendants nonetheless falsely labeled their product to deceive customers

into believing that, like Grillo's pickles, Wahlburgers pickles are free from artificial preservatives, fresh, and all natural.

53.     Indeed, although Patriot has frequently represented to this Court that it "unintentionally" added sodium benzoate to Wahlburgers pickles for over two years, this characterization is incorrect. *See, e.g.,* Aug. 23, 2023 Hrg. Tr. 5:25-6:2 (stating Patriot "got to the bottom of what was an unintentional addition of sodium benzoate to certain of the Wahlburgers Pickles"); Feb. 17, 2023 Letter from J. Del Medico to Hon. Andre M. Espinosa (Dkt. 44) at 2 (stating Patriot's addition of sodium benzoate was "an unintended manufacturing issue Patriot Pickle has remedied"). As Patriot admits, it is "Safe Quality Food ('SQF') certified, and also has a Hazard Analysis Critical Control Point ('HACCP') certification." Feb. 7, 2023 McEntee Decl. (Dkt. 35-1) ¶ 5. Acquiring and maintaining these certifications requires meticulous attention to how food is being manufactured and the steps involved in the process. This includes, for instance, developing flow diagrams of each step involved in manufacturing food, verifying these flow diagrams to confirm their accuracy, and periodically reviewing the flow diagrams to ensure they remain accurate.[10] The documentation and processes required to obtain and maintain these certifications would have identified each step involved in Patriot's process for producing Wahlburgers pickles, including the steps pursuant to which Wahlburgers pickles were submerged in sodium-benzoate-laden brine. Thus, Patriot had to have been aware that it was adding sodium benzoate to Wahlburgers pickles; its contentions to the contrary defy credulity.

54.     Additionally, pickles that contain artificial chemical preservatives typically sell for approximately one to two dollars less than fresh, preservative-free pickles. Thus, Defendants' false and misleading claims that Wahlburgers pickles had premium attributes—*i.e.,* they were "fresh," "all natural," and free from artificial chemical preservatives—duped customers into paying premium prices for Wahlburgers pickles.

---

[10]     NATIONAL ADVISORY COMMITTEE ON MICROBIOLOGICAL CRITERIA FOR FOODS, HACCP PRINCIPLES & APPLICATION GUIDELINES, https://www.fda.gov/food/hazard-analysis-critical-control-point-haccp/haccp-principles-application-guidelines#app-g (Aug. 14, 1997).

2.      *Wahlburgers Pickle Labels are False and Misleading Because They Drastically Understate Their Sodium Content*

55.      Wahlburgers pickle labels are also false and mislead customers because they misstate the amount of sodium in the pickles.

56.      Recent testing by an independent lab (*see* **Exhibit E** hereto) reveals that although the labels on Wahlburgers pickles state that they have 180 milligrams of sodium per serving (*see* nutrition fact panels, *supra*), their actual sodium levels are considerably higher and well above the FDA limit of 120% of the amounts declared on their labels.  21. C.F.R. § 101.9(g)(5). Specifically, these independent lab tests show:

a)  One jar of Wahlburgers Fresh Dill Chips contained 262.92 milligrams of sodium per 28 gram serving;

b)  Another jar of Wahlburgers Fresh Dill Chips contained 222.32 milligrams of sodium per 28 gram serving;

c)  One jar of Wahlburgers Fresh Dill Spears contained 277.2 of sodium per 28 gram serving; and

d)  Another jar of Wahlburgers Fresh Dill Spears contained 264.32 of sodium per 28 gram serving.

57.      Recent tests by another independent lab also show:

a)   One jar of Wahlburgers Fresh Dill Spears contained 253.12 milligrams of sodium per 28 gram serving;

b)  Another jar of Wahlburgers Fresh Dill Spears contained 248.08 milligrams of sodium per 28 gram serving;

c)   One jar of Wahlburgers Fresh Dill Chips Hot contained 291.20 milligrams of sodium per 28 gram serving; and

d)  Another jar of Wahlburgers Fresh Dill Chips Hot contained 304.64 milligrams of sodium per 28 gram serving.

58.      These amounts range from approximately 123% to 169% of the labeled sodium

content.  Because the independent test results come from multiple products across multiple lots, this mislabeling evinces a systematic, intentional pattern of behavior.

**F.** **Grillo's Discovers that Patriot's Whole Foods 365 Pickle Labels Are Also False and Misleading**

59.     After Patriot started producing and shipping Whole Foods 365 pickles, Grillo's discovered that Patriot's Whole Foods 365 pickles' labeling was also false and misleading.

60.     Specifically, recent testing by an independent lab (*see* **Exhibit F** hereto) reveals that although the labels on Whole Foods 365 pickles state that they contain 180 milligrams of sodium per serving (*see* nutrition fact panels, *supra*), their actual sodium levels are considerably higher and well above the FDA limit of 120% of the amounts declared on their labels. 21. C.F.R. § 101.9(g)(5). Specifically, these independent lab tests show:

a)  One jar of Whole Foods 365 Dill Pickle Spicy Spears contained 294 milligrams of sodium per 28 gram serving;

b)  Another jar of Whole Foods 365 Dill Pickle Spicy Spears contained 299.6 milligrams of sodium per 28 gram serving;

c)  Another jar of Whole Foods 365 Dill Pickle Spicy Spears contained 350 milligrams of sodium per 28 gram serving;

d)  One jar of Whole Foods 365 Dill Pickle Spears contained 245.28 milligrams of sodium per 28 gram serving;

e)  Another jar of Whole Foods 365 Dill Pickle Spears contained 278.32 milligrams of sodium per 28 gram serving;

f)  One jar of Whole Foods 365 Dill Pickle Whole contained 260.12 milligrams of sodium per 28 gram serving;

g)  Another jar of Whole Foods 365 Dill Pickle Whole contained 310.8 milligrams of sodium per 28 gram serving;

h)  One jar of Whole Foods 365 Dill Pickle Chips contained 288.4 milligrams of sodium per 28 gram serving;

i) Another jar of Whole Foods 365 Dill Pickle Chips contained 263.48 milligrams of sodium per 28 gram serving; and

j) Another jar of Whole Foods 365 Dill Pickle Chips contained 350 milligrams of sodium per 28 gram serving.

61. These amounts range from approximately 123% to 194% of the labeled sodium content.  Because the independent test results come from multiple products across multiple lots, this mislabeling evinces a systematic, intentional pattern of behavior.

62. Notably, the above test results are not the only evidence of Patriot's systematic mislabeling of its Whole Foods 365 pickles.  Test results from a different independent lab revealed that 14 additional jars pulled from multiple lots of Patriot's Whole Foods 365 pickles have similarly high sodium levels.

**G.   Defendants' Conduct is Likely to Harm and Has Harmed Grillo's**

63. Defendants' use and disclosure of Grillo's trade-secret recipes and processes and false and misleading statements regarding Wahlburgers and Whole Foods 365 pickles have harmed Grillo's in several ways.

**1.   *Harm From Defendants' False and Misleading Statements Regarding Wahlburgers Pickles***

64. Defendants' false and misleading statements regarding Wahlburgers pickles have harmed Grillo's by virtue of diverted sales, lost shelf space, lost customers, lost profit margin, and lost market share that, but for Defendants' false and misleading statements, Grillo's would have retained and/or earned.

65. Grillo's and Wahlburgers pickles are in direct competition in the fresh pickle market.  Apart from Whole Foods 365 pickles, there are few, if any, other fresh pickle brands with the same national reach and recognition as Grillo's and Wahlburgers.[11]  Grillo's and Wahlburgers

---

[11]   Notably, Wahlburgers pickles and Whole Foods 365 pickles are not sold in the same stores.  However, Grillo's pickles and Wahlburgers pickles are sold in the same stores, and Grillo's pickles and Whole Foods 365 pickles are also sold in the same stores.

are often offered for sale next to each other in the same refrigerated sections of the same grocery stores.

66.     Grillo's and Wahlburgers are also often offered for sale alongside each other on online shopping platforms.  For instance, when customers search for "fresh pickles" at Walmart via the grocery shopping app Instacart, Wahlburgers pickles and Grillo's pickles show up as the first results:



67.     Additionally, when customers search for "pickles no preservatives," Wahlburgers pickles and Grillo's pickles again show up as the first results:



68.    Notably, customers have also commented on the similarities between Wahlburgers and Grillo's pickles.  For instance:

a)  On a Reddit.com thread titled "Thoughts on Wahlburgers Fresh Dill Spears," the most popular comment was the following:



b)  In response to a video review of Wahlburgers pickles posted by a content creator on Tiktok.com, viewers made, *inter alia*, the following comments:





**user7867453541569**
Looks like Grillo's packaging and look..

2021-12-2    ♡ 1    Reply



**Anthony Bovee**
Those pickles are oddly similar to Grillo's if you ask me. 😉

2021-12-2    ♡ 1    Reply

c)  In fact, the same content creator then created a subsequent video review titled "Are @wahlburgersofficial pickles the same as @grillospickles???" after he "got a lot of comments saying that the Wahlburgers pickles [he] just reviewed are the same pickles as Grillo's."  In response to one comment on his video, the content creator wrote, "[t]here was a lot of people that were convinced they were the same."

69.   Wahlburgers pickles also purport to be in the same fresh pickle category as Grillo's. Grillo's pickle labels state that they are "fresh," and Grillo's website states that its pickles have "zero artificial preservatives."  Grillo's pickle labels also instruct the consumer to "keep [the pickles] refrigerated," and no artificial chemical preservatives are listed on the ingredient list. Similarly, Wahlburgers pickle labels, as discussed *supra*, stated (albeit falsely and misleadingly) that Wahlburgers pickles are "fresh," have "no preservatives," and are "all natural."  Wahlburgers labels also instruct consumers to "keep [the pickles] refrigerated," and no artificial chemical preservatives are listed on the ingredient lists.

70.   Upon information and belief, Defendants' undisclosed addition of an artificial chemical preservative to its pickles gave Wahlburgers pickles a longer shelf life than fresh pickles and allowed Defendants to hold inventory longer on site or at third-party warehouses than they otherwise would be able to hold fresh pickles.  It also allowed Wahlburgers pickles to sit longer on retail shelves without spoiling, which afforded them a longer time to sell before being removed and billed back by retailers.  On information and belief, this artificially enhanced shelf life and ability to hold inventory longer gave Defendants a competitive advantage that is not available to

companies that produce truly fresh pickles, such as Grillo's.

71.     Thus, customers shopping for fresh pickles and grocery store buyers seeking to stock their shelves with fresh pickles have, at times, chosen Wahlburgers pickles over Grillo's pickles based on the fact that Wahlburgers pickles had an artificially longer shelf life, combined with the false understanding that Wahlburgers was a fresh pickle (*i.e.,* did not contain an artificial chemical preservative).  But for Wahlburgers' false and misleading label statements, Wahlburgers pickles would not have been in the same "fresh pickle" category as Grillo's pickles, and these customers and grocery store buyers would not have chosen Wahlburgers pickles over Grillo's pickles.

72.     Additionally, a large cross section of customers, particularly those who are part of the "real food" or "clean labeling" movements, will not consider purchasing products that contain artificial preservatives.  These customers and the grocery store buyers who serve them at times chose to purchase Wahlburgers pickles based on the false belief that they did not contain artificial preservatives.  But for the false and misleading statements on the labels for Wahlburgers pickles, these customers and grocery store buyers would not have chosen Wahlburgers and would have purchased Grillo's instead.

73.     Further, Defendants' act of misleading customers into believing Wahlburgers pickles only have 180 mg of sodium per serving, when they actually contain much more, is likely to cause, and upon information and belief has caused, customers to purchase Wahlburgers pickles instead of Grillo's pickles.  This is true for the following reasons:

  a) According to a recent FDA publication on sodium reduction goals, "[r]esearch shows that excess sodium consumption is a contributory factor in the development of  hypertension, which is a leading cause of heart disease and stroke, the first and fifth leading causes of death in the United States, respectively."[12]  Indeed, "[m]ore than 4 in 10 American adults have high blood

---

[12]     U.S. FOOD AND DRUG ADMINISTRATION, VOLUNTARY SODIUM REDUCTION GOALS: TARGET MEAN AND UPPER BOUND CONCENTRATIONS FOR SODIUM IN COMMERCIALLY PROCESSED,

pressure and that number increases to almost 6 in 10 for non-Hispanic Black adults. Additionally, about one in 10 children (8-12 years) and one in 8 teens (13-17 years) has elevated or high blood pressure."[13] Thus, according to the FDA, "[r]educing sodium intake has the potential to prevent hundreds of thousands of premature deaths and illnesses in the coming years."[14]

b) Certain populations are particularly affected by high blood pressure and thus are advised to lower their sodium intake levels. For instance, according to the U.S. Center for Disease Control's National Center for Health Statistics, 74.5% of Americans 60 and over have high blood pressure.[15] Many doctors, as well as the American Heart Association, recommend those with high blood pressure to cut back on sodium significantly.[16]

c) Accordingly, many people, including those who buy fresh pickles, seek to avoid excess sodium in their diets and prefer foods with less sodium. In fact, according to the American Heart Association, 74% of American consumers want less sodium in processed foods and 64% have tried to reduce their sodium

---

PACKAGED, AND PREPARED FOODS: GUIDANCE FOR INDUSTRY, https://www.fda.gov/media/98264/download (October 2021).

[13] U.S. FOOD AND DRUG ADMINISTRATION, SODIUM REDUCTION, https://www.fda.gov/food/food-additives-petitions/sodium-reduction (March 24, 2023).

[14] *Id.*

[15] Yechiam Ostchega, et al., *Hypertension Prevalence Among Adults Aged 18 and Over: United States, 2017–2018*, NCHS Data Brief 364 (April 2020) (available at https://www.cdc.gov/nchs/data/databriefs/db364-h.pdf.)

[16] American Heart Association, *Shaking the Salt Habit to Lower High Blood Pressure*, (June 1, 2023), https://www.heart.org/en/health-topics/high-blood-pressure/changes-you-can-make-to-manage-high-blood-pressure/shaking-the-salt-habit-to-lower-high-blood-pressure#:~:text=The%20American%20Heart%20Association%20recommends,blood%20pressure%20and%20heart%20health.

consumption.[17]

d) Thus, when consumers shopping for pickles see that Grillo's pickles have between 200 to 210 mg of sodium per serving while Wahlburgers labels falsely state that Wahlburgers pickles have only 180 mg of sodium per serving, many consumers purchase Wahlburgers based on the incorrect belief that they have lower sodium than Grillo's.

74.     Grillo's also has access to loyalty card data, which is provided to Grillo's by Information Resources, Inc. ("IRI"), a leading provider of data analytics and market research.[18] This loyalty card data shows that during the time Defendants have been selling Wahlburgers pickles, including during the time Grillo's tests show that Defendants have been falsely advertising their pickles, many customers that previously had been purchasing Grillo's pickles switched to purchasing Wahlburgers pickles.   The same data indicates that many new customers (*i.e.,* customers who previously had not purchased fresh pickles) chose Wahlburgers when they otherwise would have chosen Grillo's.

75.     Grillo's has obtained an expert analysis of the data currently available to it.  This expert analysis shows that during the time Defendants' falsely advertised their pickles as being preservative-free, "all natural," and "fresh," Grillo's incurred millions of dollars in damages by virtue of customers switching from Grillo's to Wahlburgers and new customers choosing Wahlburgers over Grillo's.

---

[17]     American Heart Association, *Hold the Salt Infographic* (June 5, 2018) https://www.heart.org/en/healthy-living/healthy-eating/eat-smart/sodium/hold-the-salt-infographic#:~:text=The%20survey%20found%20that%2060,Your%20voice%20matters!.

[18]   Almost every consumer's purchases and habits are tracked and recorded in detail via "loyalty card" or "club card" data.  This data is then compiled and analyzed by companies, such as IRI, that make the results available to consumer packaged goods companies for a fee.  This type of syndicated data is relied on by *virtually all consumer packaged goods companies on a regular basis*.  Accordingly, information on how many customers switched from Grillo's to Wahlburgers during any period of time, and many other metrics, can be easily obtained and, even without an expert (which Grillo's has), would be admissible to show damages under Federal Rule of Evidence 803(17).  F.R.E. 803(17) ("compilations that are generally relied on by the public or by persons in particular occupations" are excepted from the hearsay rule).

76.     Although Defendants purport to have now corrected their sodium benzoate issues, Defendants' false and misleading sodium labeling persists.  Thus, absent an injunction enjoining Defendants from continuing to make false and misleading statements regarding the sodium levels in Wahlburgers pickles (or, in the alternative, an injunction prohibiting Defendants from including more sodium in their pickles than listed on the labels), Grillo's will continue to suffer harm.

### 2.   *Harm From Patriot's False and Misleading Statements Regarding Whole Foods 365 Pickles*

77.     Patriot's false and misleading statements regarding Whole Foods 365 pickles have harmed Grillo's by virtue of diverted sales, lost shelf space, lost customers, lost profit margin, and lost market share that but for Defendants' false and misleading statements, Grillo's would have retained and/or earned.

78.     Grillo's pickles and Whole Food 365 pickles are in direct competition in the fresh pickle market.  Apart from Wahlburgers pickles, there are few, if any, other fresh pickle brands with the same national reach and recognition as Grillo's or Patriot's Whole Foods 365 pickles. Grillo's and Patriot's Whole Foods 365 pickles are offered for sale next to each other in the same refrigerated sections of the same grocery stores:



79.     Grillo's and Patriot's Whole Foods 365 pickles are also often offered for sale alongside each other on the same online shopping platforms.  For instance, when customers search for "pickles" at Whole Foods on the website Amazon.com, Wahlburgers pickles and Grillo's pickles show up as the first results:



80.    Similarly, when customers search for "dill pickles" at Whole Foods on the website Amazon.com, Whole Foods 365 pickles and Grillo's pickles show up together:



81.     Patriot's actions to mislead customers into believing that Whole Foods 365 pickles have only 180 mg of sodium per serving, when they actually contain much more, is likely to cause, and upon information and belief has caused, customers to purchase Whole Foods 365 pickles instead of Grillo's pickles.  This is true for the same reasons discussed *supra* with regard to Wahlburgers pickles' false and misleading sodium content claims.

82.     Absent an injunction enjoining Patriot from continuing to make false and misleading statements regarding the sodium levels in Whole Foods 365 pickles (or, in the alternative, an injunction prohibiting Patriot from including more sodium in their pickles than listed on the labels), Grillo's will continue to suffer harm.

**3.      *Harm From Defendants' Use and Disclosure of Grillo's Trade-Secret Recipes and Processes***

83.     As detailed above, Grillo's recipes and processes for its "Hot Pickle Spears," "Hot Dill Pickle Chips," "Pickle Spears," "Dill Pickle Chips," and "Whole Dills"—which were developed through a costly, painstaking, years-long process of trial and error—allow it to produce long lasting, all-natural pickles that are free of artificial preservatives.

84.     Grillo's makes its money by using its unique trade-secret pickle recipes and processes, which are unknown to others, to manufacture and sell pickles that its customers enjoy.  Thus, Grillo's trade-secret recipes and processes are the foundation of its entire business and differentiate Grillo's from its competitors.  Other than Patriot, Grillo's knows of no other pickle manufacturer that has copied Grillo's trade-secret recipes and processes.  Moreover, the types of fresh pickles Grillo's manufactures using its trade secret recipes and processes are by no means ubiquitous: apart from Patriot, no other company has been able to manufacture them at scale.

85.     Grillo's profits—indeed, its economic viability—depend on its recipes and processes remaining unknown to others.  That is because disclosure of its recipes and processes would allow actual and/or potential competitors to manufacture the same or similar all-natural, preservative-free pickles without having to spend the significant amount of time and incur the substantial costs necessary to develop and perfect their own recipes and processes.  In that event,

Grillo's would lose its competitive advantage to other companies that seek to undercut it.

86.     That possibility has now come to pass.  Patriot has improperly used Grillo's trade secret recipes and processes to produce pickles for both Wahlburgers and Whole Foods 365 that are virtually identical to Grillo's pickles—avoiding the costs and effort required to develop their own recipes and processes—and are selling those pickles, often at a considerable discount, to retailers and customers.  That conduct will cause retailers and customers to question the higher prices associated with Grillo's pickles, thus harming Grillo's relationships with retailers and customers. Furthermore, many Grillo's customers will switch to Defendants' pickles and be forever lost to Defendants, which are directly competing with Grillo's.

87.     If Defendants are permitted to continue using Grillo's trade-secret recipes and processes to produce and sell Wahlburgers and Whole Foods 365 pickles at considerably discounted prices, Grillo's will be forced to lower the prices it charges for its pickles at all retailers. Not only will this completely erode Grillo's profit margins, but Grillo's will lose considerable distribution in many locations where, because of Wahlburgers' and Whole Foods 365's lower prices, Grillo's will not be able to compete at all and will have to remove its product from shelves.

88.     One damages analysis performed by Grillo's indicates that Defendants' use of Grillo's trade-secret recipes and processes, if left unchecked, could very well put Grillo's out of business within three years.  And even when more conservative assumptions are used to calculate Grillo's damages from Defendants' misappropriation of its trade-secret recipes and processes, Grillo's damages will exceed $100 million in five to six years.

89.     Additionally, Grillo's understands that Patriot is in the process of being sold.  In connection with that transaction, Patriot will disclose to its eventual buyer (1) Grillo's trade-secret recipes and processes; (2) the recipes and processes for making Wahlburgers pickles and Whole Foods 365 pickles, which are derived from and reveal Grillo's trade-secret recipes and processes; and (3) documents and notes containing or based on Grillo's trade-secret recipes and processes.

90.     Accordingly, Grillo's is being, and will be, irreparably harmed by Defendants' use and disclosure of Grillo's trade-secret recipes and processes.

## COUNT I
### Misappropriation of Trade Secrets Under the New Jersey Trade Secrets Act
### (Against All Defendants)

91.      Grillo's repeats and realleges each and every allegation contained in paragraphs 1 through 90 as if fully set forth herein.

92.      This is an action for damages and injunctive relief pursuant to New Jersey Trade Secrets Act, N.J.S.A. 56:15-1, et seq.

93.      By virtue of its co-packing relationship, Patriot was entrusted with Grillo's trade-secret recipes and manufacturing processes, which form the basis of Grillo's brand and are what differentiate Grillo's pickles from other brands on the market.  Those trade secrets derive independent economic value, actual and potential, from not being generally known or readily ascertainable by proper means by Grillo's competitors or other persons or entities who could obtain economic value from their disclosure or use.

94.      Patriot is, and at all relevant times was, bound to retain Grillo's trade secrets in strict confidence.  In the Mutual Nondisclosure Agreement, Patriot agreed it would "maintain in trust and confidence and not disclose to any third party" Grillo's "formulas" and "processes." (Ex. A ¶¶ 1, 3.)  In the May 2015 agreement, Patriot promised to not "disclose any confidential information to anyone other than those who have a need to know."  (Ex. B ¶ 2.)

95.      Further, Patriot is, and at all relevant times was, bound to limit its use of Grillo's trade secrets.  Pursuant to the terms of the Mutual Nondisclosure Agreement, Patriot was prohibited from "us[ing] for any unauthorized purpose" any of Grillo's "Proprietary Information," which included Grillo's "formulas" and "processes."  (Ex. A ¶¶ 1, 3.)  And in both the May 2015 and August 2016 agreements, Patriot agreed that the "name, recipes and formulations for Grillo's Pickles remain the sole and exclusive property of Grillo's Pickles, LLC."  (Ex. B ¶ 1; Ex. C.)

96.      Grillo's has made reasonable efforts under the circumstances to maintain the secrecy of its recipes and manufacturing processes, including, but not limited to, (1) having all Grillo's employees sign nondisclosure agreements before they join the company; (2) maintaining a separate operations section on the Grillo's server that restricts who can review certain material

(like the recipes to Grillo's various pickles); (3) ensuring the recipes' bill of materials are typically handled by only one high-level employee; and (4) requiring all co-packers and vendors to sign nondisclosure agreements before Grillo's enters into serious discussions regarding the recipe and manufacturing process for its pickles.

97.     Patriot has willfully and maliciously, and without authorization or consent from Grillo's, shared Grillo's trade secrets with Whole Foods, ARKK, and Wahlburgers I, LLC.

98.     Patriot is willfully and maliciously, and without authorization or consent from Grillo's, using Grillo's proprietary recipes and processes to manufacture and ship pickles on behalf of Whole Foods, ARKK, and Wahlburgers I, LLC.

99.     Since at least January 3, 2023, ARKK and Wahlburgers I, LLC knew or should have known that Grillo's proprietary recipes and processes were being used to manufacture and ship Wahlburgers pickles.  Also, ARKK and Wahlburgers I, LLC knew or should have known that (1) Patriot acquired Grillo's trade-secret recipes and processes under a duty to maintain their secrecy and limit the use of those recipes and processes; (2) ARKK and Wahlburgers I, LLC's knowledge of Grillo's trade secrets was derived from or through Patriot; (3) Patriot breached its duty to maintain the secrecy and limit its use of Grillo's trade secrets by sharing them with ARKK and Wahlburgers I, LLC; and (4) ARKK and Wahlburgers I, LLC's access to Grillo's trade secrets exceeded the scope of Patriot's authorization to use and disclose them.  This is because:

    a)  In Grillo's January 3, 2023 Complaint (Dkt. 1), which was served on both ARKK and Wahlburgers I, LLC, Grillo's alleged that Patriot was previously one of Grillo's co-packers and that "[t]o enable Patriot to properly manufacture and package Grillo's pickles, Grillo's trusted Patriot with Grillo's proprietary pickle recipes and specific manufacturing and packaging processes. . . ." (Complaint (Dkt. 1) ¶ 23 ("Accordingly, in 2014, Patriot obtained access to Grillo's proprietary recipes and processes. . . .").)

    b)  The Complaint further stated that Wahlburgers pickles (1) "taste extremely similar" to Grillo's (*id*. ¶ 25); (2) "use the same containers" (*id*.); and (3) are

"formulated to taste nearly identical to Grillo's pickles" (*id.* ¶¶ 2, 34, 49). Additionally, the Complaint sets forth several instances of consumers commenting, *inter alia*, that Wahlburgers "are the same pickles as Grillo's" or "are just rebranded Grillos." (*Id.* ¶ 41.)

c)  The Complaint stated: "Patriot had full knowledge of Grillo's recipes and [] Defendants used this knowledge to formulate Wahlburgers pickle recipes to be nearly identical to Grillo's save for the addition of an artificial chemical preservative." (*Id.* ¶¶ 35, 50.).

d)  The Complaint stated: "Defendants knew Wahlburgers' pickle recipe differed from Grillo's almost solely by virtue of the addition of an artificial chemical preservative." (*Id.*)

100.    If there were any doubt regarding Patriot's acquisition and use of Grillo's trade-secret recipes and processes, or Patriot's duty to maintain the secrecy of and limit its use of Grillo's trade secrets, this was further dispelled on June 27, 2023. On that date, Grillo's filed a trade-secret and breach-of-contract complaint against Patriot in the Southern District of Florida (the "Florida Action"). Grillo's complaint in the Florida Action attached copies of the Mutual Nondisclosure Agreement (Ex. A), the May 2015 agreement (Ex. B), and the August 2016 addendum (Ex. C), which show Patriot was under a duty to maintain the secrecy and limit its use of Grillo's trade-secret recipes and processes. Grillo's complaint also contained substantial allegations stating the same. Both ARKK and Wahlburgers I, LLC were aware of Grillo's Florida Action and the allegations in it.

101.    Even though ARKK and Wahlburgers I, LLC knew, *inter alia*, that (a) Patriot had acquired Grillo's trade-secret recipes and processes under a duty to maintain their secrecy and limit their use; (b) Patriot breached this duty by sharing knowledge of Grillo's trade-secret recipes and processes with ARKK and Wahlburgers I, LLC; and (c) Patriot was using these trade secrets to manufacture and ship Wahlburgers pickles, ARKK continues to use Grillo's trade secrets. ARKK has done so by, *inter alia*:

a) Marketing Wahlburgers pickles;

b) Distributing Wahlburgers pickles;

c) Selling Wahlburgers pickles;

d) Profiting from the sale of Wahlburgers pickles; and

e) Manufacturing, packaging, labeling, and shipping Wahlburgers pickles through ARKK's agent Patriot.

102.    Similarly, Wahlburgers I, LLC continues to use Grillo's trade secrets by:

a) Profiting from the use of Wahlburgers I, LLC's trademarks and images on Wahlburgers pickles; and

b) Licensing Wahlburgers I, LLC's trademarks and images to ARKK so that ARKK can manufacture, package, and ship pickles under the Wahlburgers name.

103.    As a direct and proximate result of the above-described actual and threatened misappropriations of Grillo's trade secrets, Grillo's has been and will continue to be damaged and is entitled to compensatory and exemplary damages, attorneys' fees, interest, costs, and any other relief deemed proper by the Court.

104.    Unless restrained, Defendants will continue to retain, misuse and/or disclose, or threaten to retain, misuse and/or disclose, Grillo's trade secrets to Grillo's detriment and substantial threat of impending injury.  Accordingly, pursuant to N.J.S.A. 56:15-3, Grillo's is entitled to injunctive relief enjoining Defendants from their continued actual and threatened misappropriation of Grillo's proprietary recipes and processes.

### COUNT II
### Misappropriation of Trade Secrets Under 18 U.S.C. § 1836, et seq.,
### (the "Defend Trade Secrets Act")
### (Against All Defendants)

105.    Grillo's repeats and realleges each and every allegation contained in paragraphs 1 through 90 as if fully set forth herein.

106.    This is an action for damages and injunctive relief pursuant to the Defend Trade Secrets Act, 18 U.S.C. § 1836, et seq.

107.    By virtue of its co-packing relationship, Patriot was entrusted with Grillo's trade-secret recipes and manufacturing processes, which form the basis of Grillo's brand and are what differentiate Grillo's pickles from other brands on the market.  Those trade secrets relate to pickles that Grillo's sells in interstate commerce.  Further, Grillo's trade-secret recipes and processes derive independent economic value, actual and potential, from not being generally known or readily ascertainable by proper means by Grillo's competitors or other persons or entities who could obtain economic value from their disclosure or use.

108.    Patriot is, and at all relevant times was, bound to retain Grillo's trade secrets in strict confidence.  In the May 2012 Mutual Nondisclosure Agreement, Patriot agreed it would "maintain in trust and confidence and not disclose to any third party" Grillo's "formulas" and "processes."  (Ex. A ¶¶ 1, 3.)  In the May 2015 agreement, Patriot promised not to "disclose any confidential information to anyone other than those who have a need to know."  (Ex. B ¶ 2.)

109.    Further, Patriot is, and at all relevant times was, bound to limit its use of Grillo's trade secrets.  Pursuant to the terms of the Mutual Nondisclosure Agreement, Patriot was prohibited from "us[ing] for any unauthorized purpose" any of Grillo's "Proprietary Information," which included Grillo's "formulas" and "processes."  (Ex. A ¶¶ 1, 3.)  And in both the May 2015 and August 2016 agreements, Patriot agreed that the "name, recipes and formulations for Grillo's Pickles remain the sole and exclusive property of Grillo's Pickles, LLC."  (Ex. B ¶ 1; Ex. C.)

110.    Grillo's has made reasonable efforts under the circumstances to maintain the secrecy of its recipes and manufacturing processes, including but not limited to (1) having all Grillo's employees sign nondisclosure agreements before they join the company; (2) maintaining a separate operations section of the Grillo's server that restricts who can review certain material (like the recipes to Grillo's various pickles); (3) ensuring the recipes' bill of materials are typically only handled by one high-level employee; and (4) requiring all co-packers and vendors to sign

nondisclosure agreements before Grillo's enters into serious discussions regarding the recipe and manufacturing processes for its pickles.

111.    Patriot has willfully and maliciously, and without authorization or consent from Grillo's, shared Grillo's trade secrets with Whole Foods, ARKK, and Wahlburgers I, LLC.

112.    Patriot is willfully and maliciously, and without authorization or consent from Grillo's, using Grillo's proprietary recipes and processes to manufacture and ship pickles in interstate commerce on behalf of Whole Foods, ARKK, and Wahlburgers I, LLC.

113.    Since at least January 3, 2023, ARKK and Wahlburgers I, LLC knew or should have known that Grillo's proprietary recipes and processes were being used to manufacture and ship Wahlburgers pickles.  Also, ARKK and Wahlburgers I, LLC knew or should have known that (1) Patriot acquired Grillo's trade-secret recipes and processes under a duty to maintain their secrecy and limit the use of the recipes and processes and (2) ARKK and Wahlburgers I, LLC's knowledge of Grillo's trade secrets was derived from or through Patriot, who was under a duty to maintain the secrecy and limit its use of Grillo's trade-secret recipes and processes. This is because:

   a)  In Grillo's January 3, 2023 Complaint (Dkt. 1), which was served on both ARKK and Wahlburgers I, LLC, Grillo's alleged that Patriot was previously one of Grillo's co-packers and that "[t]o enable Patriot to properly manufacture and package Grillo's pickles, Grillo's trusted Patriot with Grillo's proprietary pickle recipes and specific manufacturing and packaging processes. . . ." (Complaint (Dkt. 1) ¶ 23 ("Accordingly, in 2014, Patriot obtained access to Grillo's proprietary recipes and processes. . . .").)

   b)  The Complaint further stated that Wahlburgers pickles (1) "taste extremely similar" to Grillo's (*id*. ¶ 25); (2) "use the same containers" (*id*.); and (3) are "formulated to taste nearly identical to Grillo's pickles" (*id*. ¶¶ 2, 34, 49). Additionally, the Complaint sets forth several instances of consumers commenting, *inter alia*, that Wahlburgers "are the same pickles as Grillo's" or "are just rebranded Grillos." (*Id*. ¶ 41.)

47

c) The Complaint stated: "Patriot had full knowledge of Grillo's recipes and []
Defendants used this knowledge to formulate Wahlburgers pickle recipes to be
nearly identical to Grillo's save for the addition of an artificial chemical
preservative." (*Id*. ¶¶ 35, 50.).

d) The Complaint stated: "Defendants knew Wahlburgers' pickle recipe differed
from Grillo's almost solely by virtue of the addition of an artificial chemical
preservative." (*Id*.)

114. If there were any doubt regarding Patriot's acquisition and use of Grillo's trade-
secret recipes and processes, or Patriot's duty to maintain the secrecy and limit its use of Grillo's
trade secrets, this was further dispelled on June 27, 2023. On that date, Grillo's filed a trade-secret
and breach-of-contract complaint against Patriot in the Southern District of Florida. Grillo's
complaint in the Florida Action attached copies of the Mutual Nondisclosure Agreement (Ex. A),
the May 2015 agreement (Ex. B), and the August 2016 addendum (Ex. C), which show Patriot was
under a duty to maintain the secrecy and limit its use of Grillo's trade-secret recipes and processes.
Grillo's complaint also contained substantial allegations stating the same. Both ARKK and
Wahlburgers I, LLC were aware of Grillo's Florida Action and the allegations therein.

115. Even though ARKK and Wahlburgers I, LLC knew, *inter alia*, that (a) Patriot had
acquired Grillo's trade-secret recipes and processes under a duty to maintain their secrecy and
limit their use, and (b) Patriot was using these trade secrets to manufacture and ship Wahlburgers
pickles, ARKK continues to use these trade secrets. ARKK has done so by, *inter alia:*

a) Marketing Wahlburgers pickles;

b) Distributing Wahlburgers pickles;

c) Selling Wahlburgers pickles;

d) Profiting from the sale of Wahlburgers pickles; and

e) Manufacturing, packaging, labeling, and shipping Wahlburgers pickles through
ARKK's agent Patriot.

116. Similarly, Wahlburgers I, LLC continues to use Grillo's trade secrets by:

      a) Profiting from the use of Wahlburgers I, LLC's trademarks and images on Wahlburgers pickles; and

      b) Licensing Wahlburgers I, LLC's trademarks and images to ARKK so that ARKK can manufacture, package, and ship pickles under the Wahlburgers name.

117.    As a direct and proximate result of the above-described actual and threatened misappropriations of Grillo's trade secrets, Grillo's has been and will continue to be damaged, and is entitled to compensatory and exemplary damages, attorneys' fees as provided by 18 U.S.C. § 1836, interest, costs, and any other relief deemed proper by the Court.

118.    Unless restrained, Defendants will continue to retain, misuse and/or disclose, or threaten to retain, misuse and/or disclose, Grillo's trade secrets to Grillo's detriment and/or substantial threat of impending injury.  Accordingly, pursuant to 18 U.S.C. § 1836, Grillo's is entitled to injunctive relief enjoining Defendants from their continued actual and threatened misappropriation of Grillo's proprietary recipes and processes.

**COUNT III**
**Breach of Mutual Nondisclosure Agreement**
**(Against Defendant Patriot)**

119.    Grillo's repeats and realleges each and every allegation contained in paragraphs 1 through 90 as if fully set forth herein.

120.    Grillo's and Patriot are parties to the May 2012 Mutual Nondisclosure Agreement, under which Patriot promised to "maintain in trust and confidence and not disclose to any third party or use for any unauthorized purpose any" of Grillo's information, including its "formulas" and "processes." (Ex. A. ¶¶ 1, 3.) That same contract required Patriot to (a) return Grillo's formulas and processes "after [Patriot's] need for it has expired, or upon request of [Grillo's], and in any event, upon completion or termination of [the Mutual Nondisclosure Agreement]" and (b) "destroy all notes and copies thereof made by its officers and employees containing or based on any [of

Grillo's formulas and processes] and to cause all agents and representatives to whom or to which [the formulas and processes] ha[ve] been disclosed to destroy all notes and copies in their possession that contain [the formulas and processes]."  (*Id*. ¶ 6.)

121.    Patriot breached its contractual obligations of confidentiality and to not use Grillo's recipes and processes for an unauthorized purpose.  Specifically, Patriot has disclosed Grillo's proprietary formulas and processes to Whole Foods, ARKK, and Wahlburgers I, LLC and is using the same, without Grillo's authorization, to manufacture Whole Foods 365 pickles and Wahlburgers pickles to compete directly with Grillo's.

122.    As detailed above, Patriot also breached its contractual obligations to return Grillo's formulas and processes "after [Patriot's] need for it has expired, or upon request of [Grillo's], and in any event, upon completion or termination of [the Mutual Nondisclosure Agreement]." (Ex. A ¶ 6.)

123.    Further, upon information and belief, Patriot breached its contractual obligations to "destroy all notes and copies thereof made by its officers and employees containing or based on any [of the formulas and processes] and to cause all agents and representatives to whom or to which [the formulas and processes] ha[ve] been disclosed to destroy all notes and copies in their possession that contain [the formulas and processes]."  (*Id*. ¶ 6.)

124.    Grillo's has suffered and will continue to suffer monetary damages as a result of Patriot's contractual breaches.

125.    Patriot has also agreed that Grillo's would be irreparably harmed by a breach of the Mutual Nondisclosure Agreement and that in the case of such a breach, Grillo's "shall be entitled to specific performance of [Patriot's] obligations . . . as well as further injunctive relief as may be granted by a court of competent jurisdiction."  (Ex. A ¶ 10.)

126.    Grillo's is thus entitled to permanent injunctive relief prohibiting Patriot from further breaches of the Mutual Nondisclosure Agreement and further demands judgment against Patriot for monetary damages in an amount to be proven at trial, interest, costs of this action, attorney fees, and for all further relief this Court deems just and proper.

## COUNT IV
### Breach of the May 2015 Agreement and August 2016 Addendum
### (Against Defendant Patriot)

127.    Grillo's repeats and realleges each and every allegation contained in paragraphs 1 through 90 as if fully set forth herein.

128.    Grillo's and Patriot are parties to the May 2015 agreement described above.  In this agreement, the parties agreed that the "name, recipes and formulations for Grillo's Pickles remain the sole and exclusive property of Grillo's Pickles, LLC."  (Ex. B ¶ 1.)  That same agreement stated that the parties agreed not to "disclose any confidential information to anyone other than those who have a need to know."  (*Id.* ¶ 2.)

129.    In an August 2016 addendum to the May 2015 agreement, the parties reiterated that the "name, recipes and formulations for Grillo's Pickles remain the sole and exclusive property of Grillo's Pickles, LLC."  (Ex. C.)

130.    As detailed above, Patriot breached (i) its promise that the "name, recipes and formulations for Grillo's Pickles [would] remain the sole and exclusive property of Grillo's Pickles, LLC," (Ex. B. ¶ 1; Ex. C); and (ii) its contractual obligations of confidentiality and to not "disclose any confidential information to anyone other than those who have a need to know." (Ex. B. ¶ 1.)  Specifically, Patriot disclosed Grillo's proprietary recipes and processes to Whole Foods, ARKK, and Wahlburgers I, LLC—which did not "have a need to know" Grillo's trade-secret recipes and processes—and is using the same, without Grillo's authorization, to manufacture Whole Foods 365 pickles and Wahlburgers pickles to compete directly with Grillo's.

131.    Grillo's has suffered and will continue to suffer monetary damages as a result of Patriot's contractual breaches.

### COUNT V
**False Advertising Under the Lanham Act - 15 U.S.C. § 1125(a)**
**(Against All Defendants based on Wahlburgers Pickles)**

132.    Grillo's repeats and realleges each and every allegation contained in paragraphs 1 through 90 as if fully set forth herein.

133.    As detailed above, Defendants have made numerous false and misleading statements regarding the nature, characteristics, and qualities of Wahlburgers pickles (specifically, Wahlburgers Fresh Dill Spears, Fresh Dill Chips, and Fresh Dill Chips Hot), including the following:

a.   Defendants falsely stated on Wahlburgers pickle labels that Wahlburgers pickles contain "no preservatives."

b.   Defendants falsely stated on Wahlburgers pickle labels that Wahlburgers pickles are "all natural."

c.   Defendants omitted from Wahlburgers pickle labels (1) the name of the artificial chemical preservative used in Wahlburgers pickles and (2) the fact that it functioned as an artificial chemical preservative.  This was false and misleading because the FDCA and regulations promulgated thereunder require chemical preservatives to be included on product labels and described as preservatives.  21 U.S.C. § 343(k) (stating a food is misbranded if it contains "chemical preservative, unless it bears labeling stating that fact"); 21 C.F.R. § 101.22(j) ("A food to which a chemical preservative(s) is added shall, except when exempt pursuant to § 101.100 bear a label declaration stating both the common or usual name of the ingredient(s) and a separate description of its function, *e.g.*, 'preservative'").

    d.  Defendants falsely stated on Wahlburgers pickle labels that Wahlburgers pickles were "fresh."  *See* 21 C.F.R. § 101.95(a) (stating term "fresh" can be used when food "has not been frozen or subjected to any form of thermal processing or any other form of preservation").

    e.  Defendants falsely state that Wahlburgers pickles contain only 180 milligrams of sodium per serving.  This is false and misleading because, as discussed in section E, *supra*, the pickles contain considerably higher levels—well above the FDA limit of 120% of the amounts declared on their labels.  21 C.F.R. § 101.9(g)(5).

134.    Wahlburgers pickles (1) are formulated to taste nearly identical to Grillo's pickles, which in fact contain zero artificial chemical preservatives; (2) use similar naming conventions as Grillo's pickles; (3) display the same nutritional fact panels as Grillo's pickles; and (4) are packaged in plastic jars that are nearly identical to Grillo's.  In short, Defendants created pickles that copy Grillo's as closely as possible, thus giving the false and misleading impression that Wahlburgers pickles, like Grillo's, were free from artificial preservatives.

135.    Both Wahlburgers pickles and Grillo's pickles traveled in interstate commerce.

136.    Defendants' false and misleading statements are literally and explicitly false, and thus this Court "may grant relief without reference to the advertisement's impact on the buying public."  *Castrol Inc. v. Pennzoil Co.*, 987 F.2d 939, 943 (3d Cir. 1993).

137.    Additionally, Defendants' false and misleading statements were designed to and actually did deceive a substantial portion of their intended audience.  As discussed *supra*, customers were deceived into believing that Wahlburgers pickles did not contain an artificial chemical preservative and contained 180 milligrams of sodium per serving.

138.    As detailed in section G(1), *supra*, this deception is material because it is likely to and did influence customers' purchasing decisions.

139.    As detailed in section G(1), *supra*, Grillo's has suffered and will continue to suffer monetary damages as a result of the above-described deceptive conduct of Defendants.

140.    Further, Defendants' deceptive conduct has caused and will continue to cause immediate and irreparable injury to Grillo's for which there is no adequate remedy at law, including lost shelf space, lost customers, lost market share, and loss of customer goodwill.

141.    Accordingly, Grillo's is entitled to judgment in its favor awarding it permanent injunctive relief, compensatory damages, treble damages, disgorgement of profits, attorneys' fees, costs, and such other relief as the Court deems just and appropriate.

**COUNT VI**
**False Advertising Under the Lanham Act - 15 U.S.C. § 1125(a)**
**(Against Defendant Patriot based on Whole Foods 365 Pickles)**

142.    Grillo's repeats and realleges each and every allegation contained in paragraphs 1 through 90 as if fully set forth herein.

143.    Patriot has made false and misleading statements regarding the nature, characteristics, and qualities of Patriot's Whole Foods 365 pickles, specifically, the "Dill Pickle Spicy Spears," "Dill Pickle Spears," "Dill Pickle Chips," and "Dill Pickle Whole."  As detailed above, Patriot states that these pickles contain only 180 milligrams of sodium per serving.  This is false and misleading because, as discussed in section F, *supra*, the pickles contain considerably higher levels—well above the FDA limit of 120% of the amounts declared on their labels. 21 C.F.R. § 101.9(g)(5).

144.    Patriot's false and misleading statements are literally and explicitly false, and thus this Court "may grant relief without reference to the advertisement's impact on the buying public." *Castrol Inc. v. Pennzoil Co.*, 987 F.2d 939, 943 (3d Cir. 1993).

145.    Additionally, Patriot's false and misleading statements were designed to and actually did deceive a substantial portion of their intended audience.  As discussed *supra*, customers were deceived into believing that Patriot's Whole Foods 365 pickles contained 180 milligrams of sodium per serving.

146.    As discussed in sections G(2) and G(1), *supra*, this deception is material because it is likely to and did influence customers' purchasing decisions.

147.     As discussed in sections G(2) and G(1), *supra*, Patriot's deceptive conduct has caused and will continue to cause immediate and irreparable injury to Grillo's for which there is no adequate remedy at law, including lost shelf space, lost customers, lost market share, and loss of customer goodwill.

148.     Accordingly, Grillo's is entitled to judgment in its favor awarding it permanent injunctive relief, compensatory damages, treble damages, disgorgement of profits, attorneys' fees, costs, and such other relief as the Court deems just and appropriate.

<u>COUNT VII</u>
**Common Law Unfair Competition**
**(Against all Defendants)**

149.     Grillo's repeats and realleges each and every allegation contained in paragraphs 1 through 90 as if fully set forth herein.

150.     Through the conduct described above, including false advertising and related deceptive practices, Defendants have committed common law unfair competition.  *See Canfield Sci., Inc. v. Melanoscan, LLC*, Civil Action No. 16-4636, 2017 U.S. Dist. LEXIS 80896, at *19-20 (D.N.J. May 25, 2017) ("The test of unfair competition under New Jersey law is identical to the test for unfair competition under § 1125 of the Lanham Act.").

151.     Grillo's has suffered and will continue to suffer monetary damages as a result of the above-described unfair competition by Defendants.

152.     Defendants' unfair competition has caused and will continue to cause immediate and irreparable injury to Grillo's for which there is no adequate remedy at law, including lost shelf space, lost customers, lost market share, and loss of customer goodwill.

153.     Accordingly, Grillo's is entitled to judgment in its favor awarding it preliminary and permanent injunctive relief, compensatory damages, treble damages, disgorgement of profits, attorneys' fees, costs and such other relief as the Court deems just and appropriate.

## COUNT VIII
### New Jersey Unfair Competition Law, N.J.S.A. 56:4-1, *et seq.*
### (Against All Defendants)

154.     Grillo's repeats and realleges each and every allegation contained in paragraphs 1 through 90 as if fully set forth herein.

155.     As detailed above, Defendants have appropriated for their own use Grillo's name, brand, trademark, reputation and/or goodwill by stealing Grillo's proprietary, trade-secret recipes and processes, using those recipes and processes to manufacture pickles that are virtually identical to Grillo's pickles, selling those virtually-identical pickles as their own under the Wahlburgers and Whole Foods 365 brands, and falsely advertising their pickles in a manner that wrongly suggests they are of the same quality, reputation and integrity as Grillo's pickles.

156.     As detailed above, Defendants misappropriated for their own use Grillo's name, reputation and good will by using misleading descriptions, false and misleading representations of fact, and false and misleading packaging and labels that are likely to cause and have caused confusion, mistake and deception as to the affiliation, connection, association or similarity between Grillo's pickles and Wahlburgers pickles and/or Whole Food 365 pickles; and in commercial advertising and promotion, have misrepresented the nature, characteristics and qualities of Defendants' goods, services, and commercial activities.

157.     As detailed above, Defendants' representations on the labels of Wahlburgers pickles and Whole Foods 365 pickles constitute commercial advertising and promotion disseminated to the public and are both literally false and otherwise implicitly convey a false impression that is misleading in context and likely to deceive customers.

158.     Defendants' above false statements were made in bad faith, as set forth in detail above.

159.     Based on the allegations outlined above, Defendants have engaged in false advertisement, misappropriation of Grillo's trade secrets, and otherwise engaged in unfair competition against Grillo's willfully and maliciously.

160.    Defendants' above-described conduct violates N.J.S.A. 56:4-1.  As a direct and proximate result of Defendants' violations of N.J.S.A. 56:4-1, Grillo's has suffered and continue to suffer damages.

161.    Pursuant to N.J.S.A. 56:4-2, Grillo's is entitled to judgment in its favor awarding it preliminary and permanent injunctive relief, compensatory damages, treble damages, disgorgement of profits, attorneys' fees, costs and such other relief as the Court deems just and appropriate.

## PUNITIVE DAMAGES

162.    To the extent the Court finds Defendants' conduct as alleged herein was willful and malicious, Grillo's seeks punitive damages.

## DEMAND FOR RELIEF

WHEREFORE, Grillo's respectfully requests that judgment be made and entered in its favor and against Defendants granting the follow relief:

(a)    An order in Grillo's favor against Defendants on all claims alleged herein;

(b)    An order awarding Grillo's compensatory, general and special damages in an amount to be proven at trial;

(c)    An order awarding Grillo's pre-judgment and post-judgment interest on any monetary damages awarded;

(d)    An order awarding Grillo's treble, exemplary and punitive damages against Defendants;

(e)    An order awarding Grillo's attorneys' fees and costs;

(f)    An order permanently enjoining Defendants from possessing, accessing, or using any of Grillo's confidential, proprietary or trade-secret information, including by

manufacturing pickles using said information or selling, shipping or distributing said pickles;

(g)     An order permanently ordering Defendants to remove from the market any pickles that were manufactured using any of Grillo's confidential, proprietary or trade-secret information;

(h)     An order permanently ordering Defendants to (1) return all material containing or based on Grillo's trade-secret recipes and processes; (2) return or destroy all notes and copies thereof containing or based upon any of Grillo's trade-secret recipes and processes and (3) cause all their agents and representatives to whom Grillo's trade-secret recipes and processes have been disclosed to destroy all notes and copies in their possession that contain Grillo's trade-secret recipes and processes;

(i)     An order directing Defendants to correct their pickle labels with regard to the amount of sodium listed (or to cease including sodium in excess of the amounts stated on their labels);

(j)     An order directing Defendants to recall and remove from stores shelves all Whole Foods 365 and Wahlburgers pickles with labels misstating their sodium content;

(k)     An order awarding any and all other available damages and such other and further relief as the Court deems just and proper.

### DEMAND FOR JURY TRIAL

Pursuant to Fed. R. Civ. P. 38(b), Grillo's demands a trial by jury on all issues so triable.

DATED:  December 19, 2023                    Respectfully submitted,

**MARINO, TORTORELLA, & BOYLE, P.C.**           **QUINN EMANUEL URQUHART & SULLIVAN, LLP**

*/s/ Kevin H. Marino*                           */s/ Christina I. Crowley*
Kevin H. Marino                                 Christina I. Crowley
John A. Boyle                                   51 Madison Avenue, 22nd Floor
437 Southern Boulevard                          New York, NY 10010
Chatham, NJ 07928                               (212) 849-7000
(973) 824-9300

                                                Marshall M. Searcy III (*pro hac vice*)
                                                Gregory A. Fuoco (*pro hac vice*)
                                                865 South Figueroa Street, 10th Floor
                                                Los Angeles, California 90017-2543
                                                (213) 443-3000